UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | DOCKET NO. 5:15CR15-RLV |
| v. ) | |
| ) | |
| **(1) STEVEN W. CHASE** ) | |
| ) | **GOVERNMENT'S TRIAL BRIEF** |
| _____ ) | |

**I.   INTRODUCTION**

On August 19, 2015, the Grand Jury for the Western District of North Carolina returned a Second Superseding Indictment charging three Defendants, including Defendant Steven Chase. The defendants are charged with Engaging in a Child Exploitation Enterprise, in violation of 18 U.S.C. § 2252A(g), Conspiracy to Advertise Child Pornography, in violation of 18 U.S.C. § 2251(d)(1) & (e), Advertising Child Pornography, in violation of 18 U.S.C. § 2251(d)(1), Transportation of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(1), and Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(1). Defendant Chase is specifically charged with one count of Engaging in a Child Exploitation Enterprise, in violation of 18 U.S.C. § 2252A(g), one count of Conspiracy to Advertise Child Pornography, in violation of 18 U.S.C. § 2251(d)(1) & (e), one count of Advertising Child Pornography, in violation of 18 U.S.C. § 2251(d)(1), three counts of Transportation of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(1), and one count of Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(1).

Defendants Michael Fluckiger and David Browning have entered guilty pleas. Defendant Chase is the only defendant who intends to go to trial. The trial is set to begin on September 13, 2016. The government anticipates at this time that its case-in-chief will take approximately 3 days.

1

## II. STATEMENT OF ANTICIPATED FACTS

### A. The website, Playpen

This case stems from an investigation into a child pornography website ("Playpen") that was hosted in Lenoir, North Carolina. The Playpen website operated on the Tor network and its primary purpose was the advertisement and distribution of child pornography. In order to sign up as a member, a user needed to provide a username, password, and an email address. Members were told that an e-mail address was only required as a function of the site software, and the website rules specifically cautioned users not to provide a real email address for security purposes. The website also contained a messaging service where users could post short messages and chat with one another, either in groups or privately. Topics of conversation in that area consistently involved the sexual exploitation of children.

The Playpen website had separate sections, forums, and sub-forums for the posting of images and text. The forums for posting images contained sub-forums that were categorized by age, gender, extremeness of sexual act, and fetishes. Those sub-forums included separate sections such as Toddlers, Pre-Teen Boys, Pre-teen Girls, and Kinky Fetishes. There was no place for adult pornography on Playpen. In total, the Playpen website contained thousands of postings and messages and over 100,000 child pornography images were distributed via the website. Those images included depictions of nude prepubescent minors lasciviously exposing their genitals or engaged in sexually explicit conduct with adults or other children.

For example, the "Toddlers" sub-forum of the Playpen website contained more than a hundred message threads and over one thousands posts, many of which included images of infant and toddler-aged children being subjected to sexually explicit conduct by adults. A review of images and videos posted by users in the "Pre-teen Videos – Girls HC" sub forum revealed

postings that contained images depicting preteen girls posing naked, exposing their genitals, or engaging in sexually explicit conduct with adults or other children.

The website, Playpen, was created on August 19, 2014. The creator and primary administrator went by the name "playpen" on the website. The government contends that the evidence will show that Defendant was "playpen." As the website became bigger, two additional administrators and multiple moderators were added to help playpen manage the website. One of the administrators was an individual named "Isabella". One of the moderators was "StretchArmstrong". While monitoring the website, federal law enforcement agencies were able to capture postings by these individuals and more. The following are examples of activity conducted on the Playpen website by Defendant.

    a. On September 26, 2014, Defendant posted a link to a video in the 'Preteen Videos – Girls HC" forum. The video is approximately 1:55 minutes in length and depicts an adult male focusing the camera on the exposed vagina of a pre-pubescent female. He has his penis in one of his hands and is rubbing his penis against the naked vagina of the child. He has what appears to be the child's underwear around his arm. He is holding up the child's legs so that he can access her vagina. At one point he talks to the child asking her if she likes it. Toward the end of the video, it is clear that man is aroused and he appears to begin ejaculating. You can hear the child say what appears to be something about it being "slimy."

    b. On October 12, 2014, Defendant posted a link to a video in the "Preteen Videos – Girls HC" forum. The video is approximately 10:57 minutes in length and depicts three minor girls, approximately 10-12 years old, stripping out of their clothes for the camera. Throughout the video, each of the girls exposes their naked vagina to the camera. At times, the children squat over the camera where the picture is focused

3

only on their exposed vagina.

c. On February 1, 2015, Defendant created a post that included screenshots of a video that contained child pornography and a link for users to access and download the video. The screenshots are still image captures of the video. In the images Playpen posted on the site, an adult male arm is holding a toddler/pre-pubescent girl in his arms. The child is wearing a dress, not wearing underwear, and the dress is pulled up so that you can see the child exposed vagina. The focus of the camera is on the child's naked vagina, so much so that you cannot see the child or the man's faces.

### B. Identification of Defendant as playpen

During its investigation of the website, agents learned that the website was being hosted on a server owned by CentriLogic, a server hosting company with a facility in Lenoir, North Carolina. FBI Agents reviewed the contents of the server and observed that it contained a copy of the Playpen website, along with various log files that contained records showing when the server had been accessed remotely. A review of the server hosting the website showed that it had been misconfigured and was accessible through both the Tor network and the regular Internet, if a user knew the true IP address of the server. Log files from the server showed that Defendant logged in to his "playpen" user account directly from an IP address assigned to his Florida residence rather than through the Tor network. Further investigation revealed that other accounts associated with the website had also been accessed from an IP address assigned to Defendant's Florida residence.

Logs also indicated that accounts associated with the website had also been accessed through an IP address that was assigned to the residence of one of Defendant's relatives in Maine. Defendant was living in that house in Maine during this same time frame.

On February 20, 2015, agents with the Federal Bureau of Investigation executed a search warrant at Defendant's home. Upon entering the home and apprehending Defendant, agents

observed a laptop computer powered on and connected to the Playpen website. The web browser on the laptop computer was logged into the user account "playpen" on the Playpen website. The laptop computer was also logged into the administrator user account of the server hosting the website in Lenoir, North Carolina. Agents also found two text files opened on the laptop computer containing, among other things, various usernames and passwords associated with the primary administrator account of the Playpen website.

In addition to the laptop computer, an encrypted thumb drive containing thousands of child pornography images and multiple backup copies of Playpen was seized from Defendant's residence. The thumb drive was connected to the laptop in a non-encrypted state at the time the search warrant was executed at defendant's residence.

C. **Other Members**

As mentioned previously there were two other administrators on Playpen. These administrators essentially run the site by: developing and enforcing the rules of the site, promoting website members to moderators, and deleting existing members, among other tasks. One of the administrators was codefendant, Michael Fluckinger who joined the website on August 24, 2015, and has admitted to being "Isabella". The other administrator was "Vitellius." In addition to the administrators, there were moderators. Codefendant David Browning was a moderator that went by "StretchArmstrong". He was a global moderator and had moderator privileges in all forums. Both administrators and moderators had access to an "Administration" section on the website. The "Administration" section or forum was accessible only to the Administrators and Moderators and was a section where Administrators and Moderators could communicate about the site. Both Fluckiger and Browning posted child pornography to the website during the relevant time frame.

## III. ELEMENTS OF CRIMES CHARGED AND DEFINITIONS

### A. Count One: Engaging in a Child Exploitation Enterprise

To find a defendant guilty of 18 U.S.C. § 2252A(g) as alleged in Count One, the government must prove each of the following elements beyond a reasonable doubt:

1. That between on or about August 19, 2014 and on or about March 4, 2015, in the Western District of North Carolina and elsewhere, Defendant knowingly engaged in a series of three or more separate predicate felony violations. For purposes of 18 U.S.C. § 2252A(g), predicate felony violations include violations of Chapter 110 of the United States Code. Each of the charges in Counts Three through Seven of the Second Superseding Bill of Indictment charges Defendant with a violation of Chapter 110.

2. That more than one minor victim was involved in the series of violations.

3. That the series of felony violations involved three or more persons with whom Defendant acted in concert to commit the predicate acts.

*See United States v. Daniels*, 653 F.3d 399, 412-13 (6th Cir. 2011); 18 U.S.C. § 2252A(g).

To act "in concert" requires "proof of an agreement that would also violate [a] conspiracy offense." *United States v. Wayerski*, 624 F.3d 1342, 1350-51 (11th Cir. 2010) (applying court interpretations of the phrase "in concert" in 18 U.S.C. § 848 to Section 2252A(g)). *See also Rutledge v. United States*, 517 U.S. 292, 300 (1996) (explaining that "because the plain meaning of the phrase 'in concert' signifies mutual agreement in a common plan or enterprise, . . . this element of the CCE offense requires proof of a conspiracy that would also violate § 846."). However, it is not necessary that each individual predicate have been committed in concert with three or more other persons. Rather, "the required total of three other persons may be tallied by considering the predicate counts together." *Daniels*, 653 F.3d at 412.

### B. Count Two – Conspiracy to Advertise Child Pornography

To find defendant guilty of 18 U.S.C. § 2251(d)(1) & (e) as alleged in Count Two, the government must prove each of the following elements beyond a reasonable doubt:

1. That between on or about August 19, 2014 and on or about March 5, 2014, in the Western District of North Carolina and elsewhere, two or more people reached an agreement to

commit the crime of advertising child pornography, the defendant voluntarily and intentionally joined the agreement, and the defendant knew the purpose of the agreement at the time the defendant joined the agreement.

*See United States v. Wilson,* 135 F.3d 291, 306 (4th Cir.1998) (To obtain a conviction for a conspiracy, the Government must prove the following essential elements: (1) an agreement between two or more persons to engage in conduct that violates a federal law; (2) the defendant's knowledge of the conspiracy; and (3) the defendant's knowing and voluntary participation in the conspiracy.) Once the Government proves a conspiracy, the evidence need only establish a slight connection between a defendant and the conspiracy to support conviction. *United States v. Brooks,* 957 F.2d 1138, 1147 (4th Cir.1992); *see also United States v. Burgos,* 94 F.3d 849, 861 (4th Cir.1996) (en banc); (the Government is not required to prove that a defendant knew all his co-conspirators or all of the details of the conspiracy; moreover, guilt may be established even by proof that a defendant played only a minor role in the conspiracy). Nor does proof of guilt require a showing that a defendant personally committed an overt act. *United States v. Cardwell,* 433 F.3d 378, 391 (4th Cir.2005).

The underlying crime of the conspiracy, a violation of 18 U.S.C. § 2251(d), requires proof of following elements:

1. The Defendant knowingly made, printed, published, or caused to be made, printed, or published, a notice or advertisement; and

2. The notice or advertisement sought or offered:

    a. to receive, exchange, buy, produce, display, distribute, or reproduce any visual depiction, the production of which utilized a minor engaging in sexually explicit conduct and such visual depiction is of such conduct; or
    b. participation in any act of sexually explicit conduct by or with any minor for the purpose of producing a visual depiction of such conduct; and

3. Either, that:

    a. The Defendant knew or had reason to know that such notice or advertisement would be transported using any means or facility of interstate or foreign

7

> commerce, or in or affecting interstate or foreign commerce by any means including by computer, or would be mailed; or
> b. Such notice or advertisement was transported using any means or facility of interstate or foreign commerce or in or affecting interstate commerce by any means including by computer, or was mailed.

"Notice" and "advertisement" are given their plain meanings. "Advertisement" has been defined as: (1) "the action of advertising: a calling attention to or making known"; (2) "warning, admonition"; (3) "an informing or notifying; notification," (4) "a calling to public attention: publicity," (5) "a statement calling attention to something: notice," (6) "a public notice; especially: a paid notice or announcement published in some public print (as a newspaper, periodical, poster, or handbill) or broadcast over radio or television…" *See United States v. Franklin,* 785 F.3d 1365, 1368 (10th Cir. 2015) (reviewing the definition of advertisement under 18 U.S.C. § 2251). *See also, United States v. Wang*, 2013 WL 452215, at *14-15 (S.D. N.Y. 2013) ("Notice" has been defined to include "information; intelligence" and "a written or printed announcement." "Advertise" has been defined to include: "to make something known to; notify;" and "to call public attention to especially by emphasizing desirable qualities so as to arouse a desire to buy or patronize; promote.").

"In determining whether a notice or advertisement for child pornography exists, there is no requirement that that the notice or advertisement specifically state that it offers or seeks a visual depiction to violate the statute." *United States v. Rowe*, 414 F.3d 271, 277 (citation omitted). "No particular magic words or phrases need to be included." *Id*. at 277.

In determining what constitutes a notice or advertisement seeking or offering to receive, display, or distribute child pornography, the fact finder must look at the context. For example, in *United States v. Rowe*, 414 F.3d 271 (2nd Cir. 2005) the defendant posted, in an Internet chat room the following: "[v2.3b] Fserve Trigger: ! tun Ratio 1:1 Offering: Pre boys/girl pics. Read the rules. [1 of 2 slots in use.]" This jargon was understood by users in the chat room as providing

information on how to access the defendant's home computer, download, and upload images of child pornography. In looking at the full context, the court found that such communication was a notice or advertisement offering to distribute pictures of child pornography. The court also found a question such as "anybody with baby sex pics for trade" sufficient to constitute a notice or advertise seeking to receive child pornography. *Id.* at 276. *See also United States v. Wang*, 2013 WL 452215, at *13 (S.D.N.Y. Feb. 5, 2013) (non-descriptive link to an image or video of child pornography satisfies the notice and advertisement element of 18 U.S.C. § 2251); *United States v. Christie*, 570 F.Supp.2d 657, 665-66 (D.N.J. 2008) *aff'd in part*, No. 09-2908, 2010 WL 3565729 (3d Cir. Sept. 15, 2010) *publication ordered*, 624 F.3d 558 (3d Cir. 2010) (same). In addition to various phrases, courts have also found preview images of child pornography offered to "friends" on the peer-to-peer network Gigatribe constitute an advertisement of child pornography. *Franklin*, 785 F.3d at 1367-70.

C. **Count Three: Advertising Child Pornography**

To find Defendant guilty of 18 U.S.C. § 2251(d)(1) as alleged in Count Three, the government must prove beyond a reasonable doubt the following elements:

1. The Defendant knowingly made, printed, published, or caused to be made, printed, or published, a notice or advertisement; and

2. The notice or advertisement sought or offered:

    a. to receive, exchange, buy, produce, display, distribute, or reproduce any visual depiction, the production of which utilized a minor engaging in sexually explicit conduct and such visual depiction is of such conduct; or
    b. participation in any act of sexually explicit conduct by or with any minor for the purpose of producing a visual depiction of such conduct; and

3. Either, that:

    a. The Defendant knew or had reason to know that such notice or advertisement would be transported using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce by any means including by computer, or would be mailed; or

9

b. Such notice or advertisement was transported using any means or facility of interstate or foreign commerce or in or affecting interstate commerce by any means including by computer, or was mailed.

**D. Counts Four through Six – Transportation of Child Pornography**

To find Defendant guilty of 18 U.S.C. § 2252A(a)(1) as alleged in Counts Four through Six, the government must prove the following elements beyond a reasonable doubt:

1. That on or about February 1, 2015, October 12, 2014, and September 26, 2014, in the Western District of North Carolina and elsewhere, the defendant knowingly transported child pornography using any means or facility of interstate or foreign commerce by any means, including by computer;

2. The production of such child pornography involved the use of a minor engaging in sexually explicit conduct; and

3. Such child pornography is of a minor engaged in sexually explicit conduct; and

4. The defendant knew that at least one of the performers in such child pornography was a minor and knew that the visual depiction was of such minor engaged in sexually explicit conduct.

**E. Count Seven – Possession of Child Pornography**

To find Defendant guilty of 18 U.S.C. § 2252A(a)(1) as alleged in Count Seven, the government must prove the following elements beyond a reasonable doubt:

1. The defendant knowingly possessed material that contained an image of child pornography, as defined by Title 18 U.S.C.§ 2256(8)(A);

2. That such child pornography involved a minor who had not attained 12 years of age;

3. That such child pornography
   a) Has been mailed; and/or
   b) Has been shipped/transported using any means of facility of interstate commerce; and/or
   c) Has been shipped/transported in or affecting interstate or foreign commerce; and/or
   d) Was produced using materials that have been mailed, shipped/transported in or affecting interstate or foreign commerce, including by computer; and

4. The defendant knew that such items contained child pornography which involved a minor who had not attained 12 years of age.

F.  **Definitions**

The following terms are defined by statute, and apply to each of the counts listed above.

"Child pornography" means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where--(A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct.  18 U.S.C. § 2256(8)(A)

"Minor" means any person under the age of eighteen years. 18 U.S.C. § 2256(1)

"Sexually explicit conduct" means actual or simulated--(i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;(ii) bestiality;(iii) masturbation;(iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person.  18 U.S.C. § 2256(2)

"Visual depiction" includes undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.  18 U.S.C. § 2256(5).

IV.  **LEGAL AND EVIDENTIARY ISSUES**

A.  **Evidence Inextricably Intertwined, and Otherwise Admissible as 414 and 404(b).**

The government filed a motion to introduce evidence of certain other crimes or acts committed by Defendant that are inextricably intertwined with charged conduct and/or pursuant to Federal Rules of Evidence 414 and 404(b).  *See,* Doc. No. 81.

B.  **Proving a Minor**

The Supreme Court in *United States v. X-Citement Video, Inc.,* 513 U.S. 64 (1992), held with respect to a different statute, 18 U.S.C. § 2252(a)(1) and (2), that proof of scienter as to the

11

age of the person depicted is required for conviction. While the phraseology of § 2252A(a) is different, in that it uses the phrase "child pornography" instead of "visual depiction involving the use of a minor," the statute also contains as an element scienter of the age of the person depicted. *See United States v. Acheson*, 195 F.3d 645, 653 (11th Cir. 1999). Courts have also held that the scienter requirement extends to knowledge that the visual depictions were sexually explicit. *X-Citement Video, Inc.*, 513 U.S. at 78 (' 2252(a)(2)); *United States v. Fabiano*, 169 F.3d 1299, 1303-04 (10th Cir. 1999); *United States v. Cedelle*, 89 F.3d 181, 185 (4th Cir. 1996).

Although the Fourth Circuit has yet to rule upon the issue, other circuits have concluded that images themselves may be sufficient evidence for a jury to conclude that real children are depicted. *United States v. Salcido*, 506 F.3d 729, 733-34 (9th Cir. 2007) ("Pornographic images themselves are sufficient to prove the depiction of actual minors."); *United States v. Rodriguez-Pacheco*, 475 F.3d 434, 437 (1st Cir. 2007); *United States v. Irving,* 452 F.3d 110, 121–22 (2d Cir.2006); *United States v. Farrelly,* 389 F.3d 649, 654 & n. 4 (6th Cir.2004), *abrogated on other grounds by United States v. Williams,* 411 F.3d 675, 678 n. 1 (6th Cir.2005); *United States v. Slanina,* 359 F.3d 356, 357 (5th Cir.2004); *United States v. Kimler,* 335 F.3d 1132, 1142 (10th Cir.2003); *United States v. Deaton,* 328 F.3d 454, 455 (8th Cir.2003). The jury is capable of distinguishing for itself whether a child depicted in an image is real or virtual. *Salcido,* 506 F.3d at 733–34.

### C. Lascivious Exhibition of the Genitals or Pubic area

Whether an image of the genitals or pubic area constitutes such a lascivious exhibition, requires a consideration of the overall content of the material. It is for the jury to decide the weight or lack of weight to be given to any of the following factors. A video or image need not involve all of these factors to constitute a lascivious exhibition of the genitals or pubic area. These factors include (1) whether the focal point of the picture or image is on the child's genitals or

pubic area; (2) whether the setting of the picture or image is sexually suggestive, that is, in a place or pose generally associated with sexual activity; (3) whether the child is depicted in an unnatural pose or in inappropriate attire, considering the age of the minor; (4) whether the child is fully or partially clothed, or nude; (5) whether the picture or image suggests sexual coyness or a willingness to engage in sexual activity; and (6) whether the picture or image is intended or designed to elicit a sexual response in the viewer. *See, United States v. Whorley*, 400 F. Supp. 2d 880, 883-84 (E.D.Va. 2005) (citing *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986)); *see also United States v. Campbell*, 81 Fed. Appx. 532, 536 (6th Cir. 2003) (applying *Dost* factors); *United States v. Carroll*, 190 F.3d 290, 297 (5th Cir. 1999), *vacated on other grounds*, 227 F.3d 486 (5th Cir. 2000) (same); *United States v. Horn*, 187 F.3d 781, 789 (8th Cir. 1999) (same); *United States v. Amirault*, 173 F.3d 28, 32 (1st Cir. 1999) (same). A visual depiction need not involve all of these factors to be a lascivious exhibition of genitals. *Whorley*, 400 F. Supp. 2d at 884.

    D.    **Interstate or Foreign Commerce and Facility of Interstate or Foreign Commerce**

"Interstate or foreign commerce" is defined by 18 U.S.C. § 10 (commerce between one State and another State, or commerce with a foreign country). In the context of a child pornography trial, circumstantial evidence tying particular images of child pornography to the Internet is sufficient to establish that the images were transported in interstate commerce. *See United States v. Runyan*, 290 F.3d 223, 242 (5th Cir. 2002); *United States v. Carroll*, 105 F.3d 740, 742 (1st Cir. 1997) (transmission of photographs by means of the Internet is tantamount to moving photographs across state lines and thus constitutes transportation in interstate commerce); *United States v. Hilton*, 257 F.3d 50, 54 (1st Cir. 2001) (Proof of transmission of child

13

pornography over the Internet or over telephone lines satisfies the interstate commerce element of the offense).

In addition to affecting interstate or foreign commerce, the government can also prove this element by showing the crime occurred using any means or facility of interstate commerce. The Internet is a facility of interstate commerce. Pattern Crim. Jury Instr. 11th Cir. 92.2.; *United States v. Sutcliffe,* 505 F.3d 944, 953 (9th Cir. 2007), *United States v. Phea,* 755 F.3d 255, 266 (5th Cir.), cert. denied, 135 S. Ct. 416, 190 L. Ed. 2d 302 (2014).

E. **Business Records**

Pursuant to subpoenas, the government received business records from several businesses. Such records, kept in the regular course of business, are admissible as exceptions to the hearsay rule. Fed.R.Evid. 803(6). Each of these records is self-authenticating pursuant to Federal Rule of Evidence 902(11). *United States v. Towns*, 718 F.3d 404, 409 (5th Cir. 2013) ("According to Rule 902(11), records of regularly conducted business activity—even copies—are self-authenticating if certified as accurate by the custodian."). Defendant has been provided with affidavits from the custodians certifying that such records were made (A) at or near the time of the occurrence of the matters set forth by a person with knowledge of those matters; (B) was kept in the course of the regularly conducted activity; and (C) was made by the regularly conducted activity as a regular practice. *See id*. ("A proper foundation is laid for business records simply by an affidavit that attests to the requisite elements of FRE 803(6)."). Thus, the documents are authentic and should be admitted. The Government has asked Defendant to stipulate to the admission of such business records at trial, but if he does not, the Government will ask the Court to admit such exhibits as self-authenticating pursuant to Rule 902(11), and as relevant on their face.

### F. Expert Witnesses

The United States will call several expert witnesses: Daniel O'Donnell (who will testify regarding online child exploitation investigations), Ray Hsu (who is a digital media forensic examiner), and Jon Shumway (a digital media forensic examiner. Proper notice of such experts has been provided in accordance with Rule 16. Pursuant to Rule 16(b)(1)(C) of the Federal Rules of Criminal Procedure, the government has requested disclosure from Defendant of any testimony that he intends to introduce under Rule 702, 703, and/or 705 of the Federal Rule of Evidence. As of this date, the government has not received anything.

### G. Charts and Summaries

The United States expects to use charts and summaries during the trial, pursuant to Rule 1006, and intends to offer such charts and summaries into evidence. *See United States v. Stephens*, 779 F.2d 232, 239-240 (5th Cir. 1985); *United States v. Duncan*, 919 F.2d 981, 988 (5th Cir. 1985), cert. denied, 500 U.S. 926 (1986). Such summaries are allowed where the "contents of voluminous writings ... which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." Fed. R. Evid. 1006. Such summaries also can speed the introduction and presentation of evidence. *United States v. Janati*, 374 F.3d 263, 273 (4th Cir. 2004) ("Because the underlying documents need not be introduced into evidence, the chart itself is admitted as evidence in order to give the jury evidence of the underlying documents."). The Government has filed notice of its intent to use such summaries and will permit defense counsel an opportunity to review them prior to their introduction at trial. Consistent with Rule 1006, the underlying documents supporting the charts and summaries has also been made available to the defense for examination or copying. The summaries are believed to be helpful to the trier of fact due to the voluminous nature of this evidence and thus should be admitted into evidence.

15

### H. Sequestration

The United States requests that the case agent be exempted from Rule 615's sequestration as designated representative of the United States. Fed. R. Evid. 615(2); *United States v. Alvarado*, 647 F.2d 537, 540 (5th Cir. 1981). The Government requests that all other potential witnesses for both the Government and the defense be excluded from the courtroom.

## V. FORFEITURE

The Second Superseding Indictment provided notice that the Government intends to pursue forfeiture. Criminal forfeiture of property constitutes part of the sentence in a criminal case and enhances the punishment of a defendant who has already been convicted of a particular offense. *United States v. Cherry*, 330 F.3d 658, 670 (4th Cir. 2003).

Here, the Government is requesting forfeiture of the following properties (collectively, "the Properties"):

- The real property at 3570 15th Avenue SW, Naples, Florida ("the Real Property"), identified in the Second Superseding Indictment (Doc. 31 at Page 7). Defendant owns the Real Property and committed his offenses from the privacy of the Real Property. Defendant was, in fact, operating Playpen at the Real Property when law enforcement executed a Search Warrant in this case;

- One ASUS Laptop, Serial Number ELN0CV0907390L2 ("the ASUS Laptop"). The ASUS Laptop was powered-on and at the Real Property when law enforcement executed a Search Warrant in this case. Law enforcement thereafter seized and searched the ASUS Laptop, identifying that the ASUS was running programs used to administer and operate Playpen; and

- One Cruzer 128GB Thumbdrive ("the Cruzer Thumbdrive"). The Cruzer Thumbdrive was inserted into the powered-on ASUS Laptop when law enforcement executed a Search Warrant in this case. The Cruzer Thumbdrive stored files used to operate Playpen.

Based on the foregoing, the Government contends that the Real Property, the ASUS Laptop, and the Cruzer Thumbdrive are subject to forfeiture pursuant to 18 U.S.C. § 2253(a)(3) as property used or intended to be used to promote the commission of Defendant's offenses. 18 U.S.C. §

2253(a)(3); *see also United States v. Ownby*, 926 F. Supp. 558, 566 (W.D. Va. 1996) (Overruling defendant's objection that forfeiture of residence in which he used computer to possess, receive, and transport child pornography was excessive; reasoning that "it is clear that the privacy afforded by the dwelling was essential to Ownby's commission of the charged offenses."), *aff'd*, 131 F.3d 138 (4th Cir. 1997) (Table); *United States v. Wilk*, 2007 WL 2263942, at *1 (S.D. Fl. Aug. 6, 2007) (same in case of forfeiture of residence when in excess of 90 images were on computer in home); *cf. United States v. 7046 Park Vista Road*, 537 F. Supp. 2d 929, 940-41 (S.D. Oh. 2008) (determining, on Government's summary judgment motion in civil forfeiture case, that residence in which Section 2251 and 2252 violations occurred was forfeitable).

The Court must determine, **before the jury begins its initial deliberations** on guilt or innocence, whether either party requests a jury as to forfeiture. Fed. R. Crim. P. 32.2(b)(5)(A). If Defendant is found guilty **and** he requests, pursuant to Fed. R. Crim. P. 32.2(b)(5), that the jury determine whether the Government has established the requisite nexus between the Properties and the Count One, Count Two, and Count Three offenses committed by Defendant, then a jury may determine forfeiture. If Defendant **does not** request a jury determination, the Government will also waive the jury and ask the Court to decide whether the nexus has been established. Rule 32.2(b)(1)(A)(B). In the present case, if Defendant requests a jury on forfeiture, the Government anticipates that the trial evidence will be sufficient for the jury to decide the forfeiture of the Properties without additional evidence or arguments of counsel.

If Defendant requests a jury determination of forfeiture in this case, the jury's role is limited to a determination of whether the Government has established the requisite nexus between the Properties and Count One, Count Two, and/or Count Three. The United States has filed Forfeiture Jury Instructions and a proposed Special Verdict Sheet for use by the Court in the event that Defendant is convicted on one or more of Counts One, Two, and Three and requests a jury on

17

forfeiture.[1] *See*, Doc. No. 88.

The portion of the Second Superseding Indictment entitled "Notice of Forfeiture and Finding of Probable Cause" should not be read to the jury, and the term "forfeiture" should not be mentioned to the jury until after innocence or guilt is decided. Hence, *bifurcated proceedings are required*. *See* Fed. R. Crim. P. 32.2(b)(1) (discussing forfeiture proceedings conducted after verdict or finding of guilty). The portion of the Second Superseding Indictment entitled "Notice of Forfeiture and Finding of Probable Cause" is merely a notice to Defendant that the Government seeks to forfeit his property. *See* Fed. R. Crim. P. 32.2(a) (*Advisory Committee Notes*) (discussing notice to defendants).

## VI. CONCLUSION

The foregoing is a summary of some of the points that the Government anticipates are likely to arise at trial. Should any legal issues arise that are not covered in this trial brief, the Government respectfully requests leave to submit further memoranda as necessary to assist the Court.

**RESPECTFULLY SUBMITTED**, this the 9th day of September, 2016.

JILL WESTMORELAND ROSE
UNITED STATES ATTORNEY

s/ Cortney S. Randall
Assistant United States Attorney
NC Bar Number: 31510
Attorney for the United States
United States Attorney's Office
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
Telephone: 704.344.6222

---

[1] In the event that Defendant is convicted on other counts but not on Counts One, Two, or Three, the United States remains ready to provide amended instructions or assist the Court in amending instructions as appropriate. However, the United States is providing instructions based on Counts One, Two, and Three because those counts provide the simplest means for the Jury to decide forfeiture as to all three identified assets.

Fax: 704.344.6629
E-mail: cortney.randall@usdoj.gov

s/ Reginald E. Jones
Trial Attorney
Mississippi Bar Number: 102806
Attorney for the United States
U.S. Department of Justice, Criminal Division
Child Exploitation and Obscenity Section
Telephone: 202.616.2807
Reginald.Jones4@usdoj.gov

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this day, September 9, 2016, the foregoing was duly served upon counsel for the defendant by electronic means via the Court's ECF system to:

Peter Adolf
Attorney for Defendant
Peter_Adolf@fd.org

        s/ Cortney S. Randall
        Assistant United States Attorney
        NC Bar Number: 31510
        Attorney for the United States
        United States Attorney's Office
        227 West Trade Street, Suite 1650
        Charlotte, North Carolina 28202
        Telephone: 704.344.6222
        Fax: 704.344.6629
        E-mail: cortney.randall@usdoj.gov

        s/ Reginald E. Jones
        Trial Attorney
        Mississippi Bar Number: 102806
        Attorney for the United States
        U.S. Department of Justice, Criminal Division
        Child Exploitation and Obscenity Section
        Telephone: 202.616.2807
        Reginald.Jones4@usdoj.gov

20

Case 5:15-cr-00015-RLV-DCK   Document 90   Filed 09/09/16   Page 20 of 20