UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) DOCKET NO. 5:15-cr-15-1 |
| | ) |
| vs. | ) VOLUME IV of IV |
| | ) |
| STEVEN W. CHASE, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

TRANSCRIPT OF JURY TRIAL PROCEEDINGS
BEFORE THE HONORABLE RICHARD L. VOORHEES
UNITED STATES DISTRICT COURT JUDGE
SEPTEMBER 16, 2016

APPEARANCES:

On Behalf of the Government:

    REGINALD E. JONES, ESQ.,
    United States Department of Justice
    1400 New York Avenue, NW
    Washington, DC 20005

    CORTNEY S. RANDALL, ESQ.,
    BENJAMIN BAIN-CREED, ESQ.,
    Assistant United States Attorney
    227 West Trade Street, Suite 1700
    Charlotte, North Carolina 28202

On Behalf of the Defendant:

    PETER ADOLF, ESQ.,
    Federal Defenders of Western North Carolina
    129 West Trade Street, Suite 300
    Charlotte, North Carolina 28202

LAURA ANDERSEN, RMR
Official Court Reporter
United States District Court
Charlotte, North Carolina

1                          I N D E X

2    Charge conference ............................451
     Defendant motion .............................462
3    Court's opening instructions  ................463
     Government closing ...........................476
4    Defendant closing ............................503
     Government closing ...........................526
5    Court's substantial instructions  ...........531
     Jury question ................................574
6    Jury question ................................574
     Jury verdict .................................578
7    Court's forfeiture instructions  ............579
     Government closing on forfeiture .............584
8    Defendant closing on forfeiture .............586
     Government closing on forfeiture .............587
9    Jury verdict .................................588

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                      P R O C E E D I N G S

2    FRIDAY, SEPTEMBER 16, 2016:

3              THE COURT:  Okay.  There was one question about the

4    double jeopardy issue.  The defendant submitted certain case

5    law about it.  The question that comes about would be whether

6    there would be a double jeopardy problem if the jury should

7    find defendant guilty of all counts but not Three; Three being

8    the Advertising substantive count.

9              MR. JONES:  Your Honor, may we -- the Government

10   briefly address these cases?

11             THE COURT:  Yes.

12             MR. JONES:  Your Honor, we read the defense's cases

13   last night, Your Honor.  It's the Government's position that

14   the issue with the case now is whether there has been

15   sufficient evidence presented in this trial for a jury to

16   convict the defendant on Counts One and Two.

17             My office has prosecuted several of these cases over

18   the last three years where the defendant has been charged

19   with, as to Count One The Enterprise, and as to Count Two

20   Conspiracy To Advertise Child Pornography as has been charged

21   in this case, Your Honor.  *U.S. versus Defoggi* is one out of

22   the District of Nebraska; *U.S. V Wise*, Western District of

23   Louisiana; *U.S. v Mosher,* Central District of Illinois, and

24   also the *Grovo* case, which your clerk cited in the jury

25   instructions, Your Honor, which is a Ninth Circuit case -- a

1   published opinion that was published a couple of months ago,

2   Your Honor.  All of these cases charged both the enterprise

3   and the conspiracy to advertise.  And the jury was charged on

4   both these counts, Your Honor.  The United States admits

5   that --

6          THE COURT:  I'm not saying we wouldn't charge on it.

7   I'm saying the question would be whether it would be a double

8   jeopardy issue --

9          MR. JONES:  It --

10         THE COURT:  -- depending on what the jury did.  And

11  we could handle that just by instructions on the verdict

12  sheet, you know, if you find this and that and don't -- don't

13  do Count Two, something like that.

14         MR. JONES:  What has happened in these four -- five

15  cases I just mentioned, Your Honor, is that double jeopardy

16  doesn't attach until judgment, a punishment has been entered,

17  Your Honor.  So it's our position that prior to sentencing, as

18  has been done in previous cases, the United States either

19  moves for Count Two -- if the defendant is convicted of Counts

20  One and Two -- we will move for Count Two to be dismissed.  Or

21  the Court on its own extent at that point could just vacate

22  Count Two, Your Honor.  But that doesn't become an issue until

23  the sentencing phase of the trial, Your Honor, not during this

24  phase, Your Honor.

25         Even in the -- you know, even if he's -- that's if

1    he's found guilty on both counts, Your Honor.  So that's

2    something that should be taken up prior to judgment at the

3    sentencing.

4           Even the two cases, the *Hawthorne* case, the Eighth

5    Circuit case the defendant brought up to support his motion,

6    Your Honor, that was -- double jeopardy didn't attach until

7    the conviction -- he was convicted and sentenced, you know,

8    based on some of the same conduct.  So that's when the double

9    jeopardy attaches, you know, after the sentence or the

10   judgment.

11          We submit that after the trial, if the defendant is

12   convicted on both counts, and prior to sentencing, you know,

13   the United States will either move to dismiss the lesser

14   included offense or the Court in its discretion can vacate

15   Count Two at that time.

16          THE COURT:  All right.  Anything from the defendant?

17          MR. ADOLF:  Judge, I think the confusion may arise

18   from the fact that a lot of these cases, or most of these

19   cases are dealing with the issue after it's already happened

20   on 2255 and so forth.  And then the question becomes if it's a

21   sufficient remedy or not to just dismiss one of the counts.

22   That's what most of the case law seems to be about because

23   that's when it comes up.  Otherwise, if the jury's instructed

24   correctly then it doesn't come up because it's not an issue.

25          And I question the wisdom that the Government

 1  suggests of doing something that case law says is error on the

 2  theory that it ultimately can be made harmless later on.

 3          THE COURT:  Well, I'm going to adopt your position

 4  on that and we can handle it by how we word the verdict sheet.

 5          MR. ADOLF:  Thank you, Your Honor.

 6          THE COURT:  Let me see if I can pose something in a

 7  similar context, perhaps the same question.

 8          If there's a not guilty on Count Three, is there any

 9  double jeopardy?

10          MR. ADOLF:  I'm sorry, is Your Honor addressing

11  Count Three or Count Two?  Because Count Two is the

12  Advertising Conspiracy.

13          THE COURT:  Two is the Conspiracy --

14          MR. ADOLF:  Right.

15          THE COURT:  -- to Advertise.  Three is the

16  substantive -- I mean, Advertising count.

17          MS. RANDALL:  That's a law school question, Your

18  Honor, to walk through this one.

19          THE COURT:  So another way to put that would be, you

20  know, yesterday we talked about the *Blockburger* case defining

21  the prejudice analysis.  And so today we might phrase it, if

22  Three is not a predicate offense, that is, if there's a not

23  guilty on Count Three, you still have the same analysis under

24  *Blockburger*.

25          Well, if the parties don't have anything further to

1   say about it, the Court will rule on it.

2        MR. ADOLF:  I'm sorry, Your Honor.  I was waiting

3   for -- I was deferring to the Government first.  But I do -- I

4   could just briefly say something about that.

5        I think as I understand what the Court is talking

6   about and what my concern is, it sort of echos what I was

7   talking about yesterday.  Which is that the definition of an

8   advertisement that the Government has proposed is so broad

9   that it basically can include any communication even among a

10  small group of people inviting someone to commit a crime, in

11  particular, the crime of distributing child pornography or

12  advertising child pornography.

13       And that's defined broadly enough so that if any

14  communication can do that, that's the same as what's required

15  for a conspiracy.  Which is that communicating to someone,

16  let's commit a crime together, and that person agreeing.  So

17  the jury can't find one without the another.  There's no way

18  to distinguish between the acts proving one and the acts

19  proving the other because they are essentially defined the

20  same way.  And, in particular, the two counts are totally

21  co-extensive, as far as dates.

22       So it is -- there is any conspiracy, which is to

23  say, any agreement to commit a crime such as advertising is

24  going -- any advertisement, as the Government has defined it,

25  is going to be a component part also of the conspiracy.

1    There's no way to convict of one without the other.  So I do

2    think that presents a double jeopardy problem.

3           MS. RANDALL:  Your Honor, I think if you look at

4    just using the Blockbuster -- *Blockburger* -- excuse me --

5    *Blockburger* test and just looking at a straight element

6    analysis and comparing them.  If the jury were to find that

7    the Government did not prove the advertisement charge and they

8    said so and there's in a special verdict form that -- under

9    the enterprise offense -- that they were not convicted based

10   on that, then the elements would not match the conspiracy to

11   advertise.  Because they did not find that the Government

12   acted in concert with other people or form an agreement with

13   other people to advertise child pornography.

14          So if that agreement was not made for the enterprise

15   it couldn't have been -- then it's different -- but they did

16   find that it was made for the conspiracy, it seems like the

17   elements would -- there would be a different element there

18   somewhere for them not to convict on one and then the other.

19          THE COURT:  All right.  Thank you.

20          All right.  We will have a verdict sheet that will

21   be informative on this point and you all can look at that and

22   that will be the subject of your argument to the extent you're

23   arguing along those lines.

24          Anything further to be addressed about these

25   instructions that we didn't cover yet?

1          MR. ADOLF:  Not from the defense, Your Honor.

2          MS. RANDALL:  Your Honor, in reviewing the

3    instructions one last time last night now that all the

4    evidence has been entered there were two that appeared to

5    maybe not be applicable anymore.  One of them being page 14,

6    which was impeachment, inconsistent statements, or conduct.  I

7    don't think there was any use of a prior statement to impeach

8    any of the witnesses.  So I don't think that one would be

9    applicable.

10          THE COURT:  Any objection to removing that?

11          MR. ADOLF:  Judge, I'm trying to remember,

12   mechanically, when I confronted Mr. Browning about his prior

13   statement to Agent Alfin.  I'm not sure if he was really

14   impeached or if I refreshed his recollection with it as it

15   turned out.

16          MS. RANDALL:  He admitted that he did say --

17          MR. ADOLF:  Right --

18          MS. RANDALL:  -- that it was --

19          MR. ADOLF:  Right.

20          MS. RANDALL:  -- that there was information about a

21   person in Texas, which I think was what --

22          THE COURT:  I have no problem leaving it in or out.

23          MR. ADOLF:  I think we can leave it out, Your Honor.

24   We can take it out.

25          THE COURT:  All right.  We'll just take it out.

1          MS. RANDALL:  And then the other one, Your Honor,

2     which -- and I just don't know if this would apply to

3     Mr. Browning either, is the -- the title is the "Credibility

4     of Witnesses, Prior Conviction."  Normally I think of that as

5     applying when you talk to someone about their criminal

6     history.  I didn't know if that would apply in this case

7     because Mr. Browning has pled guilty.  If that's why that is

8     in there or not.  Because no one else had a prior conviction

9     that was mentioned.

10         THE COURT:  Well, it wasn't what you might normally

11    consider a prior but it's a felony.  So I might be able to

12    make that clear to the jury.

13         MS. RANDALL:  And then regarding the other -- were

14    the other changes that we discussed yesterday, then, all made

15    about -- just so I know what I'm arguing about the interstate

16    facility.  Was that sort of definition added and everything to

17    the final jury instructions?

18         THE COURT:  Well, page 60, of course, is the

19    definition of interstate or foreign commerce page in the

20    original pagination.

21         MS. RANDALL:  Right, but there are two

22    mechanisms for violating the statute --

23         THE COURT:  Right.

24         MS. RANDALL:  -- either in or affecting commerce or

25    using a means or facility of interstate or foreign commerce.

1  So we were asking for a definition of the second way of

2  violating the statute.

3         THE COURT:  I think we came up with that.

4         MS. RANDALL:  Okay.  We just haven't seen that final

5  copy so I wanted to make sure before I argued to the jury.

6         THE COURT:  Right.  Well, we'll take a brief recess.

7  We'll just take five to ten minutes for now, and hopefully

8  we'll be able to give you a hard copy of the verdict form that

9  will be used, and a copy of the substantive part of the

10  instructions containing the modifications from yesterday.

11         (Recess at 9:37 until 9:56.)

12         THE COURT:  I believe the parties have a copy of the

13  verdict form.

14         MS. RANDALL:  Yes, Your Honor.

15         MR. ADOLF:  Yes, Your Honor.

16         THE COURT:  Of course that includes the predicate

17  offenses on page 2 as a special interrogatory.

18         MR. JONES:  Can the Government --

19         THE COURT:  I believe you have a copy of the final

20  instructions also.

21         MR. JONES:  Yes, Your Honor.

22         THE COURT:  So we'll bring the jury in and I will

23  give them the --

24         MR. JONES:  Your Honor, just briefly before we bring

25  the jury in.  The Government just had a couple of issues with

1    the special interrogatory we wanted to address.

2              THE COURT:  All right.

3              MR. JONES:  One is just a minor change on the

4    Advertising Child Pornography, should be between on or about

5    August 19, 2014 and not April 14th.  As the indictment charges

6    August 19th to March 4, 2015.

7              THE COURT:  All right.  Are you looking at the

8    verdict form or --

9              MR. JONES:  The verdict form.  The Special

10   Interrogatory, page 2 of the Verdict form.

11             THE COURT:  Page 2.  Okay.  It's August.

12             MR. JONES:  August 19, 2014, Your Honor.

13             THE COURT:  You talking about the first --

14             MR. JONES:  The first, yes.

15             THE COURT:  -- item advertising child pornography

16   between on or about --

17             MR. JONES:  Should be August 19, 2014.

18             THE COURT:  All right.  Thank you.

19             MR. JONES:  And the second thing, Your Honor, the

20   Government submits that the first -- the second to the last

21   sentence should be taken out "if you found that the offense of

22   advertising child pornography was a predicate offense, skip

23   Count Two and continue to Count Three."

24             Your Honor, if for some reason the case were to go

25   up on appeal and there is any -- maybe an issue with the

1    enterprise charge, then we would still have the conspiracy to

2    advertise.  So we just admit just deleting that sentence

3    altogether.

4              MS. RANDALL:  Basically, Your Honor, we feel like

5    the interrogatory, by having them check which block, is going

6    to answer our question as to whether there's a double jeopardy

7    issue.

8              MR. JONES:  So it would be --

9              MS. RANDALL:  If you instruct them not to go to

10   Count Two and then for some reason Count One is overturned or

11   vacated by the Court of Appeals, they find for some reason

12   that the Government didn't prove it or the statute turns out

13   to be unconstitutional or some other argument is made, when it

14   comes back for resentencing at that point, Judge, you should

15   be allowed to impose a sentence on Count Two because the

16   double jeopardy issue no longer exists.  If they're not

17   allowed to consider it we won't know what they would have done

18   on Count Two.

19             THE COURT:  What do you propose to do?  Just delete

20   that sentence.

21             MS. RANDALL:  Yes, Your Honor.

22             MR. JONES:  Yes, Your Honor.

23             MS. RANDALL:  We would just leave the blocks for

24   them to check because then we would know what they were

25   convicting him on, and Your Honor would know if there was an

1    actual double jeopardy issue.

2            MR. ADOLF:  Judge, I think the same case law that

3    the Government cited in support of the harmlessness of the

4    error also said that -- because there are plenty of cases that

5    say that in that exact situation, let's say where the jury

6    convicts on Count One and then is told not to consider the

7    lesser offense.  And if that goes up on appeal and it turns

8    out there's a defect in Count One, if that defect would not

9    have infected Count Two then the appellate court can

10   absolutely substitute Count Two, and there is case law to that

11   effect.  So it's the same harmless error problem.

12           And I think -- I'm not sure how it is that the

13   Government thinks that the jury checking the box about what

14   they -- that they found a particular count obviates any kind

15   of double jeopardy problem.  I think that's what causes the

16   double jeopardy problem.

17           THE COURT:  All right.

18           MS. RANDALL:  I just think we know there's a double

19   jeopardy problem if we check it.

20           THE COURT:  I'll overrule the objection and we will

21   leave it as it is.  Is that everything?

22           MR. ADOLF:  Judge, just for the record.  I don't

23   know if it's necessary or not, but renewing my objection to

24   the order that the counts are considered in and the use of --

25   and the use of the advertising count and the possession count,

1   since those dates are co-extensive as being potentially
2   different incidents, I think I argued on Rule 29 since they
3   are all the same date they have to be the same incident and
4   therefore only one of them could be considered as a predicate.
5   I understand, Your Honor, denied that in the context of the
6   Rule 29, but I'm renewing that objection for the purpose of
7   objecting to the instructions and the special interrogatory.
8           THE COURT:  All right, sir, it will be overruled.
9           MR. ADOLF:  Thank you.
10          THE COURT:  May we have the jury, please?
11          (The jury was returned to the courtroom.)
12          THE COURT:  Good morning, members of the jury.
13          THE JURY:  Good morning.
14          THE COURT:  We'll proceed as we talked about
15  yesterday.  And as I indicated earlier, we'll go into jury
16  instructions, I'll give you part of them now and then we will
17  have the arguments of the attorneys and then we'll have the
18  balance of the instructions before it is time for
19  deliberation.
20          So now that you have heard the evidence, and you
21  will soon hear the arguments of counsel, I will instruct you
22  as to the law that applies to this case.
23          As I say, I'll give you part of it at this time.
24          I will first instruct you on some rules for jury
25  consideration of cases of this type, including how to assess

1  the credibility of witnesses, then I will discuss the offenses

2  charged in the particular case after the arguments.  At that

3  time I will also give you the elements of each charge and then

4  give you some directions to guide you in your deliberations.

5          Can all of you hear me okay?

6          THE JURY:  (Indicating.)

7          THE COURT:  It is your duty and your responsibility

8  in the trial to find the facts.  You may find those facts only

9  from the evidence which was presented during this trial.  That

10  consists of the testimony of the witnesses who have been

11  called, and sworn and testified in your presence, the exhibits

12  which have been admitted into evidence by the Court, and

13  that's what you base your decisions on.

14          In reaching your decision as to the facts, it is

15  your sworn duty to follow the law as the Court instructs you.

16  You will apply the law given to you by the Court to the facts

17  which you find from the evidence, and reach a verdict

18  accordingly.

19          Now keep in mind that the Court's instructions as

20  I'm giving them to you will be available to you in hard copy

21  in the jury room and also be on the video or digital means in

22  the jury room.  So if you wanted to look at any part of my

23  instructions again, you could simply do it readily in the jury

24  room during deliberations.

25          Now counsel may refer to some of the governing rules

1  of law in their arguments.  If, however, any difference

2  appears to you from the law as stated by counsel and that

3  given to you by the Court, obviously, you would be following

4  the instructions of the Court.

5          You are not to single out any one instruction alone

6  as stating the law, but must consider all of the instructions

7  as a whole.  And you may not substitute or follow any personal

8  or private notion or opinion as to what the law is or ought to

9  be.

10          You are required to perform these duties without

11  bias, or prejudice, or sympathy for or against any party.  The

12  law does not permit jurors to decide cases on the basis of

13  bias, or prejudice, or sympathy or any perceived public

14  opinion or any basis other than on the basis of the facts and

15  the law that arise in this particular case.

16          Now this case involves seven charges brought by a

17  Second Superseding Bill of Indictment which the Court will

18  refer to simply as the "Bill of Indictment."

19          The first charge may be encapsulated by the words

20  "Engaging in a Child Exploitation Enterprise" and that comes

21  under the Section 2252A(g).  That's Count One, Child

22  Exploitation Enterprise is the charge.

23          The second charge is Conspiracy to Advertise Child

24  Pornography, in violation of 18 U.S. Code 2251(d) and (e),

25  that's Count Two.

1         The third count is Advertising Child Pornography, in

2   violation of 18 U.S. Code 2251(d).

3         The next three charges are Transporting or Shipping

4   Child Pornography, in violation of Section 2252A(a)(1), and

5   that's Counts Four through Six.

6         And, finally, the seventh charge is Possession of

7   Child Pornography, in violation of 18 U.S. Code

8   2252A(a)(5)(b), that's Count Seven.

9         So you are instructed that an indictment, the one

10  which brings these charges, is but a formal method of accusing

11  the defendant of a crime.  In this case there are seven crimes

12  charged.  It is used to inform the defendant of the charges

13  against him and bring him to trial.  It is not evidence of any

14  kind against the defendant, nor does it permit any presumption

15  or inference of guilt.  The indictment is not consistent

16  either with guilt or lack of guilt.  It simply puts that

17  question at issue for your decision.

18        At the arraignment, the defendant entered a plea of

19  not guilty to these charges and thereby made a general denial

20  of all the accusations contained in the Bill of Indictment.

21        So it is up to you, the jury, to decide if, in fact,

22  the defendant is guilty or not guilty of the charges outlined

23  in the Indictment.

24        Now every defendant in a criminal case, and of

25  course the defendant here, is presumed to be innocent of a

1  crime at the outset, and this presumption continues throughout

2  the course of the trial.  This presumption will end as to any

3  count that you are considering, only if you reach the jury

4  room and arrive unanimously at the conclusion, if you do, that

5  the Government has shown to your satisfaction that the

6  defendant is guilty beyond a reasonable doubt as to that count

7  of the indictment.  This burden on the Government does not

8  change at any time during the course of the trial.  The

9  presumption of innocence in favor of the defendant is not a

10 mere formality to be disregarded by the jury at its pleasure.

11 It is a substantive part of our criminal law.  Accordingly,

12 the Government must prove each of the elements of the crimes

13 charged beyond a reasonable doubt before there could be a

14 conviction on any particular count or counts.

15        Now since, at the outset, the law presumes the

16 defendant to be innocent, the defendant begins the trial with

17 a clean slate.  The presumption of innocence is, therefore,

18 sufficient to acquit the defendant unless overcome by evidence

19 of guilt proven beyond a reasonable doubt.

20        The law permits only the evidence actually presented

21 to the jury to be considered in support of the charge and any

22 charge against him.  If the evidence is sufficient to overcome

23 the presumption of innocence, and to convince you beyond a

24 reasonable doubt of the guilt of the defendant as to a

25 particular charge or charges, then it would be your duty to

1  find him guilty accordingly.  But if you have a reasonable

2  doubt as to this guilt on any charge or charges, then it would

3  be your duty to give him the benefit of that doubt and acquit

4  him of any such charges.

5          Now, the Government has the burden of proving to you

6  its contentions and each element of the offenses charged

7  beyond a reasonable doubt.

8          The term "reasonable doubt" means just what it says.

9  It is a doubt based upon reason and common sense.  Its meaning

10  is no doubt self-evident and understood by you, and the Court

11  will not attempt to define it any further.

12          There are two types of evidence which a jury may

13  properly assess in determining whether the Government has met

14  its burden of proof as to an offense.  One is direct evidence,

15  such as testimony of an eyewitness.  The other is

16  circumstantial evidence, proof of a chain of circumstances

17  pointing to the commission of the offense.

18          Circumstantial evidence is evidence of facts or

19  circumstances from which the existence or nonexistence of

20  other facts in controversy may be inferred.  As a general

21  rule, the law makes no distinction between direct and

22  circumstantial evidence, it simply requires that, before

23  convicting a defendant, the jury must be satisfied of the

24  guilt of that defendant beyond a reasonable doubt from all the

25  evidence in the case.

1    It can be said that circumstantial evidence may in
2  some cases point to a wholly incorrect result.  Yet, this is
3  equally true of testimonial evidence.  With both types of
4  evidence, you are asked to weigh the chances that the evidence
5  correctly points to the establishment of the facts against the
6  possibility of inaccuracy or ambiguous inferences.  With both
7  types of evidence, you must use your experience with people
8  and events in weighing the evidence.
9    A certain chart or summary and perhaps more than one
10  has been prepared by the Government and shown to you.  These
11  have been admitted into evidence during the trial for the
12  purpose of explaining facts that are allegedly contained in
13  books, records, or other documents which are also in evidence
14  in the case.
15    Usually this is done when there is voluminous
16  evidence.
17    You may consider the charts and summaries such as
18  you may recall from the evidence as you would any other
19  evidence admitted during the trial and give them such weight
20  as you feel they deserve, considering the way they are
21  prepared and any testimony you heard about how they came
22  about.
23    Now, members of the jury, where there's a question
24  as to what took place you must determine the credibility of
25  the witnesses.  The Court instructs you that you are the sole

1    judges of the credibility of the witnesses and the weight that

2    their testimony deserves.  While there's no absolute or

3    arbitrary guide or measure by which you determine the

4    truthfulness or untruthfulness of a witness, the Court will

5    point out to you certain general principles which you should

6    consider as you pass upon this phase of the case.  Now among

7    the things you may properly consider are:

8            Whether the witness has any motive or reason for

9    being truthful or untruthful; the witness' interest, if any,

10   in the outcome of the case; whether there has appeared from

11   the witness's attitude or conduct any bias or prejudice or

12   feeling which may cause that person's testimony to be

13   influenced; whether the testimony bears the earmarks of

14   truthfulness; to what extent, if any, the testimony is

15   corroborated or confirmed by other testimony which is not

16   questioned, or to what extent, if any, it's corroborated or

17   confirmed by known or admitted facts; you may also consider

18   the intelligence and mental capacity of a witness and the

19   witness' opportunity to have accurate knowledge of the matters

20   to which the person testified.

21           So I instruct you that you may believe all that a

22   witness says or none, you may believe part and disbelieve

23   part.  You may consider the interest which the witness may

24   have in the verdict, the demeanor of the witness on the stand,

25   the reasons for his or her testimony, and the means by which

1    the witness may know the things to which he or she has
2    testified.  If you find a witness is interested in your
3    verdict, it is your duty to scrutinize that testimony closely,
4    but after you've done so and if you find he or she is telling
5    the truth in whole or in part, then you would give that
6    testimony the same weight you would that of a disinterested
7    witness.  In short, it is your duty to find the truth of this
8    matter.

9            The Defendant, Steven W. Chase, has elected not to
10   testify in this case.  The Court instructs you that the
11   defendant has a constitutional right not to take the stand and
12   testify and not to speak at all or offer any evidence, the
13   burden of proof being entirely upon the Government.  Thus, you
14   must draw no adverse inference of any kind from his exercise
15   of his privilege not to testify.  This right is a fundamental
16   one in America's criminal law and one which cannot be
17   disregarded by the jury at its pleasure.

18           Now you heard the testimony of a witness who has
19   been convicted of a felony.  That is, you heard Witness
20   Browning indicate that he had pled guilty to a charge in the
21   indictment here.  Now, that could be a crime for which a
22   person may receive a prison sentence of more than one year.
23   Prior conviction of a crime that is a felony is one of the
24   circumstances that you may consider in determining the
25   credibility of a witness.  While the testimony of a witness

1   maybe discredited or impeached by evidence showing that he has

2   been convicted of a felony, it is the sole and exclusive right

3   of the jury to determine the weight to be given to any prior

4   conviction as impeachment and the weight to be given to the

5   testimony of someone who has previously been convicted of a

6   felony.

7           Now, the testimony of an alleged accomplice, that

8   is, someone who said that he participated in the commission of

9   a crime must be examined and weighed by the jury with greater

10  care than the testimony of a witness who did not so

11  participate.

12          David Lynn Browning may be considered an alleged

13  accomplice in this case.

14          The fact that an alleged accomplice has entered a

15  plea of guilty to the offense charged is not evidence of the

16  guilt of any other person, including the defendant.

17          The jury must determine whether the testimony of an

18  accomplice has been affected by self-interest, by an agreement

19  made with the Government, or by his own interest in the

20  outcome of the case, or by prejudice against the defendant.

21          You have heard the evidence that witness David Lynn

22  Browning has pled guilty to the crime which arose out of the

23  same events for which he is on trial here -- or for which,

24  rather, the defendant is on trial.  You must not consider that

25  guilty plea as any evidence of this defendant's guilt.  You

1   may consider that witness's guilty plea only for determining

2   the truthfulness that you would attribute, or lack of it, and

3   whether you would rely on that testimony.

4         The rules of evidence ordinarily do not permit

5   witnesses to testify as to their own opinions or their own

6   conclusions about important issues in a trial.

7         An exception to this rule exists as to those

8   witnesses who are described as "expert witnesses."

9         An "expert witness" is someone who, by education or

10  experience, may have become knowledgeable in some technical,

11  scientific, or very specialized area.  If such knowledge or

12  experience may be of assistance to you in understanding some

13  of the evidence or in determining a fact, then an "expert

14  witness" in that area may state an opinion as to a matter in

15  which he or she claims to be an expert.

16        You should consider the expert opinions received in

17  evidence in this case, that is, the testimony of Daniel

18  O'Donnell concerning conducting investigations into online

19  child exploitation websites; the testimony of Ray Hus

20  concerning digital media forensics; and the testimony of Jon

21  Shumway concerning digital media forensics, and give that

22  testimony such weight as you think it deserves.

23        You should consider the testimony of the expert

24  witness just as you consider other evidence in the case.  If

25  you should decide that the opinion of the witness is not based

1    upon sufficient education or experience, or if you should

2    conclude that the reasons given in support of the opinion are

3    not sound, or if you should conclude that the opinion is

4    outweighed by other evidence, then you may disregard that

5    opinion in part or in its entirety.

6            As I have told you before, you are the sole judges

7    of the facts.

8            Now, during the trial you heard testimony from those

9    Government witnesses I just mentioned, O'Donnell, Shumway, and

10   Hus, and these were qualified as experts, but they were also

11   involved in the investigation into the PlayPen website.  To

12   the extent these witnesses, or any of them, rendered opinions

13   regarding investigations into online child exploitation

14   websites and digital media forensics generally, including

15   opinions about the t-o-r network, terminology used on online

16   child exploitation websites, and the copying of digital media

17   images, you should treat this testimony as expert testimony.

18   To the extent these witnesses also provided testimony about

19   their involvement in the investigation into the PlayPen

20   website, this testimony is not expert testimony and should be

21   considered fact witness testimony, just as any other witness.

22           Your decision on the facts of this case should not

23   be determined by the number of witnesses testifying for or

24   against any party.  You should consider all the facts and

25   circumstances in evidence to determine which of the witnesses

1  you choose to believe or not to believe.

2        Keep in mind that the defendant is not on trial for

3  any offense not charged in this Bill of Indictment.  Nor

4  should you draw any inference concerning guilt or lack of

5  guilt of any crime charged in this case based on evidence, if

6  there was any, of the defendant's involvement with any other

7  offense not charged in this Bill of Indictment.

8        You must not convict the defendant unless the

9  Government has proven beyond a reasonable doubt each and every

10  essential element of the particular crime charged in the Bill

11  of Indictment against him which you are considering.

12        Now, you may use the notes if you took any during

13  the trial.  However, because many courts do not permit

14  notetaking by jurors, a word of caution is in order.

15  Frequently, there is a tendency to attach too much importance

16  to what a person writes down.  You are instructed that your

17  notes are only a tool to aid your own individual memory, and

18  should not be substituted for your memory.  Moreover, you

19  should not compare your notes with those of other jurors in

20  determining the content of testimony or in evaluating the

21  importance of any evidence.  Remember, your notes are not

22  evidence, and are by no means a complete outline of the

23  proceedings or a list of the highlights of the trial.  Your

24  memory should be your greatest asset when it comes to this

25  case in deciding it.  If your memory should differ from your

1    notes, then you would rely on your memory and not on your

2    notes.

3           Now the punishment provided by law for the offense

4    charged in the various ones in the indictment, should there be

5    a verdict of guilty of any offense, is a matter exclusively

6    within the province of the Court.  The idea of punishment

7    should never be considered by the jury in any way in arriving

8    at an impartial verdict as to the guilt or innocence of the

9    accused as to any count or counts.

10          Thank you very much for your attention to these

11   matters.  We will now move to arguments.

12          Under our rules the Government has the opportunity

13   to make an opening statement or, rather, a summation statement

14   to you at this time.  And then the defendant will have an

15   opportunity to present arguments on behalf of the defendant

16   and, of course, defense counsel may also refer to arguments

17   made by the Government in reply.  And, finally, the Government

18   will have a brief opportunity to respond to defense arguments.

19          Is the Government ready to proceed?

20          MS. RANDALL:  We are, Your Honor.

21          THE COURT:  You may do so.

22          MS. RANDALL:  Thank you.

23          Ladies and gentlemen of the jury, over the past few

24   days you have learned about one of the darkest corners of

25   what's known as the Dark Web.  A place where sexual abuse of

1  children is celebrated and even adored by hundreds of

2  thousands of users; that place was PlayPen.

3      PlayPen was a website dedicated to people who wanted

4  to share and seek out child pornography.  It was a website

5  that was created and maintained from August of 2014 until

6  February 20, 2015, by a user named PlayPen.  So who exactly is

7  PlayPen?  Well, despite his attempts to hide and even mislead

8  others on the website and through his records, there is clear

9  evidence that PlayPen is only one man, the Defendant Steven

10  Chase.  So let's examine the evidence that shows the defendant

11  Steven Chase's PlayPen.

12      In December of 2014 you heard the FBI got a lead

13  that helped him discover that the PlayPen website was being

14  housed on a server here in Lenoir, North Carolina, a place

15  called CentriLogic.  They issued numerous subpoenas and legal

16  process to this particular company in an attempt to find out

17  what they could about who was running this website.  And all

18  the information that they received took them directly to the

19  defendant.  Let's look at what they received.

20      So as I said, if you look at the upper left hand

21  corner of the graphic in front of you, the Playpen website, it

22  took them to CentriLogic.

23      CentriLogic provided them with records that included

24  the last log-in to the customer account that was responsible

25  for the PlayPen website, and that included an IP address that

1    was being used by 3119 Carrabassett Drive in Carrabassett

2    Valley, Maine.  Who was staying at the house at the time the

3    account was being logged into?  The Defendant, Steven Chase.

4            CentriLogic also showed that the account that was

5    maintaining the PlayPen website was in the name of someone

6    named Mike Taylor in Austin, Texas.  The investigation

7    revealed that name and address to be fictitious.  And no one

8    was surprised by this because no one expected anyone to use

9    their real name to be used to set up an account to be used to

10   house child pornography.

11           But the account still had to be paid for.  So they

12   tracked the records for who was paying for the server space to

13   maintain the child pornography website and that took them to

14   PayPal.  And those records from PayPal, they again reviewed

15   the IP addresses.  And just to refresh your recollection, IP

16   addresses are kind of an individualized phone number for a

17   person's computer that will allow the agents to trace it back

18   to a certain account.

19           In this case they learned that the PayPal account

20   was being accessed from two different places they could find.

21   One being, again, the 3119 Carrabassett Drive residence in

22   Maine.  The other being a residence in Naples, Florida.  What

23   do those two residences have in common?  The Defendant, Steven

24   Chase.

25           Now an email address was also used to sign up for

1  the server space to house the Playpen website.  The IP address

2  logs for the email address that was used were also examined.

3  And guess what the agents found again?  The email account was

4  being accessed from 3119 Carrabassett Drive in Maine and the

5  Naples, Florida residence.  Again, what is the one unifying

6  factor about those residences?  The Defendant, Steven Chase.

7          And then, finally, the actual PlayPen administrator

8  account was logged into directly from an IP address that could

9  be traced.  When the agents traced that address they came back

10  to the address in Naples, Florida.  And who lives in that

11  house?  The Defendant Steven Chase.

12          So no matter which lead the FBI followed, it always

13  went straight to the defendant.

14          Now you've heard a lot about the IP addresses in

15  this case.  And, unfortunately, a lot of the IP address in

16  this case were unable to be traced.  Because -- not traced,

17  they were not helpful or necessarily reliable because they

18  came back to VPNs which are Virtual Private Networks or Tor

19  nodes.  And as you heard, those are two mechanisms that people

20  use to hide their location when using the internet.  But we do

21  know that the defendant was using the VPN software as well as

22  Tor.

23          So after the agents had gathered all this

24  information they executed a search warrant at the defendant's

25  residence in Naples, Florida.  And the evidence they found in

1    that home only solidified what they already knew, that the

2    defendant was PlayPen.

3           Just after midnight on February 20th, they attempted

4    to enter the home in Naples, Florida.  And as they -- as you

5    heard from Special Agent Baugher about how they approached the

6    house with the intent to do a no-knock search warrant but they

7    were compromised when they saw the defendant through the

8    window.

9           So as they attempted to enter the home, Special

10   Agent Baugher is yelling, "Police.  Search warrant."  As he's

11   yelling that, Chase is fighting two agents to keep them from

12   entering his home.  And he puts up a good fight.  There are

13   two agents pushing on the door with Mr. Chase pushing back

14   against them.  But the two agents do eventually win the fight

15   and the FBI enter the home.  Even after the FBI are in the

16   home and actually fallen on top of Mr. Chase, he continues to

17   struggle to get away and is seen lurching towards his laptop

18   computer.  This computer that the SWAT team was there to try

19   and protect.

20          So why would someone try to fight FBI agents to keep

21   a door closed; then when they do make entry, lurch towards

22   their computer?  That's someone who knows that all the

23   evidence that is needed to convict him was not only on the

24   computer, but was opened and obvious to anyone who just walked

25   up to the computer.

1    If Mr. Chase could just get to that computer that
2 day he could have pulled out the thumb drive, encrypting it,
3 and shutting computer and hopefully, at least, keeping the FBI
4 from finding some of the evidence against him.  But luckily he
5 didn't make it there and the agents were able to secure the
6 computer, the thumb drive, as well as his cell phone and
7 conduct examinations on the items that they recovered that
8 day.

9    Let's look first at the computer, the items he was
10 trying so hard to get to.

11    When the agents approached the computer this is what
12 they saw.  The defendant was actively logged into the PlayPen
13 profile, the administrator of the website.  You can clearly
14 see on the screen the first forum that is visible to someone
15 looking at the computer is the Administration forum.  A forum
16 that's only available to the people who are the administrators
17 and moderators of the website.

18    And on the upper right hand corner -- I know it's
19 hard to see in this picture but you can remember the closer up
20 picture, you see that where he was logged in as PlayPen.

21    Also on this computer the agents discovered he was
22 actually logged into the server, the administration kind of
23 server that's used to maintain the website.

24    And as you can also see in this picture there's a
25 thumb drive that's attached to the laptop.  And open on the

1    computer when the agents approached was a file titled "PP_2."

2         So at the moment the agents entered this house,

3    while this computer was logged into the administrative account

4    of PlayPen, while they were logged into the administrative

5    part of the server that housed PlayPen, and a file containing

6    the most relevant information to operating the website was

7    open, the defendant was also operating a very effective

8    antivirus anti mal-ware program.  A program that was so good

9    and so strong that when the FBI attempted to conduct an

10   on-scene forensic, it immediately detected the program and

11   actually deleted the program from the forensic examiner's

12   thumb drive.

13        So once the computer was seized you heard about the

14   process it went through to be analyzed.  And after it was

15   analyzed they found numerous pieces of information on the

16   computer linked to the PlayPen website.  Again, this is the

17   defendant's computer.  First, they found various forums on the

18   PayPal website had been visited from this computer.  They

19   could tell this by looking at the browser history.  If you

20   visit a website it leaves a little -- a track on your computer

21   so the computer knows you've been there.

22        So in this case they were able to tell that someone

23   using that computer had been to the Administration forum of

24   the PlayPen website, the "Preteen Videos Girls HC" section,

25   and the "Preteen Video Boys HC" section, and the "Preteen Girl

1    Chan" section.  They also found bookmarks on the computer.

2         Now bookmarks are not something that's created by

3    the computer such as the browser history.  Bookmarks are

4    something that are user created.  A person accessing the

5    computer has to choose to save a website as a bookmark.  It's

6    a way to get there quicker, it's a shortcut.

7         So in this case the user of this computer wanted a

8    shortcut to three specific sites.  One, the PlayPen index.

9    That was the picture we showed you that listed all the forums

10   that the website had to offer.  The second was the PlayPen

11   image hosting, and the third was the PlayPen file hosting.

12   The other two parts of the website that helped it to run

13   together.

14        They also found Google searches relevant to child

15   pornography in the PlayPen website.  They found a person using

16   this computer had searched for the PlayPen web address.  They

17   searched for the search term "Siberian Mouse."  What's

18   significant about that?  That's not a term someone normally

19   searches for.  You wouldn't know that kind of term was

20   associated with child pornography unless you're someone who's

21   been involved with child pornography and extremely familiar

22   with it to know that that term will take you to somewhere

23   where you could find child pornography.

24        He also searched child porn on Netflix and Tor,

25   which as you heard, PlayPen was a website on Tor.

1          But that's not the only evidence the Government

2    found on the computer.  They found an actual screen shot --

3    well, actually, I'll come back to that in a minute.  I'm going

4    to show you the screen shot.

5          They also found child pornography in the recycle bin

6    of the defendant's computer, one video and one image.  They

7    also found the PlayPen logo actually in the defendant's

8    recycle bin as well.

9          Actually they found a screen shot of the actual

10   PlayPen saved to the defendant's computer.  This is not like

11   the undercover session the FBI captured.  That's a picture

12   that was created by the user of the laptop and saved to the

13   laptop.  And it shows that the person on the laptop was logged

14   into the Administration section of the PlayPen website, and in

15   the process of posting a reply about a logo contest.  It also

16   shows the computer had the VPN software, Tor, and some other

17   software programs.

18         Now they also conducted an examination of the thumb

19   drive that was attached to the defendant's computer, as well

20   as the defendant's cell phone.

21         Look first at the thumb drive.  First of all they

22   found over 8,900 files depicting child abusive and exploitive

23   material.  They also found backup copies of the PlayPen

24   website.  And even more kind of unusual, something that was --

25   they found that was, I don't think -- that was kind of a

1    surprise, was a "Stuff" file.  This file contained the text

2    that actually gave you directions on how to create,

3    specifically, the PlayPen website on Tor as a hidden service.

4    These aren't just general directions for how to create a

5    website or even how to create a website on Tor.  It's how to

6    create the PlayPen website on Tor.  That was saved to the

7    defendant's encrypted thumb drive.

8         There was also another file entitled, "PP_2."  This

9    was a file actually opened when the agents executed the search

10   warrant.  And this -- there was plenty of information in this

11   file.  I just picked out a couple of pieces here to highlight.

12        If you look at the top right corner of the screen it

13   shows the Mike T. Yahoo address with the -- underneath it, at

14   ##MINE9999##.  As you know through the evidence, the Mike T.

15   email address was the email address associated with the

16   account used to house -- that created the PlayPen server.  It

17   was also the email address that was associated with the PayPal

18   account that was paying for the server space to allow the

19   PlayPen server to exist.

20        Then following up with the rest of the investigative

21   information, Mike Taylor 2403 West 8th Street, Austin, Texas.

22   That is the fictitious identity the defendant assumed to

23   create this account.  That is the information that was in the

24   Playpen -- the PayPal records, as well as the CentriLogic

25   records that were used to maintain this website.  That

1    information was found in this file on the defendant's
2    encrypted thumb drive.
3            Similar next to it is the PayPal -- it shows the
4    PayPal information that it was using the Mike T. Yahoo account
5    and had the password underneath it.
6            And then below that in the same file there was a
7    link that took you to -- that showed the billing area of the
8    CentriLogic server, and, again, had the email address that was
9    used to set up the child pornography website we're here for
10   today.
11           Now if you look at each of those entries, what
12   matches between them besides the email address is that
13   ##MINE9999## which creates some sort of password, is what
14   we're inferring from the position of that and how it is
15   associated with each of those accounts.  Do you remember where
16   we saw that in another place?  In the defendant's home on a
17   piece of paper pinned to a bulletin board.  He had a list of
18   different accounts, and for all of them you can see clearly
19   the MINE9999 written out over and over again on a piece of
20   paper found in his home.
21           Then finally in that "PP_ 2" account, the one last
22   thing I want to draw your attention to is, it actually had
23   links to the "Hard Candy Hidden Wiki" site.  And as you heard
24   from several different witnesses, "Hard Candy" was sort of an
25   index for people to use to find child pornography websites.

1    Continue to go on the "PP_2" file, there is even

2 more information related to PlayPen.  It had different URLs or

3 website addresses and user IDs.  Again, all associated with

4 PlayPen.

5    If you look at the defendant's personal cell phone

6 there was also information on there linking him to PlayPen.

7 These were Google searches that were pulled from the

8 defendant's cell phone showing his cell phone had been used to

9 search for "PlayPen.onion, Playpen CP Tor Onion."  And you

10 heard CP stands for child pornography in these cases.  And

11 again, "Playpen.onion."  So someone was using the defendant's

12 phone to actually conduct searches that would take them to the

13 Playpen website that could be found on Google.

14    Now the defendant had brought up hacking and

15 mal-ware through several of the witnesses asking them

16 questions about that.  There seemed to be a suggestion that

17 somebody else took over the defendant's computer remotely

18 controlling it to commit the crime.

19    But what they're actually suggesting is that someone

20 was able to hack into the defendant's computer while he was

21 running antivirus software, remotely control it, put evidence

22 of the crime on the computer, put evidence of the crime on his

23 encrypted hard drive, and put evidence of the crime on his

24 phone.  Oh, and it just so happens that the password -- or

25 excuse me, the password used by the hacker who created this

1    supposed website, also knew the password that the defendant

2    had written down on a piece of paper in his house.

3              The fact is, there's been no evidence of any

4    mal-ware or virus on the defendant's computer.  And the fact

5    is, internet activity was being monitored at various times at

6    both the times he was in the residence in Naples and in Maine.

7              And as you heard Special Agent Dan Alfin testify

8    that there was no evidence of hacking or remote control of

9    anyone remotely accessing the defendant's computer in any of

10   those logs.  So any suggestion of a hacker putting this

11   information on the computer, his phone, or his encrypted thumb

12   drive is mere speculation.

13             When you look at all of this evidence, it's clear

14   there's only one person who can be the administrator of

15   PlayPen, and that's Steven Chase.

16             So now that we know who PlayPen is, let's look at

17   the charges that he's facing.  As you heard the defendant or,

18   excuse me, the Judge told you about seven different charges

19   he's facing ranging from enterprise, conspiracy to advertise,

20   advertise, three counts of transportation and possession.  I'm

21   actually going to start with possession and work my way back

22   up.

23             And the Judge is going to instruct you after the

24   arguments about the elements of these crimes and what the law

25   is.  What I'm going to do here is kind of give you a quick

1  summary of the law so we can talk about how the evidence

2  applies to it.

3        So as I said we're going to talk about possession of

4  child pornography first.

5        Possession of child pornography is when a person

6  knowingly possesses material that contains at least one image

7  of child pornography, knew it was child pornography, and that

8  the child pornography in or affected interstate or foreign

9  commerce or used a means or facility of interstate or foreign

10 commerce.

11       So what is child pornography?  Child pornography is

12 a visual depiction of a person under the age of 18 engaged in

13 sexually explicit conduct.  And sexually explicit conduct, as

14 the Judge will instruct you, can range from different things.

15 It can be vaginal penetration, oral penetration, bestiality,

16 masturbation, also includes lewd and lascivious display of the

17 genitals of the child.

18       So he'll instruct you as to that definition, that's

19 generally what you should be looking for in deciding if

20 something is child pornography.

21       So what is possession?

22       Well, there's several different kinds of possession.

23 There's actual possession or there's constructive possession.

24 Right now I'm in actual possession of this computer.  I'm

25 manipulating it, controlling it, moving it around.  You can

1    see me doing that.

2            I'm in constructive possession of my computer back

3    at my house.  I have a key to get to my house.  I know the

4    password to get on the computer.  And I know what's stored on

5    there, there are pictures, there are documents, there's all

6    sorts of information on there that if I want to I can go home

7    and put in my password and delete some of the pictures, move

8    the pictures to the folder, email some pictures.  So even

9    though I don't have the computer here with me, I'm still in

10   constructive possession of it because I've got the means and

11   the ability to exert control over that computer.

12           There's also joint versus sole possession.

13           Sole possession is when you possess something alone.

14   But the law also recognizes joint possession where you possess

15   stuff with other people, more than one person can possess an

16   item.

17           And then when I talk about the interstate and

18   foreign commerce, or a means of interstate -- or excuse me, a

19   means or facility of interstate commerce, that's things such

20   as traveling across state lines, sending a photograph via the

21   internet crosses state lines.  The internet, just by itself is

22   a means of interstate -- excuse me, is a facility of

23   interstate or foreign commerce.

24           So in this case the defendant was in constructive

25   possession of all of the child pornography that was on the

1    PlayPen website.  As the main administrator he exerted the

2    ultimate control over it.  Other people may upload most of the

3    pictures, but he could delete them.  He could move them.  He

4    could download them and save them.

5          In fact, he acknowledges this fact as much in his

6    posts where someone says to him, "The new file hoster is great

7    news for us and great news for the admin of PlayPen.  You

8    don't have to download CP anymore, because we are now going to

9    be sending it all to you."

10          So they're saying by you controlling the website you

11   don't have to go looking for it.  We're just going to give it

12   to you then you have it.

13          So PlayPen acknowledges, "That's why" happy face

14   "that's why I asked uploaded files be encrypted and password."

15          The Government must also show that at least one of

16   the images depicted a minor under the age of 12.  We presented

17   multiple images to the jury that would meet that definition.

18   I'm not going to show you the images again.  They will

19   available if anybody needs to look at them to determine if the

20   Government has met its burden.  But for now I'm just going to

21   describe them to refresh your memory.

22          First of all there was a toddler video we showed you

23   that contained three separate images of three children under

24   the age of two whose genitals were displayed in lewd and

25   lascivious manner.  There was a puppy thread which was a

1   series of photos with a very young girl children, was clearly
2   under the age of 12, having her genitals exposed.  And then,
3   finally, there was the "My Pee Collection" three images --
4   series of images we showed you.  That was the thread that was
5   last accessed by the defendant before his arrest.  And those
6   images also depicted young girls engaged in both urination and
7   lewd and lascivious display of their genitals.

8           So, ladies and gentlemen, that's the evidence that
9   you need to convict the defendant of possession.

10          The defendant is also charged with transportation of
11  child pornography.  He faces three counts.  The three counts
12  of transportation are based on at least three threads we
13  showed you during the trial.  The transportation of child
14  pornography involves the defendant knowingly transported or
15  moving, either across state lines or in and affecting
16  interstate or foreign commerce by using any means or facility
17  of interstate commerce, such as the interstate, a visual
18  depiction of child engaged in sexually explicit conduct.

19          So we showed you each of these three threads as the
20  basis for those charges.  In each of these threads the
21  defendant is using the internet to transport child pornography
22  through a server here in North Carolina where then he made it
23  available to anyone who wants to see it.  So by using the
24  internet to conduct his crime and send these images and
25  videos, he is clearly meeting the element of interstate and

1    foreign commerce.

2          So let's look at the first one on its own.  The

3    PlayPen hosting thread.  Again, I won't show them to you, but

4    they will be available to you if you want to actually pull up

5    a thread and look at any of the images or videos.  But that's

6    the thread where someone reported, "Hey Admin, I'm having some

7    trouble getting to these photos, these are links, I can't get

8    to them.  The defendant PlayPen responds and posts three

9    series -- they call them contact sheets, those little

10   previews.  Posted three series of photos depicting

11   prepubescent children engaged in various sex acts.  He's the

12   one who made that available on the server in North Carolina by

13   posting it on there.  So not only is the person responding to,

14   but any other user on the website who happened to click on

15   that thread.

16         Count Five is a thread titled "Web Cam Three Girls."

17   This is a thread that was posted in the:  Preteen Video Girls

18   HC" section.  As you heard, HC stands for hard core.  The

19   defendant created this thread himself.  In it he used it to

20   share the video of three minor females undressing and dancing

21   in front of a camera, and the girls exposing their genitals

22   over and over to the camera.

23         Another user replies, the defendant posts, "Thanks

24   muchly."

25         Count Six is also posted in the "Preteen Video Girls

1  HC" section.  And, again, in this case the defendant is

2  uploading, through the North Carolina server, links to show

3  that, to allow other people to access a video called

4  "NattyDatty 8 YO."  That was the video that depicted a girl no

5  older than eight years old.  You heard from the agent who

6  actually met her.  He met her, she is eight years old, being

7  raped by her father.  A video that was produced in Hawaii, and

8  then unfortunately they are disseminated afterwards so that

9  they then end up in the defendant's possession and he could

10  then host it for over 100,000 people to view and comment on.

11         Moving next to the advertisement charge.

12  Advertising child pornography.  The first thing you may think

13  of is a radio or a television where you hear ads and see

14  commercials.  Those are ads.  But the Judge is going to

15  instruct you as to what the legal definition of what an ad is

16  in this type of case.

17         Clearly you're not going to find a television

18  commercial for child pornography.  Child pornography ads are

19  going to be more discrete.  They're going to be more secret

20  where only people who are looking for them will find them and

21  hopefully law enforcement will not find them.  But basically

22  under the law someone advertises child pornography when they

23  alert other people to where it is with the intent of

24  attracting them to it, showing that -- letting them know it's

25  there or letting them know what they're looking for also

1    qualifies as advertisement.

2          So you don't have to just be sharing.  When you say,

3    I'm looking for this particular image or video, and that is

4    also advertising because you are putting a notice out that you

5    are seeking child pornography.  It doesn't have to be for

6    sale, it just simply has to be something that calls another

7    person's attention to it.

8          So for an advertisement charge we have to show the

9    defendant did some sort of notice or offer to receive,

10   display, or distribute a visual depiction of a minor engaged

11   in sexual explicit conduct.  That they used a facility of

12   interstate or foreign commerce, or that it was transported in

13   interstate or foreign commerce.  And, again, the internet is

14   using the interstate commerce.

15         So let's look at the evidence that the defendant

16   engaged in advertisement of child pornography.

17         PlayPen was an online child pornography bulletin

18   board.  Anyone could join this board as you heard.  They had

19   to find it.  They had to be looking for it.  But then once

20   they found it, anyone could find it.  And a lot of people

21   found it, over 100,000 different accounts were created on this

22   website.

23         This website was designed to allow people to share

24   and seek out the child pornography that they desired.  You

25   heard one of the -- Mr. Browning, who was Stretch Armstrong on

1    the website, testify that in this community of people who like

2    child pornography, that even within that community they have

3    some preferences.  They still have likes and dislikes.  Some

4    people may prefer boys, other people may prefer girls, or

5    certain types of child pornography.

6              So in order to accommodate that when Mr. Chase set

7    up the website.  He set it up so people wanting to see child

8    pornography could find what they were looking for.  He created

9    a different forum ranging from "Jailbait," to "Toddler," to

10   "Chubby," "Incest."  There was even a "Request" thread where

11   people could post their request for what they were looking for

12   and other people could help them find them.  And then within

13   those forums there were sub-forums.  And so what I put up here

14   now on the screen is an example of the sub-forum for the

15   "Girls Hard Core" section within the "Preteen Videos."  So as

16   you can see, when you go into the sub-forum there's a list of

17   threads available within that forum.  You still don't see the

18   pictures or videos, you just see titles.  Titles that are

19   advertising what's within them.  Those are titles that are

20   specifically created by the person who is creating the thread

21   to say what they are either distributing or what they are

22   seeking.

23             And these forums are maintained by the

24   administrators and moderators to make sure the subject matter

25   remained true to what the forum topic said it would be.

1   The defendant, like others, distributed child

2   pornography through these forums. For example, we just talked

3   about this thread. This is the thread that was the "Web Cam

4   Three Girls" that the defendant posted in the "Girls Hard

5   Core" forum area we were just looking at.

6   So in creating the thread, the defendant created a

7   thread called "Web Cam Three Girls." So that anyone visiting

8   the "Girls Hard Core" section would have gone to a website

9   like this and seen "Web Cam Three Girls" created by PlayPen.

10  And they would see this title in this section, and they would

11  know that that thread was offering to share with them a web

12  cam video depicting three pre-teen girls engaged in hard core

13  child pornography.

14  So using just those three words, "Three Girls Web

15  Cam," putting it in this context in this setting, the

16  defendant published and noticed to all the users of the

17  website, as we established, thousands and thousands of

18  individuals, that he was offering to distribute that type of

19  video to all of them.

20  And clearly his ad was successful, because if you

21  look at the ad, the thread was read 8,453 times. So this

22  title is clear and quite enticing and brought a lot of

23  attraction to his ad.

24  Conspiracy to advertise child pornography, we have

25  to prove the advertisement. But we have to prove the

1    defendant agreed with somebody else to commit this crime.  And

2    in this case he clearly conspired with at least one other

3    person to commit this crime.  They agree that they were going

4    to violate the law, the advertising of child pornography

5    together.

6            When the defendant created PlayPen, he was no longer

7    the administrator.  Mr. Browning had told you that.  But as

8    the website grew, he added to his team.  He brought in more

9    administrators as reflected here, we have Vitellius and

10   Isabella.  He added moderators including Stretch Armstrong,

11   the defendant Mr. Browning, and a number of other individuals.

12   And below that were local moderators who have control over

13   individual websites.

14           Together these people jointly agreed that they

15   wanted to create a website safe for people who wanted to offer

16   to distribute, receive, and seek out child pornography.

17   Together they implemented rules.  They didn't want any hurt

18   core video.  They were okay with hard core but not hurt core.

19   They maintained the forums together.  They moved things around

20   to popular forums.

21           You saw some of the postings, Would "this qualify as

22   hurt core?  Should we create this kind of forum?"  Those kind

23   of conversations were going on in a special administration

24   section where they spoke with each other.  They ensured by

25   working together that the ads and notices they posted, both

1   themselves and other people, would be in the proper context to

2   send the message they wanted to send.

3         The defendant was an active part of this conspiracy.

4   At the time the undercover went into his "Stats" page, the

5   defendant had been on the website a total of more than 12

6   days.  That's a lot of hours.  I'm not going to try and do the

7   math.  He created more than 200 posts by that time.

8         Now we don't have to show that the defendant was the

9   most active.  We don't have to show he was the leader of the

10  conspiracy, but that he, in fact, formed an agreement with

11  other people to commit this crime.

12        He participated in the "Admin" section, as I

13  mentioned, discussing the running of the website.  Here are

14  examples of two of the posts he made in that section.  One in

15  which he reaches out and thanks the other people, the other

16  administrators and moderators for their hard work saying, that

17  "PlayPen looks great.  Without you this never would have

18  happened."

19        So clearly they're working together because the

20  PlayPen website was a success at this point.  Talks about the

21  number of members they have.  Even though he pruned members

22  not logged in, he still had 138,000.  Then talks to them a

23  little bit about his went vacation.

24        In the second post he's responding to Stretch

25  Armstrong's post, Mr. Browning's post where he's asking, "What

1  do you think I should do about this video?  I think it

2  qualifies as hurt core.  Is that the type of thing we want in

3  our forum?  Should I remove it?"

4         And the Defendant Chase issues him basically an

5  order, "Just delete it.  Just give him a reason why."  So

6  clearly they're all working together to make sure the board is

7  the type of board where people can find certain types of child

8  pornography.

9         The final charge the defendant is facing is engaging

10  in child exploitation enterprise.  This charge encompasses a

11  lot of the other charges we talked about, the three

12  transportation charges, the advertisement charge, and the

13  possession charges, which is why I started with those

14  explanations first.

15         So we have to show that the defendant committed

16  three or more separate offenses that violated Chapter 110,

17  which include Counts Three through Seven that I just went

18  through, that three or more offenses involved more than one

19  victim, and that the defendant committed those offenses with

20  three or more people.  Otherwise we have to show he was acting

21  in concert.  It's very similar to the conspiracy idea we went

22  through where you make an agreement with someone to violate

23  the law.

24         So if you break those down to individual elements to

25  see if we met them, as I said, first you look at whether there

1   are three separate offenses.  We provided you with five that

2   the defendant has committed.  The law requires that you be

3   unanimous as to at least three of those being committed by the

4   defendant.

5          Second, that there was more than one victim.  If you

6   look at those five counts, ladies and gentlemen, there's

7   clearly more than one victim.  You have the victim from

8   Hawaii, you have the three girls in the web cam video, you

9   have the young children in the response that Mr. Chase made,

10  and then the possession count we talked about three different

11  kids in the "Toddler" section, there was the bondage image.

12  So clearly there was more than one child.

13         Finally, that he and at least three other people

14  agreed that they and perhaps others would violate the laws by

15  a means of common plan or course of action.  Now, we're not

16  required to show that three people committed each of the

17  predicate offenses.  But just as the defendant was committing

18  at least three predicate offenses, he acted in concert with

19  three different people, so that could be one on each.

20         This is a website with over 100,000 members who had

21  a common goal as we discussed.  This massive website was

22  maintained and organized by a team who helped each other and

23  other members to accomplish a common goal.  Mr. Browning, as

24  you heard, was an active member of that team.  You saw his

25  stats.  He was online a lot.  He stayed online some five to

1   six hours a day on this website.  And he offered up this

2   analogy to how the website worked.

3       He said, "It works like a restaurant."  There's a

4   manager who would be Mr. Chase.  He created the website.  He

5   paid for the server space.  He set the original rules.  He had

6   the ultimate power to shut the website down at any time.  And

7   he had assistant managers Vitellius, and Isabella, who you

8   heard was an individual named Michael Fluckiger who helped

9   him, and they were kind of second step down in hierarchy.  And

10  then there were the shift leaders of the restaurant who he

11  analogized as being like a moderator, he and other people who

12  implemented the rules that were set up by the administrators.

13      The defendant relied on this team that he put

14  together to make sure that the child pornography that he

15  jointly possessed and controlled fit within his rules and

16  regulations.  Much like the manager of a restaurant relies on

17  his employees to make sure the restaurant runs smoothly.  And

18  together they worked to keep this board orderly so that when

19  the defendant posted his threads, people knew what was being

20  offered.  And by working together they ensured that the

21  defendant had what he wanted, a place to share his child

22  pornography with other people.  After all, at one point

23  Mr. Browning said, "PlayPen was the only game in town where

24  people went to get child pornography on Tor."

25      We also provided you other postings that showed how

1    the defendant interacted with other members creating rating

2    scales, putting in new moderators and buying more space for

3    child pornography.  They were working together to achieve a

4    goal.

5           As the defendant said in one posting, "There should

6    be a place in this world for CP."  That's what he wanted and

7    that's what they were all working towards.  He designed it

8    that way, and he recruited others to help him facilitate the

9    sharing of child pornography among people interested in that

10   material.  In doing so, they in return gave Chase a place

11   where he could advertise, share, and possess child

12   pornography.

13          Ladies and gentlemen, the evidence before you is

14   clear, the Defendant Steven Chase is PlayPen.  The evidence is

15   also clear that he is guilty on all charges.  Thank you.

16          THE COURT:  Any of the jurors care for a break

17   before we go to the arguments on the defendant?

18          THE JURY:  (No response.)

19          THE COURT:  All right.  You may proceed, sir.

20          MR. ADOLF:  Thank you, Your Honor.  Morning folks.

21          THE JURY:  Morning.

22          MR. ADOLF:  I don't know what she's talking about.

23   I am not saying that somebody secretly slipped a bunch of

24   child pornography on to Mr. Chase's computer.  That was his

25   account.  You saw the evidence of that.  You saw what they

1    found in his house.  It was supposed to be his account.  It

2    was supposed to stay his account.  What happened was, it was

3    hacked and other people were doing things using that account.

4    That's what I'm saying.  That's what the evidence points to

5    that you saw here.

6              I told you Tuesday morning, I guess it was,

7    computers don't lie.  Computers don't commit crimes.

8    Computers don't make decisions before they should, but people

9    do all those things.  People lie, people sometimes make

10   decisions before they should, before they know everything

11   that's going on.  And the Government just talked about all the

12   things that some hacker would have needed to know to get

13   information off of Mr. Chase's computer or put it on there.

14   None of that is true.  You heard the FBI confirmed it.  All

15   somebody needed to know was username and password and they

16   could take over that account.  And you'll see we'll go through

17   some of the evidence that the Government doesn't want you to

18   look at, that they haven't shown you, that shows that is what

19   happened.

20             You see, the FBI wasn't looking for clues about

21   somebody else using the account.  You heard Agent Alfin say he

22   had traced the payment to Mr. Chase.  They went into his

23   house.  They saw he had the site open that was it.  The

24   investigation was over.

25             When you start to see things, those logs that I

1  talked about showing that there were log-ins come from other

2  places, from other computers, using other accounts that could

3  be traced.  That's all information the FBI didn't have when

4  they targeted Mr. Chase.  That was information they didn't

5  have yet when they went into his house and pulled him out and

6  saw the computer there.

7           The reality is, the first people ever to sit and see

8  all the evidence from before, from after, are all of you.

9  That's why we have this jury system that we have.  Because

10 it's up to somebody when the case is all over, when everything

11 is all in, to take a fresh look at everything, not trying to

12 favor one side or the other, not making up their minds, not

13 saying, for instance, like Agent Alfin said when I asked him,

14 "Well, why didn't you try to go see where these other postings

15 came from?"  Right, those people had to have accounts too.

16 Where is that?

17          He was candid at least, he said, "Well, we got our

18 man already.  I didn't see the need to do it."  Well, they

19 didn't have those logs.  That's the information you have that

20 they didn't.

21          I'm not faulting them for doing what they do.  Law

22 enforcement's job is to try to catch people.  They have to do

23 things on the fly.  They have to concentrate their resources.

24 It's at the end of the day when we can all sit back and look

25 at what's been alleged, and look through the things that maybe

1  they didn't want you to pay attention to and make your own

2  decisions.

3          And I think it was telling when the Government just

4  said now, "every lead the Government followed went to

5  Mr. Chase." Not that every lead went to Mr. Chase. But every

6  lead they followed. We're going to talk a little bit about

7  the leads they didn't follow that you heard Agent Alfin and I

8  talked about.

9          Can you show me Defense 1. Put that up, please.

10          This is one of the posts that we talked about that

11  the FBI didn't know about when they first targeted Mr. Chase.

12          Can you blow up the text of that? Thank you.

13          You'll have all this evidence available to you in

14  the back if you want to look at it. And just to get it out of

15  the way, I'm not going to show you any pornography while we're

16  out here. This and other exhibits will be available to you in

17  the back so you don't have to remember it.

18          But I just point out the date and time of that

19  August 25th, 2014, at 5:00 on whatever time scale that is.

20  That's a post in Russian. And Agent Alfin was asked that.

21  Mr. Chase posting that? Does he know Russian? Ever been to

22  Russia? Make contact with anybody in Russia? Did you find

23  searches in Russian on his computer or anything like that? He

24  said, "Well, anybody can go on Google translate." But why?

25  Why is -- if they're saying that was Mr. Chase posting that,

what's he doing posting things in Russian?

You got to remember something, and I think it was important to listen to some of what Mr. Browning said yesterday that, yes, this was all secret. And, yes, all these people had to keep this information secret from each other. But this was the one place that they felt like they could really safely talk about anything they wanted to. It was like their little confessional booth, I guess if you want to call it that. Really the opposite. It's not to absolve their sins but magnify them. Be that as it may, they were free to say whatever they wanted to. They weren't trying to -- for the one time not trying to hide everything from anybody about what they were about and what they were doing. Nobody is posting that to try to pose as a Russian. That is somebody in control of the PlayPen account who is comfortable in Russian and is participating in a Russian discussion.

And, you know what, if they're trying to say that Mr. Chase somehow is just posting in all kinds of languages, why is it only that one? You saw that there are discussion groups in Dutch, in Spanish, and Italian, from all over the world. Why Russian?

Show me Government's Exhibit 18.

Right there in front of you you have a little more in depth profile of whoever it is that's using the PlayPen account. And that tells you more detail about what this

1   account has done.

2           Can you zoom in on that bottom right corner?

3           What this tells you is where is this PlayPen person

4   spending most of their time?  What little sections of the

5   website are they actually concentrating on?

6           "Information and Rules," I guess that's important if

7   you're working on the site and "How To, General Discussions."

8   Before you even get down to any kind of particular fetishes or

9   interests, that person -- that person's fourth most favorite

10  place to be active is in the Russian department.  Somebody who

11  doesn't speak Russian, never been there, is posting routinely

12  in some sort of Russian group, even more than they are talking

13  about child pornography?

14          And remember Agent Alfin's answer to that.  When

15  you're talking about, like, what leads were pursued and what

16  weren't.  I asked him about that and he said, Well, I don't --

17  I don't think the website is really calculating things right.

18  That's some sort of flaw.  So I guess the computer is lying

19  like people, is what he's telling me.

20          And so you know what?  When Mr. Hsu got on, the

21  analyst, to testify, I asked him, Anybody check?  You had the

22  whole website sitting there.  They showed you the servers.

23  They pulled the entire thing out of Lenoir, took it to

24  Washington or Maryland and looked at it.  Is there any

25  indication -- and I think what I said was, "Did anyone ask you

1    to check if there were any anomalies in the counter function?"

2          Lots of you probably been on websites.  A lot of

3    times you'll see businesses, particularly small businesses are

4    looking for people to want to visit the site and try to sell

5    things and so forth, will have a little counter on the bottom

6    that tells you "This website has been visited 650 times."  It

7    goes up every time someone clicks on it.  These are automatic

8    features that plenty of websites have.  And the bulletin

9    boards like that, it's just a standard part of the package.

10          Why do we think that some bulletin board is not

11   working right?  And why do we not check?  And the answer is,

12   because we don't want the answer we're going to get.  The

13   answer we're going to get is, it's working the way it's

14   designed to work, and the way it's always worked.  And

15   somebody is spending a lot of time doing Russian stuff.

16          And what's interesting also about that post is where

17   it came from.  One thing you heard from Mr. Browning is,

18   everybody on that website knew how to use it, knew how to get

19   on it.  You had to.  And the way you did it was going through

20   Tor.  And that way nobody could see where you were.  You

21   couldn't see where it was.  That was what they were all

22   looking for, anonymity.

23          But somehow, some of those posts coming from PlayPen

24   were not anonymous the same way.  Somebody was doing something

25   different.

1    Show me Defense 1 and 6.  Zoom in on the text on the

2 top.

3    Once again I'm showing you a Russian post here.  I

4 need you to pay attention for a minute to the exact date and

5 time:  August 25th, 5:34 a.m. at that time.  Now down at the

6 bottom what you're seeing is a log.  And that is where the

7 server itself, the website kept track of every time somebody

8 logged on.  What you're looking at there, you looked at it a

9 couple days ago, is a log of every time somebody logged in

10 using the PlayPen username and password.

11    And if you can blow up that one date, you can kill

12 the top one.

13    What you're going to see highlighted there --

14 actually, first show me the date and time of that post.

15    If you look over on the left of that blow-up there,

16 August 25, 2014, 5:34:24.  So what you're seeing there is, on

17 the top you are seeing the actual post, that PlayPen posting

18 in the Russian language.  And on the bottom you're seeing the

19 server recording where that came from.  It's not blank.

20 That's not somebody logging in through Tor.  That's somebody

21 logging in through or from a computer in Chicago, Illinois.

22    Any data about Mr. Chase ever being in Chicago,

23 Illinois, before or going there or Facebook posts?  They got

24 his Facebook account.  Anything to indicate he's ever been

25 there?  Or was there anywhere around that time?  No.

1          Now Agent Alfin told you that you could speculate

2    that, well, you know, that's probably a VPN company that might

3    or might not keep records.  But I didn't feel like it was

4    worth it to just pick up the phone and ask them, You have a

5    record?

6          Some of you all work from home on computers.  We

7    talked about that a little bit when you were being questioned

8    on Tuesday.  And some of you use VPNs.  And that means you

9    have to have your own username and password, sometimes it's

10   something your company sets up.  And that's something that

11   that's a service that your company purchases, I guess, from

12   one of these computer companies.  Somebody pays for that.

13   Remember, that's how they went to all the trouble to find this

14   PayPal account connected to Mr. Chase.  All they had to do was

15   make a phone call to the company in Chicago, Illinois.  They

16   got the IP address.  And actually when we zoom back out you'll

17   see it.  You can look at it in fact if you like.  But that

18   also shows them the IP address that gave them that location of

19   Chicago, Illinois.  So it's not just that that's recording

20   that that's somewhere in the Chicago area.  They have an IP

21   address.  That's a computer.  It belongs to somebody that

22   happens to be somewhere in the Chicago, Illinois, area.  A

23   couple phone calls, a couple Google searches and you can find

24   out whose computer that is.  They chose not to do that.  We

25   don't know whose that is.

1          Now, you can see that whoever was logging in and
2    making that Russian post was logging in a particular way that
3    shows you a location.  And you might -- that might rung a
4    little bell with you because you said to yourself, I thought
5    the whole point of this website, this Dark Web stuff, is that
6    nobody knows where you are.  So how is it that the server is
7    finding that computer in Chicago, Illinois?  The answer is,
8    somebody's doing something differently.  Because the people
9    who normally use the site, people who normally log in, there's
10   no trace of it.
11         Can you kill the blow-up and let's go back to the
12   data?  Okay.  Kill both of the blow-ups.
13         You'll see on that log, I guess it's a little hard
14   to see the dates.  But you can see that some of those
15   log-ins - why don't you just blow up all the -- blow up the
16   locations.  Yeah.  Thank you.
17         You can see there are some in Chicago, Illinois,
18   there's some in Miami, some in Ashburn, and then there are
19   some that are blank.  That is, some people logged in and the
20   server couldn't figure out where they were, didn't know
21   anything.  That's people logging in the way Mr. Browning
22   logged in.  The way anybody knew what they were doing knew how
23   to log in to leave no trace.  And you can see somebody who's
24   logging into that site using the PlayPen account knows what
25   they're doing and is leaving no trace.

1          On that sheet I see one, two, three, four, five

2    times that was done.  And then a bunch of times where people

3    are logging in some different way that's giving away where

4    they are.  Or maybe they're trying to show where they are.

5    Maybe they're going through some sort of sites and some VPN to

6    try to throw somebody off and make it look like it's somebody

7    else doing it.  Maybe it's somebody who was trying to pin it

8    on someone else and doesn't know how to do it right.

9          Now, we talked -- when we were talking back and

10   forth on Tuesday about how important it is to consider each

11   charge individually -- and this is not going to be easy stuff.

12   The charges are complicated, there's charges that are sort of

13   within other charges.  And I'm not going to try to go through

14   every piece of evidence.

15          What I'm going to give you that I really ask you to

16   pay attention to is certain little points or questions about

17   each count that you need to ask, and they need to be answered.

18          And one thing I'm going to say that I really want

19   you to keep in mind or look for is pay attention to the dates

20   on those charges because the dates make a difference.  The

21   dates don't just give you clues about the fact that it's not

22   Mr. Chase making those posts or committing those particular

23   crimes that are charged, but also that that makes a difference

24   as to what it gets used for when you look at other counts.

25   That's where it gets a little complicated.

1       So I want to go through the counts, just a little

2  bit on each, and just give you some things to look at and

3  think about.

4       I'll start with Count Seven, the possession of child

5  pornography.  Like I said, the Government got up here and said

6  I'm going to try to say that somebody put that in his

7  computer, that didn't happen.  That is what it is.  You saw

8  the evidence.  I'm going to leave that count to your good

9  judgment and move on.

10      But I differ with them a lot on Count Three which is

11 the advertising count.

12      The Judge is going to tell you the definition of

13 advertising.  Like all legal definitions it's a little

14 confusing.  But the Judge is also going to tell you, you do

15 not leave your common sense behind coming to court.  You can

16 use the common sense that you use every day.  And I encourage

17 you to use it even more when it's a matter of this

18 seriousness.

19      If I ask you, Hey, do you want to buy my car?  Did I

20 just make an advertisement?  No.  An advertisement is

21 something that you want to spread far and wide that you want

22 to get people to know about because you're trying to get

23 something or give something or whatever it is you're trying to

24 do.  But that's the essence of what it is.  It's public.

25      If I, let's say I'm in -- I don't know if any of you

1  are in car clubs.  I know there are a bunch around.  I'm not

2  right now.  But let's say you go to guys in your car club and

3  say, Look, I really need some money.  I want to get rid of my

4  car but I like it.  I know you guys would take care of it.  If

5  one of you wants to buy it, that's fine.  Don't tell anybody

6  else.  I'm a little hard up for cash or, you know, it's not my

7  car anymore.  So just keep it to yourself.  Is that an

8  advertisement?  On the other hand if you say to them, Look,

9  I'm trying to get rid of this car, if you know anybody

10  interested, let them know.  Those are two different things.

11  One is an advertisement, one's not.  An advertisement is

12  trying to get the word out.

13          What do we know about this website that they're

14  saying is advertising?

15          Can you give me Government's 2?

16          They showed you this same one, the front pages of

17  the website.  There's a part they didn't want you to pay

18  attention to:  "The Rules, spam flooding, advertisements,

19  chain letters, pyramid schemes, and solicitations are

20  forbidden on this forum."

21          Well, they didn't think they were advertising.

22  They're trying not to.  In fact, I'm just -- just to boil it

23  down I'll put it this way:  Imagine this trial was over, you

24  all have seen and heard an enormous amount of things that you

25  never seen before and you've been forbidden from talking about

1   it with anybody.  But there will come a time pretty soon when

2   you can talk about it to other people.  And, you know,

3   somebody may ask you, Well, what was your jury service like?

4   What was the case about?

5           You say, Well, it was about child pornography on the

6   internet on a website.  And they're probably going to say, Oh,

7   my God, that is horrible.  People just put that out on the

8   internet where anybody could get it?  Where children can see

9   it?  What are they doing, advertising it?

10          Are you going to say, Yeah, they were advertising

11  for the whole world?  No, you're going to say, Well, actually

12  they were trying to keep it a secret on the Dark Web.  You can

13  only get to it if you didn't reveal anything about it.  You

14  should see what the FBI had to go through to try to crack it.

15          If you're trying to keep it a secret it's not

16  advertisement, folks.  So I want you to keep that in mind when

17  you look at Count Three.

18          Count Two, to go backwards a little bit, I think is

19  even easier.  Because Count Two is a conspiracy to advertise.

20  So what the Government is saying is that people got together

21  and agreed with each other to advertise child pornography.

22  Well, a lot of times people agree on things they do it in

23  secret, as this website is supposed to be secret, and so you

24  never hear what the words actually were of this agreement.

25          Well, you just saw it.  That was the agreement.  No

1    advertising allowed.  I just read it.

2            All right.  Counts Four, Five and Six are particular

3    posts.  And what that means is, those are particular dates,

4    particular times, particular things that somebody using the

5    PlayPen account did, posted on the website.  And we have

6    records of that.

7            Can you give me Government's 7?  I'm sorry, not

8    Government's 7, Defense 7.

9            Now the Government was just telling you that there

10   were posts on particular dates and those are the crimes the

11   actual individual -- particular crimes that they say Mr. Chase

12   committed logged on to the PlayPen account.  What they didn't

13   tell you was:  Do we have any data from that same server about

14   where they came from?

15           Can you scroll down to September 26, 2014?  I'm not

16   sure which page that is.  And if you could just zoom that.

17           Now what you're seeing is posts from around that

18   date.

19           That's fine.  That's fine.

20           What you're seeing is that some person or persons

21   logged on to the PlayPen account on certain dates and times

22   right around that same date.  One of them on the 25th is going

23   to be one of those posts or one of the counts that the

24   Government is talking about.  What you're seeing there is

25   there is no data about where that came from; hidden.

1      Whoever or how ever many people are logging on using

2  that account in those couple of days, they're doing it the way

3  everybody else does on the site.  The way Mr. Browning told

4  you about.  They're going through Tor and they are hiding

5  where they are.  The server can't see them.  They can't see

6  the server.  You can see that because all the location data is

7  blank.

8      Now let's look at October 12th, 2014.  You can kill

9  that blow up.

10     Now, this is one of those other counts, I believe

11 it's Count Five, that they're saying that post, what you're

12 seeing on your screen, October 12, 2014, 22:51:01 bulletin

13 board post.

14     Now, what you can see above that outside the blow-up

15 is for days and days before and after the person or persons

16 using that account are doing it the way everybody knows to do

17 it.  Go through Tor, they can't see you and you can't see

18 them.  But on that date somebody decides to log-in from a

19 computer in the Netherlands.  Is that somebody's computer?  Is

20 it a person in the Netherlands?  Is it a VPN company in the

21 Netherlands?

22     I mean, I guess what the Government is going to say

23 is, you know, if it's some sort of company, well, that could

24 be anybody.  And it could be Mr. Chase or you should assume

25 it's Mr. Chase.

1          Well, you just saw all kinds of locations.  We're

2     talking about earlier, all kinds of companies.  Why is one

3     person paying VPN companies all over the world to log-in to

4     something where anybody can log-in just use the free Tor

5     browser that you talked about that's easy to use, apparently,

6     as any of your regular internet browsers and there's no trace

7     of that.

8          Somebody is doing that on purpose and it is not --

9     Mr. Chase has never been to the Netherlands.  He has no --

10    there's no evidence of him ever searching anything or doing

11    anything in Dutch on his computer.  You heard the Government

12    keeps pretty good records of people coming in and out of the

13    United States.  Anytime you get on a plane or boat leaving

14    this country or coming in, Department of Homeland Security is

15    checking on you.  There is no evidence he ever went there.

16         And this is my point, and this is why I felt it so

17    important that we talk about this when we talked about it on

18    Tuesday is, it is very easy to say:  You know what?  He had

19    all that stuff in his house, he was working on it.  I'm really

20    not concerned so much with what he actually did or didn't do.

21    He's just guilty.

22         I understand that human temptation because this is a

23    complicated case.  You've been asked to do a lot of work.

24    What you've been through, frankly, in the last three days, I

25    wouldn't want to put most people through what you have to do.

1    But the job is not done.  The hard part is just

2    beginning where you actually have to sit and say, Let's look

3    at that crime on that date.  Is it something he committed or

4    is it just possible that somebody used the same kind of

5    hacking tool the FBI used and got into his computer and got

6    out with just all they needed to get was a username and a

7    password and it would leave no trace on this computer.  And

8    isn't it possible when you see people logging in from

9    computers all over the country and all over the world that it

10   was somebody else?

11   One of the reasons that each individual count is

12   important, not just for what you see and what was done, but

13   also where you go from there in terms of your verdict is Count

14   One, which is the enterprise count.  It's the first thing on

15   the sheet.  But when you're considering that you actually have

16   to consider the other counts to sort of get to that.

17   And I was a little surprised, frankly, when the

18   Government spent a lot of time just now going through all the

19   elements of that offense and all the things you have to find,

20   they left out the biggest one.  Or for me I think what is the

21   most important and at least it's an element you have to deal

22   with it, and I think it's critical.  Which is that these were

23   crimes committed on separate incidents.

24   Even if you find that Mr. Chase committed some of

25   those acts, that he distributed on a particular date, that the

1  particular post was his.  If you end up finding that he

2  somehow advertised or whatever it is, that last -- well, the

3  first count, Count One says that if it's someone who's

4  committed three of those other crimes, and they were child

5  victims, which is obvious.

6         And if it was more than one child, which is obvious,

7  but they have to have been committed on separate dates,

8  "separate incidents" is what the law says.

9         And what you're going to see is the advertising

10  counts are all one big count covering the whole thing.  The

11  possession count is one count covering all the months of the

12  conspiracy.  Those obviously didn't happen at different times.

13  They're not different incidents if they're all happening at

14  the same time.

15         So that's just the way it's charged.  And the Judge

16  is going to tell you that you are not to consider any acts or

17  anything that are outside the indictment.  You have to address

18  each count particularly.  And what that means is what you're

19  left with is, what's on separate incidents?  What separate

20  dates?  And it's those three.  That's what it comes down to.

21  Those three dates I just showed you with the two blank entries

22  and the one in the middle.

23         You know, I can't tell you how to make your

24  decision.  It's all about whether the Government has proven

25  beyond a reasonable doubt.  And what that ends up meaning, the

1    Judge is going to tell you the words say what they mean.  But

2    I just want to put one thing up that I want to leave you with

3    here.

4              Can you show me our Exhibit 8 and 7?

5              When you're considering those three counts and

6    whether the Government has proven that those were Mr. Chase

7    and not a hacker -- actually just show me 8, first.  Just give

8    me 8 on the whole screen.  Can you zoom in on that?  Yeah,

9    scroll through just a little bit.

10             What you're seeing here is Mr. Browning's log, or

11   what we know as Stretch Armstrong.  This is every time that

12   Stretch Armstrong logged into the server.  And part of the log

13   that the server kept is where he was.  And what you see is

14   every entry is exactly the same.  You got that 127.0.0.1.  We

15   discussed what that means is basically like a blank.  It's not

16   an actual place.  And there's more.

17             That's all right.  You can stop.

18             That is the log of someone who is an active user,

19   who is participating in the website, and who knows how to do

20   it, and gets on the way everyone else does, leaving no trace.

21   That's what that looks like.  And Mr. Browning told you how he

22   did it.  That's how he did it every time.  No reason to do it

23   any other way where that gives you the maximum privacy, the

24   maximum chance that somebody like the Government seeing that

25   server, they can't find you.  They have no location to find

1    you.

2              Now show me the other one, 7.

3              This is the log of the PlayPen account.  This is the

4    log of the mastermind that the Government tells you is running

5    the whole show, the puppet master behind the whole thing.

6    Like the Wizard said in the Wizard of Oz, "Pay no attention to

7    the man behind the curtain."

8              As it turns out, it looks like there's a bunch of

9    people behind the curtain.  This is someone they claim set the

10   whole thing up for maximum privacy and knew how to do it just

11   like everybody else did so there will never be a trace left of

12   where he was.  And yet, there are traces all over.

13             Give me the next page.  Stop just with the next

14   page.

15             See what you see here?  Where is that?  Texas,

16   Florida, Chicago, back and forth between all of them and

17   interspersed between them and down at the bottom are blanks.

18   So somebody knew how to do this right.  Every time you see a

19   blank, that's somebody who knows how to get on and off this

20   website without leaving a trace.

21             Are those other people really in those places?  Or

22   are those people who either don't know how to do it right or

23   are trying to deflect the blame on to somebody else?

24             Whatever it is, they're not trying to do what any

25   administrator or even just regular user of that website knows

1    how to do.

2            You can kill it.

3            Bottom line is this, folks, when we talk about three

4    posts with those three dates there's no proof that Mr. Chase

5    did it.  I can't sit here and prove he didn't.  The law

6    doesn't require it.

7            That's when the Judge told you about the importance

8    of reasonable doubt in our criminal justice system.  What it

9    boils down to is this:  We know it's hard, sometimes

10   impossible for an innocent person to prove that he's innocent.

11   And so we don't make him do that.  We say, You are the

12   Government.  You are investigating these cases.  You are

13   accusing one of our fellow citizens of one of these crimes.

14   It's up to you to prove it.

15           If you can't, if there's any doubt left in your mind

16   and, you know, if a post from the Netherlands from somebody

17   who should know better doesn't tell you there's something else

18   going on, if posts about -- if posts from people who don't

19   even speak English all that well -- show me Defense 2.

20           This is one of the other posts that the Government

21   didn't want you to pay much attention to.  That's somebody

22   using the PlayPen account saying, "I only speak English.

23   These personal posts make me nervous because I can't read

24   them."

25           Remember, people were particular.  Mr. Browning told

1    you just because these people are into their particular

2    fetishes doesn't mean all bets are off, I think is what he

3    said.  And somebody in PlayPen is nervous because he only

4    speaks English.  I suppose the Government is going to say that

5    proves that's Mr. Chase because he speaks English and only

6    English.

7              Now show me Defense 3, and show me -- actually, show

8    me again part 2 and then part 3.

9              Here's another post from PlayPen.  The pink part is

10   what somebody else is posting, whatever the chat was.  And I

11   think I eluded to this with the witness.  It turns out, you

12   know, some of us are sticklers for grammar, some aren't.

13   Turns out even sticklers for grammar even turn up on websites

14   like this.  And somebody is complaining about the difference

15   between your and you're and two, to, and too.  And PlayPen

16   gets irritated and replies.

17             I'm sorry.  Can you just go over the reply again.

18             "Sorry, Ms. Perfect, English is not my or any of us

19   first language.  More time loving, less time pointing your

20   finger, please."

21             Remember, this is in the one place where these folks

22   feel comfortable talking to each other about it and how they

23   feel about things.  And that's somebody getting irritated

24   because, you know, they're struggling with English and that's

25   the best they can do.  Is that Mr. Chase?  Who?  No evidence

1    that he's been involved in any other language or knows any

2    other language.

3              When you're looking at these posts and you're

4    deciding whether a particular post is something that he did or

5    could have been done by somebody else, I think you have to

6    keep in mind what the Judge is going to tell you that we can

7    not prove when somebody is innocent.  The Government has to

8    prove they're guilty; bottom line.

9              In this case, other than Count Seven, I'm going to

10   leave that alone.

11             But go through the points that I told you.  And what

12   I encourage you to do is take the time you need.  You'll have

13   those exhibits, this post, or anything else up there available

14   to you to look at.  Check the dates.

15             What I want you to do is go back there and I know

16   you can do the job you've sworn an oath to do.  We knew it was

17   hard.  And a lot of folks got out of jury duty this week

18   because they couldn't do it and you're the ones that can.  So

19   I'm asking you to go back there and as to the things the

20   Government has not proved that he did, which is most of it,

21   frankly, I want you to find him not guilty.  Thank you.

22             MR. JONES:  In my opening statement I told you that

23   this was a very simple and a very straightforward case.

24   However, it was a very disturbing and a very troubling case,

25   and I believe you've seen that throughout the course of this

1    trial.

2           I also told you that the defendant would attempt to

3    confuse you, or attempt to try a case different than the one

4    charged in the indictment.  This is exactly what defense

5    counsel has done.  He's -- his entire closing argument is an

6    attempt to confuse.  All of the evidence in this case, ladies

7    and gentlemen, has pointed to the defendant.  Defense counsel

8    talks, makes a statement, his opening statement and argument,

9    that people lie and people use the internet to commit crimes.

10   And he's exactly right.

11          This Defendant, Steven Chase, used the internet to

12   engage in a child exploitation enterprise by working

13   together -- a website, a child pornography website with over

14   100,000 members dedicated to the sexual abuse of children on

15   line.  Children that you saw were as young as toddlers.  This

16   defendant is guilty.

17          I'll start just briefly because defense counsel

18   spent 20 minutes on his closing argument on one Russian post.

19   Mr. Chase posted over 200 times on this website.  He spent 20

20   minutes of his closing argument on one post.  A post, as you

21   heard Agent Alfin testify, that he could read easily.  He said

22   you could get on Google and translate that post easily.  The

23   purpose of the Tor -- of the Dark Web was to remain anonymous,

24   ladies and gentlemen of the jury.

25          Further, the defense makes a point that:  Hey,

1  somebody hacked his account and created that Russian post.  As

2  he testified -- Agent Alfin testified again that there has

3  been no indication that the account was hacked.  The pin trap

4  and tracing speaks it.  The pin track and trace indicates that

5  someone in his mom's home in Maine, and at his home in Naples,

6  Florida, was using Tor web, the Dark Web, at the same time the

7  PlayPen user account was logged into on the PlayPen website.

8         It doesn't make sense, ladies and gentlemen of jury.

9  Reasonable doubt, reason and common sense, that's all it is.

10 It just doesn't make sense.

11        And just briefly he talked also about the

12 advertisement, the registration agreement saying no

13 advertisement.

14        My co-counsel explained advertisement to you very

15 straightforward and very simple for you.  Advertisement is

16 simply published to see with the intent to attract others to

17 that subject matter.

18        Mr. Chase posted on this child pornography website,

19 "Web Cam Three Girls," a thread he created with three females

20 exposing their genitals.  That's an advertisement, ladies and

21 gentlemen.  It attracted people to it.  As a matter of fact,

22 it attracted over -- it was read over 8,000 times.  That's

23 clearly an advertisement, ladies and gentlemen.

24        Defense also makes a statement that the Government

25 traced the payment and went into his house and the case is

1  over.  That's just not the case.  All of the evidence in this
2  case points to the defendant.  Just look at another exhibit my
3  co-counsel stated, starting with the CentriLogic exhibit.
4  Which tracing back to the server hosting account, it was
5  traced back to his mom's house in Maine during the time he was
6  there.  The Time Warner address being logged into.  The
7  Comcast to his house.  The Yahoo email, Mike Taylor, all of
8  the accounts logged onto his computer.  They all point back to
9  the defendant.  Nobody else but the defendant in this case,
10  ladies and gentlemen.  As I told you, it's a simple and
11  straightforward case.  Nobody but the defendant was the user
12  PlayPen on this account.

13      And he also failed to mention after they conducted
14  all of this analysis, CentriLogic, Time Warner, Comcast,
15  Yahoo, after all that led to Naples, Florida, on the night of
16  February 19, 2015, they get in the house, he's logged in, not
17  just into the PlayPen website but as the PlayPen username.
18  But he still wants you to think that, Hey, my -- somebody's
19  computer was hacked.  It was somebody else.  It doesn't make
20  sense.  It doesn't make sense because it's not true.

21      Let's not forget the thumb drive that was connected
22  to the laptop which contained the image poster for PlayPen
23  website over 8,000 child exploitation images, passwords for
24  the user account Mike Taylor all over the defendant's laptop,
25  google searches for child pornography on Netflix.

1        Ladies and gentlemen, all of the evidence in this

2   case points back to the Defendant Steven Chase in his engaging

3   in a child exploitation enterprise, conspiring to advertise

4   child pornography, advertising child pornography, transporting

5   child pornography, and possessing child pornography.  All

6   those three transportation counts were posted by the username

7   PlayPen and the username PlayPen was nobody but the Defendant

8   Steven Chase.

9        As I close, ladies and gentlemen of the jury, I just

10  like for you to remember that the defendant created this

11  website and ran it along with -- you saw the staff lists,

12  moderators, global moderators that he helped choose.  But for

13  him there would not be this PlayPen website with over 100,000

14  members who were dedicated to the sexual abuse of children on

15  line.

16       All of the evidence in this case, ladies and

17  gentlemen, points to nobody else but the Defendant Steven

18  Chase.  He's guilty of engaging in a child exploitation

19  enterprise, conspiracy to commit advertising, advertising, the

20  three transportation counts, and the possession of child

21  pornography, nobody but the defendant.  The defendant and no

22  one else was the username PlayPen on that child pornography

23  website.  Nobody else but him, ladies and gentlemen.  So we

24  ask that you find this Defendant, Steven Chase, guilty on all

25  counts.  Thank you.

1          THE COURT:  Thank you all for your arguments.

2          Now, members of the jury, what we'll do is take a

3    15-minute break and then we will call for you to come back.  I

4    will give you the rest of the instructions and then you will

5    be able to go to lunch and take up to maybe 45 minutes to an

6    hour.  But when you all come back, you will be able to just

7    walk into the jury room, and as soon as all 12 of you are

8    there you may start your deliberations.  And I will be talking

9    to the alternates about your role at that time.  So that gives

10   you the immediate schedule.

11         Let's take a break.  Keep an open mind about the

12   case.  Don't discuss it at all.  Remember all the instructions

13   and keep an open mind and we'll have the rest of the

14   instructions for you right after the break.  Thank you.

15             (The jury was escorted from the courtroom.)

16             (Recess at 11:44 until 12:03.)

17         THE COURT:  All right.  Members of the jury, one

18   quick note.  You, of course, have seen our court reporter who

19   has the hardest job in the courtroom.  Who has taken a

20   transcript of the case, but it's not final or confirmed and we

21   haven't had a chance to review it or anything.  And she always

22   does a beautiful job of polishing it if we need a transcript.

23   But you will not have a transcript of testimony available to

24   you so you have to remember the evidence.

25         Now then, I'll read to you as we go through the

1    counts from the Bill of Indictment, the statutes under which

2    the charges are laid and the essential elements of the

3    offenses.  And the elements are important because they break

4    down the offense to the specific items the Government must

5    prove beyond a reasonable doubt before there could be a

6    conviction on a given count.

7            Now, as I think I may have told you before, you will

8    have copy of the indictment with you in the jury room so it is

9    not necessary for you to try to memorize exactly how the

10   charges are laid.

11           Also, please be patient in listening to these

12   instructions as your understanding of the charges against the

13   defendant will not be complete until you heard all of them

14   described, including the definitions that I will give you

15   about certain words and phrases.

16           I also note that the verdict sheet, which the clerk

17   will hand to you as you begin your deliberations, will contain

18   in some notations indicating how to move from one count to

19   another in making your decisions.  So that should be

20   self-explanatory so I won't discuss that in these

21   instructions.

22           Now, in Count One, which I will now read to you.  As

23   I remind you, the counts in the indictment are not evidence.

24   They're merely accusations.

25           Count One alleges that between on or about

 1   August 19, 2014, and March 4, 2015, in Caldwell County, within

 2   the Western District of North Carolina and elsewhere, Steven

 3   W. Chase, Michael Fluckiger, David Lynn Browning did knowingly

 4   engage in a child exploitation enterprise, that is, Steven W.

 5   Chase, Michael Fluckiger and David Lynn Browning violated

 6   Chapter 110 of Title 18 of the United States Code, as a part

 7   of a series of felony violations constituting three or more

 8   separate incidents and involving more than one minor victim,

 9   which offenses include those described in Counts Three through

10   Seven of this indictment, for your purposes, and committed

11   those offenses in concert with three or more persons.

12          This is alleged in violation of Title 18,

13   Section 2252A(g).

14          Now in this Count One defendant is charged, as I

15   say, under Section 2252A(g).  As you will hear, a conviction,

16   if any, under this statute will involve your findings and

17   consideration as to Counts Three through Seven of the Bill of

18   Indictment.  But before I discuss those counts, I shall

19   describe Count One simply because it comes first in the Bill

20   of Indictment.

21          A person under this statute as it reads -- "A person

22   engages in a child exploitation enterprise for the purposes of

23   this section if the person violates sections within Chapter

24   110, as a part of a series of felony violations constituting

25   three or more separate incidents and involving one or more

1    victim, and commits those offenses in concert with three or

2    more persons."

3            Now such alleged underlying felony violations will

4    be referred to within these instructions as predicate

5    offenses.

6            So you have the charge which is Count One.  You have

7    the predicate offenses which are alleged later on in the

8    indictment.

9            Now, in support of the Count One charge under that

10   Section 2252A(g), the Government alleges, as I said, three

11   predicate offenses found in Chapter 110 as charged in Counts

12   Three through Seven of the Bill of Indictment.  Namely, that

13   Steven W. Chase, violated Title 18, Sections 2251(d),

14   2252A(a)(1), and 2252A(a)(5)(B).

15           The first of these predicate offenses is found in

16   Chapter 110 -- or as found in Chapter 110 is the advertising

17   charge which comes under Title 18, U.S. Code, Section 2251(d).

18   And that charge makes it a violation as follows:

19           Any person who, in circumstances described in

20   paragraph 2 below, knowingly makes, prints, or publishes, or

21   causes to be made, printed, or published, any notice or

22   advertisement seeking or offering to receive, exchange, buy,

23   produce, display, distribute, or reproduce, any visual

24   depiction, if the production of such visual depiction involves

25   the use of a minor engaging in sexually explicit conduct and

1    such visual depiction is of such conduct.

2            Secondly, this is paragraph two.  The circumstance,

3    rather, referred to in paragraph 1 is that:

4            A.  Such person knows or has reason to know that

5    such notice or advertisement will be transported using any

6    means or facility of interstate or foreign commerce or in or

7    affecting interstate or foreign commerce by any means

8    including by computer; or

9            B.  Such notice or advertisement is transported

10   using any means or facility of interstate or foreign commerce

11   or in or affecting interstate or foreign commerce by any means

12   including by computer.

13           Now, the second of these predicate offenses

14   described in Chapter 110 is the transportation charge and it

15   sets forth the following law:

16           An individual violates Section 2252A(a)(1) if he

17   knowingly transports or ships using any means or facility of

18   interstate or foreign commerce or in or affecting interstate

19   or foreign commerce by any means, including by computer, any

20   child pornography.

21           And, finally, the third such predicate offense

22   described in Chapter 110, that would be the possession of

23   child pornography charge is as follows:

24           An individual violates Section 2252A(a)(5)(B), if he

25   knowingly possesses, or knowingly accesses with intent to

1    view, any film, videotape, computer disk, or any other

2    material that contains an image of child pornography that has

3    been mailed, or shipped or transported using any means or

4    facility of interstate or foreign commerce or in or affecting

5    interstate or foreign commerce by any means, including by

6    computer, or that was produced using materials that have been

7    mailed, shipped or transported in or affecting interstate or

8    foreign commerce by any means, including by computer.

9         When I instruct you on Counts Three through Seven of

10    the Bill of Indictment I will instruct you as to the elements

11    of each of these alleged predicate offenses, as well as the

12    relevant definitions of terms used within those alleged

13    predicate offenses.

14         Of course, I refer to the charges in Counts Three

15    through Seven of the Indictment as predicate offenses for

16    purposes of the child exploitation -- or, rather, for the

17    enterprise of child exploitation, but they also stand on their

18    own as to Counts Three through Seven, and you address each

19    count in this Bill of Indictment separately, and consider the

20    evidence that pertains to each count separately.  And issue

21    your verdict as to each count accordingly.  Even though as you

22    have heard, there are some relationships between some of the

23    counts.

24         Now then, so let's look at the essential elements of

25    Count One.  This is how those elements break down the statute.

1    For you to find the defendant guilty of the offense
2 charged in Count One, the Government must establish each of
3 the following essential elements:
4    First, that defendant committed at least three
5 separate predicate offenses that comprise a series of at least
6 three instances; and
7    Secondly, the series of at least three instances
8 involve more than one victim who was a minor; and
9    Third, the defendant committed the series of at
10 least three instances in concert with three or more persons.
11    I will now define certain elements used in these
12 essential elements. You are to apply these definitions as you
13 consider the evidence. And if I don't define certain words,
14 you would assign to them their ordinary, everyday meanings.
15 Again, I'll provide you with the essential elements of each
16 specifically alleged predicate offense, along with the
17 relevant definitions to those offenses and elements, when I
18 instruct you on Counts Three through Seven.
19    You'll note that the Bill of Indictment with respect
20 to each offense charged, charges the offense or offenses were
21 committed "on or about" a certain date or dates. The proof
22 need not establish with certainty the exact date of an alleged
23 offense. It is sufficient if the evidence in the case
24 establishes beyond a reasonable doubt that the offense in
25 question was committed on a date reasonably near the date or

1  dates alleged in the indictment.

2          Now, a "predicate offense" is a separate and

3  additional offense underlying the offense charged in Count One

4  that the Government must establish the defendant committed

5  through proof beyond a reasonable doubt.  For purposes of

6  Count One, the Government must prove that the defendant

7  committed three or more predicate offenses.

8          The offenses you may consider in determining whether

9  defendant committed three or more predicate offenses are found

10 in Chapter 110.  And included in that, as I've already gone

11 over to some extent, you have offenses for Advertising Child

12 Pornography under Section 2251(d) as charged in Count Three;

13 and next, Transporting or Shipping Child Pornography in

14 violation of Section 2252A(a(1), and as charged in Counts

15 Four, Five and Six; and lastly, Possession of Child

16 Pornography in violation of Title 18, 2252A(a)(5)(b), and that

17 is charged in Count Seven.

18         Furthermore, at least three of the predicate

19 offenses must be separate from one another, in that each

20 predicate offense must arise out of a different event entirely

21 from the other predicate offenses.

22         Accordingly, you may rely on multiple violations of

23 the same statutory section within Chapter 110 to reach a total

24 of three predicate offenses so long as each violation of the

25 statute is separate from the other violations.  Before you may

1    return a verdict of guilty as to Count One, you must

2    unanimously agree upon which three, or more, predicate

3    offenses the defendant committed, if any.  And if you are

4    unable to unanimously agree upon which three, or more,

5    predicate offenses the defendant committed, then you must

6    return a verdict of not guilty even if you unanimously agree

7    that defendant committed a total of three, or more, predicate

8    offenses.

9              Finally, if you return a verdict of guilty on Count

10   One, the verdict form will ask you to identify which of the

11   alleged predicate offenses the Government has proven beyond a

12   reasonable doubt, if any.

13             Now then, a "minor" is any person under the age of

14   18 years.

15             Now I'll define the words and phrase "in concert

16   with three or more persons."

17             To find that the defendant acted "in concert with

18   three or more persons," you must unanimously agree that the

19   Government presented proof beyond a reasonable doubt that the

20   defendant agreed with three or more persons, himself included,

21   to commit the required series of predicate offenses.  In other

22   words, the defendant and the individuals he allegedly acted in

23   concert with must have had an actual meeting of the minds

24   regarding the commission of the predicate offenses.  In this

25   respect, the mental requirement for finding the defendant

1    acted "in concert" with three or more persons is the same as

2    the mental requirement for finding that defendant entered into

3    a criminal conspiracy with three or more persons.

4               Excuse me one moment.

5               I'm going to correct myself in terms of the

6    requirement that the Government show defendant acted "in

7    concert" with others.

8               The actual phrase in the statute is that "he would

9    have to have acted in concert with three or more other

10   persons."  So the three persons he acted in concert with, if

11   any, would not include him.

12              Now then, going on to define this word -- this

13   phrase "in concert with three or more persons" that is the

14   mental element.

15              A criminal conspiracy is an agreement or a mutual

16   understanding knowingly made and knowingly entered into by

17   multiple people to violate the law through some joint plan or

18   common course of action.  A conspiracy or agreement to violate

19   the law, like many other kinds of agreements or

20   understandings, need not be formal, written, or even expressed

21   directly in every detail.

22              And, again, this concerns whether the defendant

23   acted in concert with three or more others.

24              To prove the existence of an illegal agreement, the

25   Government is not required to produce evidence of a contract

1   or other agreement explicitly detailing all facets of the

2   understanding.  Moreover, to prove a conspiracy or agreement,

3   the Government is not required to show that all the identified

4   members of the conspiracy or agreement were, in fact, parties

5   to the original agreement or that all of the members of the

6   agreement to all of the means and methods of accomplishing the

7   goal of the agreement.

8         Instead, the Government must prove that the

9   defendant and at least three other persons, whether the other

10   persons are also defendants or not, knowingly and deliberately

11   arrived at some type of agreement or understanding that they,

12   and perhaps others, would violate the law by some means of a

13   common plan or course of action as set forth in the Bill of

14   Indictment.  It is proof of this conscious understanding and

15   deliberate agreement by the alleged member of the -- members

16   of the enterprise that should be central to your consideration

17   of this Count One charge.

18         Furthermore, the Government does not have to

19   demonstrate that defendant acted in concert with three or more

20   people to commit each of the predicate offenses composing this

21   series of instances.  Instead, the Government need only

22   demonstrate that defendant acted in concert with three or more

23   other people over the course of the entire series of

24   instances.  To conceptualize this, if you find that defendant

25   acted in concert with only one other person when committing

1    each of the three predicate offenses but that defendant acted

2    in concert with a different individual when committing each of

3    the predicate offenses, then defendant would have acted in

4    concert with three people over the series of instances.

5            The Government must show beyond a reasonable doubt

6    that the defendant committed each of the three, or more,

7    predicate offenses knowingly.  And that is the mental element

8    of the offense.

9            The word "knowingly," as used in these instructions

10   to describe the alleged state of mind of the defendant, means

11   that he was conscious and aware of his actions, realized what

12   he was doing or what was happening around him, and did not act

13   because of ignorance, mistake or accident.  Knowledge may be

14   proven by a defendant's conduct, and by all of the facts and

15   circumstances surrounding the case.

16           The purpose of adding the element "knowingly" is to

17   insure that no one will be convicted due to mistake or,

18   accident, or other innocent reason.

19           So summing up on Count One, I charge you that if you

20   find from the evidence beyond a reasonable doubt that on or

21   about the date or dates alleged, within the Western District

22   of North Carolina, that:

23           1.  Defendant committed at least three separate

24   predicate offenses that comprise a series of at least three

25   instances; and

1          2.   That the series was -- excuse me, a series of at

2    least three instances involved more than one victim who was a

3    minor; and

4          3.   That defendant committed the series of at least

5    three instances in concert with three or more other persons,

6    then it would be your duty to return a verdict of guilty -- of

7    guilty as charged in Count One.  And, however, if you do not

8    so find, if you have a reasonable doubt as to one or more of

9    the essential elements of the crime charged, then it would be

10   your duty to give him the benefit of that doubt and return a

11   verdict of not guilty on Count One.

12          I will move to Count Two.

13          Defendant is charged under Section 2251(d) and (e).

14          Subsection (d) describes the offense of Advertising

15   Child Pornography.  While subsection (e) makes it a crime to

16   conspire to commit the offense of Advertising Child

17   Pornography.  This part of the instructions deals with the

18   conspiracy charge in Count two, that's the conspiracy to

19   commit the advertising offense.  And you will consider that

20   separately from Count Three when I get to it, which is the

21   standalone offense of Advertising Child Pornography.  We also

22   call that a substantive offense, whereas the one I'm about to

23   go into is Count Two, the conspiracy offense.  You see there's

24   obviously a relationship there.

25          You will be looking at Count Three a little bit

1    later and that is the substantive count of Advertising Child

2    Pornography.  But that has its own instructions that pertain

3    to it, and so does this charge of Conspiracy to Advertise

4    Child Pornography which I will now give to you.

5              Now Count Two reads as follows:

6              Between, on or about August 19, 2014, and March 4,

7    2015, in Caldwell County, within the Western District of North

8    Carolina and elsewhere, Steven W. Chase, Michael Fluckiger,

9    and David Lynn Browning did knowingly conspire to make, print,

10   publish, and cause to be made, printed, and published, any

11   notice or advertisement seeking and offering to receive,

12   exchange, buy, produce, display, distribute, and reproduce,

13   any visual depiction, the production of which visual depiction

14   involved the use of a minor engaged in sexually explicit

15   conduct and such visual depiction was of such conduct; and

16   participation in any act of sexually explicit conduct by and

17   with any minor for the purpose of producing a visual depiction

18   of such conduct; knowing and having reason to know that such

19   notice and advertisement would be transported using any means

20   and facility of interstate and foreign commerce and in and

21   affecting interstate and foreign commerce by any means,

22   including by computer, and such notice and advertisement was

23   transported using any means and facility of interstate and

24   foreign commerce and in and affecting interstate and foreign

25   commerce by any means including computer.

1    Now then, I'm going to read to you the offense that
2  is alleged in Count Two to be the object of the conspiracy
3  alleged in Count Two.  And as you heard before, this is
4  Section 2251(d), and it will sound familiar because that's the
5  offense.  It alleges, that is to say, the statute reads as
6  follows:
7    Any person who, in a circumstance described in
8  paragraph 2, knowingly makes, prints, or publishes, or causes
9  to be made, printed, or published, any notice or advertisement
10 seeking or offering to receive, exchange, buy, produce,
11 display, distribute, or reproduce, any visual depiction, if
12 the production of such visual depiction involves the use of a
13 minor engaging in sexually explicit conduct, and with such
14 visual depiction -- or, rather, such depiction is of such
15 conduct, or that participation in any act of sexually explicit
16 conduct by or with any minor for the purpose of producing a
17 visual depiction of such conduct.
18    Now, the circumstance referred to in paragraph 2
19 comes under the following language:
20    The circumstance referred to is that:
21    A.  Such person knows or has reason to know that
22 such notice or advertisement will be transported using any
23 means or facility of interstate or foreign commerce or in or
24 affecting interstate or foreign commerce by any means
25 including by computer; or

1          Such notice or advertisement is transported using

2    any means or facility of interstate or foreign commerce or in

3    or affecting interstate or foreign commerce by any means

4    including by computer.

5          So as I explained earlier, Section 2251 makes it a

6    crime for an individual to conspire to commit the offense

7    described in subsection (d).

8          Subsection (d) will be the subject of Count Three

9    standing alone, and I'll get to that a little bit later.

10         But here we are with the essential elements of Count

11   Two, a Conspiracy to Advertise Child Pornography.

12         These are the essential elements:

13         For you to find him guilty of the offense charged in

14   Count Two the Government must establish each of the following

15   essential elements:

16         On or within the dates alleged, and within the

17   Western District of North Carolina, and elsewhere:

18         First, that the conspiracy described in the Bill of

19   Indictment was an agreement or understanding between two or

20   more persons, that the conspiracy was willfully formed, and

21   that it was existing at the time alleged in the Bill of

22   Indictment;

23         Secondly, that at some time during the existence or

24   life of the conspiracy, the defendant knew the purpose of the

25   agreement or understanding and willfully joined the

1   conspiracy; and

2          Lastly, that the object of the conspiracy was to

3   Advertise Child Pornography, in violation of 18 U.S. Code

4   2251(d).

5          You will use the same definitions I gave you earlier

6   to define "minor" and "knowingly."

7          I'll now give you additional definitions pertinent

8   to the conspiracy aspect of the charge in Count Two.  I'll

9   give you definitions relevant to the object of the conspiracy,

10  the offense of Advertising Child Pornography, when instructing

11  you on Count Three.

12         A criminal conspiracy is an agreement or a mutual

13  understanding knowingly made or knowingly entered into by at

14  least two people to violate the law by some joint or common

15  plan or course of action.  A conspiracy is, in a very true

16  sense, a partnership in crime.

17         A conspiracy or agreement to violate the law, like

18  any other kind of agreement or understanding, need not be

19  formal, written, or even expressed directly in every detail.

20         To prove the existence of a conspiracy or an illegal

21  agreement, the Government is not required to produce a written

22  contract between the parties or even produce evidence of an

23  express oral agreement spelling out all the details of the

24  understanding.  Moreover, to prove that a conspiracy existed,

25  the Government is not required to show that all of the people

1  named in the indictment as members of the conspiracy, in fact,

2  were parties to the original agreement, or that all of the

3  members of the alleged conspiracy were named or charged, or

4  that all of the people whom the evidence shows were actually

5  members of a conspiracy agreed to all of the means or methods

6  set out in the indictment.

7        Instead, the Government must prove that the

8  defendant and at least one other person knowingly and

9  deliberately arrived at an agreement or understanding that

10  they, and perhaps others, would violate the law by means of

11  some common plan or course of action as alleged in Count Two.

12  In other words, unlike in Count One where the Government

13  needed to prove the defendant agreed with three, or more,

14  people to commit the series of three instances, proof that

15  defendant agreed with at least one other person to violate

16  Section 2251(d), the advertising offense, is sufficient for

17  purposes of Count Two.  It is proof of this conscious

18  understanding and deliberate agreement by the alleged members

19  that should be central to your consideration of the charge of

20  conspiracy.

21        Unless the Government proves beyond a reasonable

22  doubt that a conspiracy, as just explained, actually existed,

23  then you must acquit defendant of the charge in Count Two.

24        Now then, as to membership in the agreement.  If you

25  should conclude that the conspiracy did exist as alleged, you

1   should next determine whether defendant knowingly and

2   willfully became a member of the conspiracy.  That is, whether

3   the defendant in question knowingly and willfully became a

4   member.  Before the jury may find that the defendant, or any

5   other person, became a member of the conspiracy charged in

6   Count Two, the evidence in the case must show beyond a

7   reasonable doubt that defendant knew the purpose or goal of

8   the agreement or understanding and deliberately entered into

9   the agreement intending, in some way, to accomplish the goal

10  or purpose of this common plan.

11          If the evidence establishes beyond a reasonable

12  doubt that defendant knowingly and deliberately entered into

13  an agreement to Advertise Child Pornography, the fact that

14  defendant did not join the beginning -- joined the agreement,

15  rather, at its beginning, or did not know all of the details

16  of the agreement, or did not play a major role in

17  accomplishing the unlawful goal is not important to your

18  decision regarding membership in the conspiracy.

19          On the other hand, certain things do not, taken

20  alone, make someone a member of a conspiracy.  Merely

21  associating with others and discussing common goals, mere

22  similarity of conduct between or among such persons, merely

23  being present at the place where the crime took place or is

24  discussed, or even knowing about criminal conduct does not, by

25  itself, make someone a member of a conspiracy.

1          Now, concerning the object of the conspiracy.  If

2     you concluded that the conspiracy did exist as alleged, and

3     that the defendant in question knowingly became a member of

4     it, then you should next determine whether or not an objective

5     or goal of the alleged conspiracy was to Advertise Child

6     Pornography as alleged.

7          Now, ultimately, the Government must prove beyond a

8     reasonable doubt that a conspiracy was willfully formed and

9     had as its purpose the Advertising of Child Pornography.  You

10    should make your determination as to the purpose of a

11    conspiracy from all the evidence presented.  Keep in mind

12    there may be a conviction as to this conspiracy count even

13    though the conspirators may not have succeeded in

14    accomplishing their common object or purpose in some way or

15    ways and, in fact, failed in accomplishing it.

16         So then, reiterating the essential elements.  If you

17    find from the evidence beyond a reasonable doubt that on or

18    about the date or dates alleged, within the Western District

19    of North Carolina and elsewhere:

20         First, that the conspiracy described in the Bill of

21    Indictment, Count Two, was an agreement or understanding

22    between two or more persons, that the conspiracy was willfully

23    formed, and that it was existing at the time alleged in the

24    Bill of Indictment; and

25         Second, that at some time during the existence or

1  life of the conspiracy, the defendant knew the purpose of the

2  agreement and understandingly and willfully joined it; and

3        Third, that the object of the conspiracy was to

4  Advertise Child Pornography, in violation of 18 U.S. Code

5  2251(d) and (e), then it would be your duty to return a

6  verdict of guilty as charged in Count Two.  However, if you do

7  not so find, or if you have a reasonable doubt as to one or

8  more of the essential elements of the crime charged, as I have

9  just given them to you, then it would be your duty to give the

10 defendant the benefit of that doubt and return a verdict of

11 not guilty on Count Two.

12       Now then, in Count Three, the Defendant, Steven W.

13 Chase is charged with violating Title 18 Section 2251(d).

14       The pertinent part of this statute for purposes of

15 this count are as follows:

16       1.  Any person who, in a circumstance described in

17 paragraph 2 below, knowingly makes, prints, or publishes, or

18 causes to be made, printed, or published, any notice or

19 advertisement seeking or offering:

20       To receive, exchange, buy, produce, display,

21 distribute, or reproduce, any visual depiction, if the

22 production of such visual depiction involves the use of a

23 minor engaging in sexually explicit conduct and such visual

24 depiction is of such conduct; and

25       2.  The circumstance referred to in paragraph 1

1  would be that:

2          A.  Such person knows or has reason to know that

3  such notice or advertisement would be transported using any

4  means or facility of interstate or foreign commerce or in or

5  affecting interstate or foreign commerce by any means

6  including by computer; or

7          Such notice or advertisement is transported using

8  any means or facility of interstate or foreign commerce or in

9  or affecting interstate or foreign commerce by any means

10 including by computer.

11         So here is how the essential elements of this count

12 break down.

13         The substantive or stand alone offense of

14 Advertising Child Pornography.

15         For you to find the defendant guilty of the offense

16 charged in Count Three of the Bill of Indictment, the

17 Government must establish each of the following essential

18 elements:

19         First, that the defendant knowingly made, printed,

20 published, or caused to be made, printed, or published, a

21 notice or advertisement;

22         Second, the notice or advertisement sought or

23 offered to receive, exchange, buy, produce, display,

24 distribute, or reproduce a visual depiction; and

25         Third, the production of the visual depiction

1  involved the use of a minor engaging in sexually explicit

2  conduct, and the visual depiction is of the sexually explicit

3  conduct;

4          And the defendant knew that the person the

5  advertisement sought or offered a visual depiction of was a

6  minor; and

7          5(a), The defendant knew or had reason to know that

8  the notice or advertisement would be transported using any

9  means or facility of interstate or foreign commerce, including

10 by a computer; or

11         (b), The notice or advertisement was transported

12 using any means or facility of interstate or foreign commerce,

13 including by computer.

14         As you recall I've already defined "minor" and

15 "knowingly."  I will give you other definitions pertinent to

16 this offense which you should consider.

17         A notice or advertisement is a published or

18 transmitted matter that makes a particular thing known.  A

19 notice or advertisement is made with the intention of

20 attracting others to the subject matter of the notice or

21 advertisement.  Furthermore, in determining whether something

22 is a notice or advertisement, you should consider the context

23 in which the alleged notice or advertisement is made, printed,

24 published, and/or disseminated, such that a printing or

25 publication that implicitly offers or seeks out a visual

1    depiction of child pornography may qualify as a notice or
2    advertisement.
3            Now the phrase "visual depiction" includes
4    undeveloped film and videotape, data stored on a computer disk
5    or by electronic means which is capable of conversion into a
6    visual image, and data that is capable of conversion into a
7    visual image that has been transmitted by any means, whether
8    or not stored in a permanent format.
9            The term "sexually explicit conduct" means actual or
10   simulated:
11           a.   Sexual intercourse, including
12   genitalia-genitalia, oral-genitalia, anal-genitalia, oral-anal
13   contact, whether between persons of the same or opposite sex;
14           b.   Bestiality;
15           c.   Masturbation;
16           d.   Sadistic or masochistic abuse; or
17           e.   Lascivious exhibition of the genitals or pubic
18   area of any person.
19           Now, regarding the last type of sexually explicit
20   conduct, "lascivious exhibition," not every exposure of the
21   genitals or pubic area constitutes a lascivious exhibition.
22   In determining whether -- excuse me.
23           In determining whether a visual depiction
24   constitutes a lascivious exhibition, you should consider the
25   context and setting in which the genitalia or pubic area is

1  being displayed.  You may consider the overall content of the

2  material.  You may also consider such facts as whether the

3  focal point of the visual depiction is on the minor's

4  genitalia or pubic area, or whether there is some other focal

5  point.  You may consider whether the setting of the depiction

6  is such as to make it appear to be sexually inviting or

7  suggestive; for example, in a location or in a pose associated

8  with sexual activity.  In addition, you may consider whether

9  the minor appears to be displayed in an unnatural pose or in

10  an appropriate -- or inappropriate attire.  You may also

11  consider whether the minor is partially clothed or nude.  You

12  may consider whether the depiction appears to convey sexual

13  coyness or an apparent willingness to engage in sexual

14  activity, and whether the depiction appears to have been

15  designed to elicit a sexual response in the viewer.  A visual

16  depiction need not involve all of these factors to be a

17  lascivious exhibition.  Excuse me a moment.

18          The term "interstate or foreign commerce" means the

19  movement of property from one state to another state or from

20  one state to another country.  The term "State" for this

21  purpose includes a State of the United States, the District of

22  Columbia, and any Commonwealth, Territory, or possession of

23  the United States.  Proof that material moved over the

24  internet is sufficient to demonstrate that the material

25  traveled in interstate or foreign commerce.  Finally, it is

not necessary for the Government to prove that defendant knew that the alleged child pornography had moved in interstate or foreign commerce, only that it had so moved.

The term "computer" means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand-held calculator, or other similar device.

So breaking down Count Three again, and reiterating the essential elements, I charge you that if you find from the evidence beyond a reasonable doubt that on or about the date or dates alleged and within the Western District of North Carolina or elsewhere:

Defendant knowingly made, printed, published, or caused to be made, printed, or published, a notice or advertisement;

Second, the notice or advertisement sought or offered to receive, exchange, buy, produce, display, distribute, or reproduce a visual depiction; and

3. The production of the visual depiction involved the use of a minor engaging in sexually explicit conduct, and the visual depiction is of the sexually explicit conduct; and

1          4.   The defendant knew that the person the

2    advertisement sought or offered a visual depiction of was a

3    minor; and

4          5(a).  That defendant knew or had reason to know

5    that the notice or advertisement would be transported using

6    any means or facility of interstate or foreign commerce,

7    including by computer; or

8          B.   The notice or advertisement was transported

9    using any means or facility of interstate or foreign commerce,

10   including by computer;

11         And if you find those to have been proven beyond a

12   reasonable doubt, it would be your duty to return a verdict of

13   guilty as charged in Count Three.

14         However, if you do not so find, or if you have

15   reasonable doubt as to one or more of the essential elements

16   of the crime charged, then it would be your duty to give

17   defendant the benefit of the doubt and return a verdict of not

18   guilty on Count Three.

19         Now we come to Counts Four, Five and Six which will

20   be charged -- rather, instructed on at one sitting, you might

21   say, because they all involve the same statute, the same

22   alleged violation.

23         First I'll read to you the statute, that is to say,

24   the indictment.

25         Count Four alleges that on or about February 1,

1    2015, in Caldwell County, within the Western District of North

2    Carolina and elsewhere, Steven W. Chase knowingly transported

3    and shipped, using any means and facility of interstate or

4    foreign commerce, and in or affecting interstate or foreign

5    commerce by any means, including by computer, any child

6    pornography as defined in Title 18 U.S. Code Section

7    2256(8)(A).  All in violation of Title 18 U.S. Code Section

8    2252A(a)(1).

9         Now Count Five alleges exactly the same offense in

10   the same words, except it alleges that it occurred on or about

11   October 12, 2014.

12        And Count Six involves the same charge in the same

13   wording except that it is alleged to have occurred on or about

14   September 26, 2014.

15        So the dates then of Four, Five and Six would be

16   February 1, 2015, October 12, 2014, and September 26, 2014, in

17   Counts Four, Five and Six, sequentially.  So that we'll

18   instruct on those three counts all the instructions pertaining

19   to each count individually, and you should apply the evidence

20   individually as to each count according to the offense charged

21   and the date alleged on which it is alleged to have occurred.

22        Now, the Section 2252A(a)(1) states:

23        Any person who knowingly transports or ships using

24   any means or facility of interstate or foreign commerce or in

25   or affecting interstate or foreign commerce by any means,

1  including by computer, any child pornography shall be punished

2  as provided in subsection b.

3          Now then, the essential elements then for these

4  three offenses are the same.

5          For you to find the defendant guilty of the offense

6  charged in Count Four, Five or Six, considering the evidence

7  separately as to each count, the Government must establish

8  beyond a reasonable doubt each of the following essential

9  elements:

10          First, that defendant knowingly transported or

11  shipped material using any means or facility in interstate or

12  foreign commerce or in or affecting interstate or foreign

13  commerce by any means, including by computer;

14          Second, that the material is child pornography; and

15          Third, that defendant knew that one or more persons

16  depicted in the material was a minor.

17          Now then, you are to use the same definitions I gave

18  you earlier for the word "minor, visual depiction, sexually

19  explicit conduct, interstate or foreign commerce, computer and

20  knowingly."

21          I'll now give you an additional definition which you

22  should consider as to these three counts, Counts Four, Five

23  and Six.

24          "Child pornography" means any visual depiction,

25  including any photograph, film, video, picture, or computer,

1  or computer-generated image or picture, whether made or

2  reproduced -- or produced by electronic, mechanical, or other

3  means, of sexually explicit conduct, where the production of

4  the visual depiction involves the use of a minor engaging in

5  sexually explicit conduct.

6         So, members of the jury, reiterating the elements of

7  this offense, which as I have said, applies to all Counts

8  Four, Five and Six, independently.

9         First, that defendant on or about the date or dates

10 alleged within the Western District of North Carolina or

11 elsewhere:

12        Defendant knowingly transported or shipped material

13 using any means or facility in interstate or foreign commerce

14 or in or affecting interstate or foreign commerce by any

15 means, including by computer; and

16        Second, that the material was child pornography;

17        Third, that the defendant knew that one or more

18 persons depicted in the material was a minor, then it would be

19 your duty to return a verdict of guilty as charged in Count

20 Four, Five and Six respectively.  However, if you do not so

21 find as to either or any of these counts, or if you have a

22 reasonable doubt as to one or more of the essential elements

23 of the crime charged as it related to Counts Four, Five or

24 Six, then it would be your duty to give the defendant the

25 benefit of that doubt and return a verdict of not guilty as to

1    any or all of these counts according to how you find.

2              Now, the last count is Count Seven, Possession of

3    Child Pornography.

4              In Count Seven the Defendant, Steven W. Chase, is

5    charged with violating Title 18 U.S. Code Section

6    2252A(a)(5)(B).

7              And Count Seven reads as follows:

8              Again, it is not evidence.

9              It alleges that between, on or about August 19,

10   2014, and February 17, 2015, in Caldwell County, within the

11   Western District of North Carolina, and elsewhere, Steven W.

12   Chase knowingly possessed any film, videotape, computer disk,

13   and any other material that contained an image of child

14   pornography as described, or rather, defined in Title 18

15   Section 2256A(8) -- excuse me, (8)(A), that involved a minor

16   who had not attained 12 years of age, and that has been

17   mailed, and shipped, and transported using any means and

18   facility of interstate and foreign commerce, and in and

19   affecting interstate and foreign commerce by any means,

20   including by computer, and that was produced using materials

21   that have been mailed, shipped, and transported in and

22   affecting interstate and foreign commerce by any means

23   including by computer.

24             All in violation of 18 U.S. Code 2252A(a)(5)(B).

25             Now that statute reads as follows:

1          Any person who knowingly possesses any film,

2   videotape, computer disk or any other material that contains

3   an image of child pornography that has been mailed or shipped

4   or transported using any means or facility of interstate or

5   foreign commerce, or in or affecting interstate or foreign

6   commerce by any means, including by computer, or that was

7   produced using materials that have been mailed or shipped or

8   transported in or affecting interstate or foreign commerce by

9   any means, including by computer, shall be punished as

10  provided by law.

11         Now, for you to find the defendant guilty of the

12  offense charged in Count Seven, the Government must establish

13  beyond a reasonable doubt each of the following essential

14  elements:

15         That at or about -- within the Western District of

16  North Carolina, at or about the time alleged, the defendant

17  knowingly possessed any film, videotape, computer disk, or

18  other material; and

19         Second, that the film, videotape, computer disk, or

20  other material contained at least one image of child

21  pornography; and

22         Third, the defendant knew that one or more persons

23  depicted in the film, videotape, computer disk, or other

24  material, was a minor; and

25         The film, videotape, computer disk, or other

1    material had been mailed or shipped or transported using any

2    means or facility of interstate or foreign commerce or in or

3    affecting interstate or foreign commerce by any means,

4    including by computer, or that was produced using materials

5    that had been mailed or shipped or transported in or affecting

6    interstate or foreign commerce by any means, including by

7    computer, those are the first four of these elements.

8            Additionally, should you conclude that the

9    Government established each of the above elements, you shall

10   then consider whether the Government established through proof

11   beyond a reasonable doubt that the minor depicted in the child

12   pornography had not attained 12 years of age; and

13           Secondly, that defendant knew the minor depicted in

14   the child pornography had not attained 12 years of age.

15           There will be a place on the verdict sheet for you

16   to address that secondary question should you reach that

17   issue.

18           Now then, you are to use the same definition I gave

19   you earlier to define "minor, visual depiction, sexually

20   explicitly conduct, interstate or foreign commerce, computer,

21   child pornography, and knowingly."

22           I'll now give you one additional definition

23   pertinent to the offense of Possession of Child Pornography,

24   which you should consider regarding Count Seven.

25           The word "possess" as in reference to possessing

1    materials -- the word "possess" means to own or exert control

2    over.  The word "possession" can take on several different but

3    related means.

4            The law recognizes two kinds of possession; actual

5    and constructive.  A person who knowingly has direct physical

6    control over a thing at a given time is then in actual

7    possession of it.  A person who, although not in actual

8    possession, knowingly has both the power and the intention at

9    a given time to exercise dominion or control over a thing,

10   either directly or through another person or persons, is then

11   in constructive possession of it.

12           The law recognizes that "possession" may be sole or

13   joint.  If one person alone has actual or constructive

14   possession of a thing, then possession is sole.  If two or

15   more persons share actual or constructive possession of a

16   thing, then possession is joint.

17           You may find that the element of "possession," as

18   that term is used in these instructions, is present if you

19   find beyond a reasonable doubt that the defendant had actual

20   or constructive possession, either alone or jointly with

21   others.

22           So in wrapping up Count Seven the following

23   essential elements I shall reiterate for you.

24           If you find beyond a reasonable doubt from the

25   evidence that on or about the date alleged, within the Western

District of North Carolina, and elsewhere:

The defendant knowingly possessed any film, videotape, computer disk, or other material; and

The film, videotape, computer disk, or other material contained at least one image of child pornography; and

Third, the defendant knew that one or more persons depicted in the film, videotape, computer disk, or other material was a minor; and

The film, videotape, computer disk, or other material had been mailed or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means including by computer, or that was produced using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means including by computer, then it would be your duty to return a verdict of guilty as charged in Count Seven. However, if you do not so find or if you have a reasonable doubt as to one or more of the essential elements of the crime charged, then it would be your duty to give the defendant the benefit of that doubt and return a verdict of not guilty on Count Seven.

If you return a verdict of guilty as to Count Seven as I have now described it, then you must consider the following question whether:

1.  The minor depicted in the child pornography had not obtained 12 years of age; and

Secondly, whether defendant knew the minor depicted in the child pornography had not attained 12 years of age.

Now then, you've heard the evidence and the arguments of counsel for both parties.  It is your duty to remember the evidence whether it has been called to your attention or not, and if your recollection of the evidence should differ from that of the attorneys, you are to rely solely upon your recollection of the evidence in your deliberations.

I have not reviewed the contentions of the parties, but it is your duty not only to consider all the evidence, but also the arguments, the contentions and positions urged by the attorneys in their speeches to you and any other contention that arises from the evidence, and to weigh them all in the light of your common sense, and as best you can determine the truth of this matter.

The law, as indeed it should, requires the presiding judge to be impartial.  Therefore, do not assume from anything that I may have said or done during the trial that I have any opinion concerning any of the issues before you in this case.

I instruct you that a verdict is not a verdict until all 12 jurors agree unanimously as to what your decision shall be.  You may not render a verdict by majority vote or any

1  other voting mechanism aside from unanimous verdict of 12.

2  And that pertains to all of the various decisions to be made

3  as suggested to you by the verdict sheet and the various

4  blanks that you will be asked to fill out in that regard.

5       The Court suggests that as soon as you reach the

6  jury room, before beginning deliberations, you select one of

7  your members to serve as foreperson.  This individual has the

8  same vote as the rest of the jurors, but simply serves to

9  preside over the discussions.  Once you begin deliberating, if

10 you need to communicate with me, the foreperson would send a

11 written message to me by knocking on the door and handing it

12 to the Marshal.  However, you are not to tell me how you may

13 stand numerically as to your verdict at any given time.  For

14 instance, should you be split in your voting at a particular

15 time, you would not tell me the specific numbers of division

16 in your note.

17      We use a verdict sheet.  And this is simply the

18 written notice of the decision that you reach in the case.  As

19 soon as you've reached a verdict your foreperson will, as you

20 go along, fill it out as to all the unanimous decisions and

21 you would then return to the courtroom and your foreperson

22 will, on request, hand the verdict sheet to the clerk.  There

23 are places on the verdict sheet for the foreperson to enter

24 the verdict, sign it and date it.

25      Now during the trial several items were received

1  into evidence as exhibits.  You will have access to most of

2  the trial exhibits through what we call the J-E-R-S program

3  that will be explained to you by the Clerk.

4      During your deliberations, you must not communicate

5  with or provide any information to anyone by any means about

6  this case.  You may not use any electronic device or media,

7  such as a cell phone, smart phone, like Blackberries or

8  iPhones, or computers of any kind; the internet, any internet

9  service, or any text, or instant messaging service like

10 Twitter, or any internet chat room, blog, website or social

11 networking service, such as Facebook, My Space, LinkedIn or

12 You Tube to communicate to anyone, any information about this

13 case or to conduct any research about this case until I

14 finally accept your verdict.

15     Now, if you need a break during your deliberations,

16 you may do so in the jury room, or if it's a smoke break, then

17 outside the jury room escorted by a marshal.  But you must not

18 deliberate during a break unless all twelve of you are

19 together at the time.  And if not together, then do not talk

20 about the case until all of you are back together.

21     Now, does either side request a sidebar concerning

22 these instructions at this time?

23     MS. RANDALL:  No, Your Honor.

24     MR. ADOLF:  No, Your Honor.

25     THE COURT:  All right.  Thank you.

1          So the way that we'll handle the lunch hour, members

2     of the jury, I would, as I said earlier, I would dismiss you

3     for lunch.  And it is now a little after 1:00.  Let's say if

4     you would endeavor to be back somewhere around quarter of 2:00

5     then that gives you about 45 minutes.  But you can have an

6     hour, whatever it takes for you to have lunch.  But the way it

7     works is that when you come back to the courthouse, you come

8     to this jury room and go on in there and the marshal will be

9     checking people in.  As soon as the 12 of you are ready, the

10    first 12 here are present, then you may start deliberating.

11    And I will speak to you four alternates here in just a moment.

12          Our law clerk, Mr. Miller, has advised that I didn't

13    read to you Count Three of the indictment.

14          Would the parties request that Count Three be read

15    from the indictment?

16          MS. RANDALL:  Your Honor, the indictment will be

17    sent back with the jurors for their review; is that correct?

18          THE COURT:  I beg your pardon?

19          MS. RANDALL:  A copy of the indictment will be sent

20    back for them to review.

21          THE COURT:  They will have a copy of the indictment.

22    And this is the Advertising allegation, the substantive count.

23          I think I'll read it to you, members of the jury,

24    won't take but a second.  I'm sure you'll feel familiar with

25    it, but for clarity we'll read it.

1    It alleges that between, on or about August 19,

2  2014, and March 4, 2015, in Caldwell County, within the

3  Western District of North Carolina and elsewhere, Steven W.

4  Chase, Michael Fluckiger, David Lynn Browning:

5    Did knowingly make, print, and publish, and cause to

6  be made, printed, and published, any notice or advertisement

7  seeking and offering to receive, exchange, buy, produce,

8  display, distribute, and reproduce any visual depiction, the

9  production of which visual depiction involved the use of a

10  minor engaging in sexually explicit conduct, and such visual

11  depiction was of such conduct; and participation in any act of

12  sexually explicit conduct by and with any minor for the

13  purpose of producing a visual depiction of such conduct;

14  knowing and having reason to know that such a notice and

15  advertisement would be transported using any means or facility

16  of interstate and foreign commerce, and in and affecting

17  interstate and foreign commerce by any means, including by

18  computer, and such notice and advertisement was transported

19  using any means and facility of interstate and foreign

20  commerce, and in and affecting interstate and foreign commerce

21  by any means including by computer, alleged to be in violation

22  of Section 2251.

23    So thank you, members of the jury.

24    Now then, I'll dismiss you for lunch.  While you are

25  at lunch, don't discuss the case.  Keep an open mind about it.

1  Don't use any electronic media as I just described and you'll

2  begin deliberating as soon as 12 of you check back in.  Thank

3  you.

4          (The jury was escorted from the courtroom at 1:09.)

5          THE COURT:  Now, the regular jurors have left.  I

6  want to thank you very much for your participation in this

7  case.  As it happens, it will be the better part of wisdom if

8  you would stay with us until the jury reaches a verdict.  The

9  reason for that is that sometimes one of these jurors would

10 have a sick child call from home or something and/or a parent

11 or somebody who's ailing or any number of things that would

12 cause a juror to be called away and have to go attend to

13 something.  And in which case without having 12 jurors we

14 would have to start all over again, do the whole trial over.

15 Of course it's very expensive to do that, and so forth.  So by

16 having the alternates we are blessed to have you with us and

17 willing and able to serve.

18          What I would ask you to do is go ahead and go to

19 lunch.  When you come back, Ms. Johnson will show you where to

20 go, in fact, she may do it now, so you'll be comfortable until

21 the jury reaches a verdict.  If the jury comes in and wants a

22 question to be asked.  We will bring you all back for purposes

23 of hearing just what they hear in response to any question.  I

24 don't anticipate that would be necessary or that it would

25 happen.

1          But in any event, I would ask you to keep an open

2     mind about the case, don't discuss it with one another or

3     anyone else, and to follow all the instructions I've given the

4     jury up until now.  And then should it happen that one or more

5     individuals within the jury can't continue, we would replace

6     such a juror or jurors with you in sequential order there, and

7     that will enable us to ensure we'll get a verdict on this case

8     and it won't have to be retried.  Thank you so much for your

9     help in that regard.

10         THE DEPUTY CLERK:  Judge, should they leave their

11    notebooks here, the alternates?

12         THE COURT:  That will be fine.

13         (The alternate jurors were excused.)

14         THE COURT:  Will it be the pleasure of the parties

15    to put in the record the written ruling on the 401 and Rule

16    403 rulings?

17         MR. ADOLF:  Yes, sir.  That would be our request.

18         THE COURT:  All right.  That will be a Court exhibit

19    I take it.

20         MS. RANDALL:  Your Honor, two other just quick

21    housekeeping matters since it sounds like the jury is going to

22    be deliberating as soon as they come back.  The indictment

23    that's going to be sent back to them, I assume will redact all

24    charges after Count Seven through the signature?

25         THE COURT:  That's correct, and the forfeiture

1    language.

2         MS. RANDALL:  And then the charges relating to the

3    other defendants.  And then one other matter, I want to make

4    it clear on the record.  When we submitted our documents for

5    the JERS system to be submitted to the -- for the jurors.  We

6    removed Government's Exhibit 5 and 14 from that.  These were

7    exhibits that were entered as kind of the mass bulk entering

8    when the agent was testifying about all the screen shots he

9    took.  We went ahead and entered them since he was here to lay

10   a foundation in case we wanted to use them later.  He didn't

11   actually offer any testimony or explain what the screen shots

12   were about.  The screen shots regarding some particular chats

13   where people were talking about actually molesting children.

14   So since they were not talked about, they were not explained

15   and there was no testimony about them and they were never

16   actually shown to the jury, we did not include those in the

17   exhibits that were to be submitted into JERS.  So I just

18   wanted to let the Court and Mr. Adolf know that since the JERS

19   system will not match the actual exhibit list.

20        THE COURT:  All right.  Thank you.

21        The special allegation as to defendant Michael

22   Fluckiger was also taken out or redacted.

23        MS. RANDALL:  Thank you, Your Honor.

24        THE COURT:  Now we will be -- assuming the jury

25   comes back with a verdict of guilty for the purposes of this

1  announcement, I hope you all will look at the forfeiture

2  instructions and be ready if it becomes pertinent to undertake

3  the, hopefully, brief hearing on forfeiture.

4         MR. BAIN-CREED:  We will, Your Honor.  We anticipate

5  a very brief argument there.

6         MR. ADOLF:  Your Honor, there was one remaining

7  matter which was my motion, if indeed there is a conviction

8  and I guess it would be after the forfeiture, to poll the jury

9  on their views of punishment.  I submitted it as a one

10  question -- as a one question sheet that would say, "What do

11  you -- How much time do you believe the defendant should be

12  sentenced to in months?"

13         THE COURT:  Yeah.  I'm going to deny that request.

14         MR. ADOLF:  I understand, Your Honor.

15         (Lunch recess.)

16         (The jury begins deliberations at 2:04.)

17         (The jury knocks with a question.)

18         (Question No. 1 was answered on paper to the jury.)

19         (The jury knocks at 3:31:)

20         (The defendant is present.)

21         (The jury was returned to the courtroom.)

22         THE COURT:  All right.  The Court received a note

23  from the jury as follows:

24         "Judge, Count Four refers to February 1, 2015.  And

25  we need the specific exhibit associated with Count Four.

1    Please provide the exhibit."

2          And that is your request and that is not on the

3    system available in the jury room so we brought you out for

4    the purpose of showing that exhibit.

5          Would the Government state the number of that

6    exhibit?

7          MS. RANDALL:  Yes, Your Honor.  This is Government's

8    Exhibit 24.

9          THE COURT:  All right.  The alternates are present.

10   Yes, ma'am.

11         MS. RANDALL:  I was going to ask, do you want me to

12   zoom in and scroll through the exhibit or how would you like

13   me to display it?

14         JUROR NO. 9:  (Indicating.)

15         THE COURT:  Yes, sir.

16         JUROR NO. 9:  We just need to see the top lines on

17   the exhibit, sir.

18         THE COURT:  All right.

19         JUROR NO. 9:  Next to the avatar.

20         THE COURT:  Show the top part then.

21         MS. RANDALL:  If I could clarify, of the -- there

22   are two different avatars.  I'll show the first one and then

23   the second one.

24         JUROR NO. 9:  Okay.

25         THE COURT:  Would you like to have it blown up any?

1          JUROR NO. 9:  I think everybody is good, sir.

2          THE COURT:  All right.  Very well.  If that

3   satisfies the question, then you may return to the jury room.

4          JUROR NO. 9:  Thank you.

5          THE COURT:  Thank you, all.

6          We'll be in recess.  And thank you all for

7   continuing to be with us.

8          (The jury is excused and continues deliberations

9   from 3:36 until 4:00.)

10          THE COURT:  Did the jury announce they have a

11   verdict?

12          THE DEPUTY CLERK:  They did, Your Honor.

13          THE COURT:  Are the parties ready to announce the

14   verdict?

15          MS. RANDALL:  Yes, sir.

16          MR. ADOLF:  Yes, Your Honor.

17          THE COURT:  May we have the jury and the alternates,

18   also.

19          (The jury was returned to the courtroom.)

20          THE COURT:  All right, sir.

21          The jury is now seated in the jury box along with

22   the alternates.

23          Did the jury reach a verdict?

24          THE JURY:  Yes, sir.

25          THE COURT:  Was it unanimous as to all the various

1  decisions that have been entered on the verdict sheet?

2  THE JURY:  Yes, sir.

3  THE COURT:  And did you sign it and date it?

4  THE JURY:  Yes, sir.

5  THE COURT:  All right.  Madam Clerk, if you will

6  receive the verdict sheet, please.

7  (Juror No. 9 handing verdict sheet to the Deputy

8  Clerk.)

9  THE COURT:  Okay.  There's a couple of things we'll

10 need to address.  First of all, the verdict sheet has an

11 instruction on page 2 which says:

12 "If you found that the offense of advertising child

13 pornography was a predicate offense, skip Count Two and

14 continue to Count Three."

15 So I'm going to ask that the jury go back to the

16 jury room and see if you can't amend your verdict sheet so

17 that that is complied with.

18 JUROR NO. 9:  Yes, sir.

19 THE COURT:  All right.  Madam Clerk.

20 Anything for the Court concerning the supplementary

21 instruction that has been given to the jury?

22 MR. BAIN-CREED:  No objection, Your Honor.

23 THE COURT:  I take it the Government would want to

24 proffer some argument?

25 MR. BAIN-CREED:  Yes, Your Honor, very brief.  I

1   mean, probably ten minutes or less.

2           THE COURT:  All right.

3           MR. BAIN-CREED:  I'm not sure what the defense

4   anticipates proffering.

5           THE COURT:  All right.  You have no additional

6   evidence?

7           MR. BAIN-CREED:  No, sir.

8           THE COURT:  What about from the defendant?

9           MR. ADOLF:  No additional evidence, Your Honor, just

10  very brief argument.

11          THE COURT:  All right.  Thank you.

12          Just for consistency sake, we'll let the Government

13  have a brief opportunity to respond to defense argument.

14          MR. BAIN-CREED:  Thank you, Your Honor.

15          (The jury knocks at 4:08 and was returned to the

16  courtroom.)

17          THE COURT:  Okay.  Did the jury respond to the

18  Court's request?

19          JUROR NO. 9:  Yes, Your Honor.

20          THE COURT:  Did the additional adjustment you made

21  to the verdict sheet come with the unanimity of all the

22  jurors?

23          JUROR NO. 9:  Yes, Your Honor.

24          THE COURT:  All right.  Thank you.  Madam Clerk.

25          All right.  And you have initialed the change on

1    page 2?

2              JUROR NO. 9:  Yes, Your Honor.

3              THE COURT:  And that is the verdict of the jury, so

4    say you all.

5              THE JURY:  (Nodding head affirmatively.)

6              THE COURT:  I see affirmative nods there.  Thank

7    you.

8              Now then, members of the jury, you have one other

9    item to take care of, not to be jocular about it, but it isn't

10   5:00 yet.  The horn hasn't sounded.  We have one short item

11   for your attention.  You have labored long and hard, but at

12   this stage of the proceedings this additional responsibility

13   becomes necessary in view of the verdict.

14             The defendant has been found guilty of the Counts

15   One through Seven, except for Two.  I must now ask you certain

16   questions concerning property the Government alleges is

17   subject to forfeiture.

18             I have some short instructions, the parties will

19   have an opportunity to say very short words about it, then you

20   will be asked to deliberate on this matter as well.  And

21   there's, likewise, a short verdict sheet for the forfeiture

22   aspect of the case.

23             In this regard, I instruct you that your previous

24   verdict that defendant is guilty on those counts is binding on

25   this part of the proceeding and you must not seek to discuss

1  or determine anew whether the defendant is guilty or not

2  guilty of those charges.  You've already made your findings

3  there.

4          I further instruct you that what happens to any

5  property that is declared forfeited is absolutely a matter for

6  the Court to decide, that is, what happens to the property.

7  You should not consider what might happen to the property in

8  determining whether the property is subject to forfeiture.

9          In this connection you should disregard any claims

10  that any other persons may have to the property.  The

11  interests that other persons may have in the property will be

12  taken into account by the Court at a later time.

13          Similarly, any claims that the forfeiture of the

14  property would constitute excessive punishment would be taken

15  into account by the Court at a later time.

16          What you must now decide is whether the defendant

17  must forfeit certain property that the Government claims is

18  subject to forfeiture to the United States because of its

19  connection to the offenses in Counts One and Two through

20  Seven.

21          The first, the real property at, excuse me, 3570

22  15th Avenue SW, Naples, Florida; next, one ASUS Laptop, serial

23  number ELN0CV0907390L2 and identified as Government's Exhibit

24  Number 66; and lastly, one Cruzer 128 thumb drive and

25  identified as Government's Exhibit Number 68.

          Forfeiture means that, as part of the penalty for
engaging in certain criminal activity, Defendant loses any
ownership or interest he has or claims to have in certain
property.  Under federal law, any person who is convicted of
violating Title 18 U.S. Code Section 2251 or Section 2252A
shall forfeit to the United States any real property and
personal property used or intended to be used to commit or to
promote the commission of that person's Section 2251 or 2252A
offenses.

          In order to determine whether forfeiture is merited
under this law, you will be asked to return a Special Verdict
of Forfeiture on whether there is a nexus between the Section
2251 and Section 2252A offenses, and the defendant's residence
in Naples, Florida, and the computer items identified in these
instructions and on the special verdict sheet that I will
provide to you.

          "Nexus" means that there is a substantial connection
between the properties and the crime.  A substantial
connection may be established by showing that the use of the
property made the crime less difficult or more or less free
from instruction or hinderance, or otherwise promoted the
defendant's ability to complete the offense.

          To be forfeitable the property need not be used
exclusively for illegal activity.  Property that is used the
vast majority of the time for legitimate purposes may

1  nevertheless be forfeited if it promotes the commission of a
2  criminal offense.
3         You must consider what verdict to render on whether
4  there is a nexus between the defendant's residence, the
5  computer items, and the offenses of conviction of which you
6  have already found defendant guilty.
7         All of my previous instructions regarding direct and
8  circumstantial evidence, credibility of witnesses, and duty to
9  deliberate apply with respect to your verdict regarding
10 forfeiture.
11        However, in deliberating and deciding your verdict
12 regarding forfeiture, I instruct you that the Government need
13 only prove by a preponderance of the evidence whether there is
14 a connection or nexus between the offense and the specific
15 properties identified.
16        When I say the "offense" I refer, of course, to all
17 the ones -- counts of conviction.  The Government is not
18 required to prove a nexus beyond a reasonable doubt.  I
19 instruct you that, in order for the Government to establish by
20 a preponderance of the evidence the nexus of specific
21 properties to the offenses, the Government must prove that it
22 is more likely than not that the specific properties were used
23 or intended to be used to commit or to promote the commission
24 of a Section 2251 or Section 2252A offenses.  In other words,
25 "preponderance of the evidence" means that the Government's

1    evidence, when considered and compared with that opposed to

2    it, has more convincing force and produces in your minds a

3    belief that there is a nexus between the specifically

4    identified properties and Defendant's crimes.  Your job is to

5    determine whether the nexus is more likely so than not.

6           While deliberating, you may consider any evidence,

7    including but not limited to testimony, offered by the parties

8    at any time during this trial.  That includes, of course,

9    witnesses -- witness testimony and exhibits.  There won't be

10   any new evidence at this time.  You would just use the

11   evidence you've already heard.

12          You must reach a unanimous verdict as to the

13   questions on the Special Verdict Form.  Everyone must agree to

14   any "Yes" or "No" answer.  Everyone must agree on whether the

15   preponderance of the evidence proves that the property

16   identified on the verdict form was used or intended to be used

17   to commit or to promote the commission of the Counts One and

18   Three through Seven offenses in violation of Title 18,

19   Section 2251 and 2252A.

20          As I said, a Special Verdict form has been prepared

21   for you.  The Special Verdict form lists those three

22   properties that I read out which the Government asserts are

23   subject to forfeiture.

24          You may answer by simply putting an "X" or check

25   mark in the space provided next to the words "Yes" or "No" on

1  each question.

2      Now then, would the Government have any words of

3  argument in respect to this aspect of the trial?

4      MR. BAIN-CREED:  Yes, sir, Your Honor.  May it

5  please the Court.

6      THE COURT:  All right.

7      MR. BAIN-CREED:  Members of the jury, I'm a little

8  late coming to the trial, but I work with Ms. Randall.  My

9  name is Benjamin Bain-Creed.  I'm a forfeiture attorney.  I

10 handle this phase of the trial.

11     Now that you have returned guilty verdicts,

12 effectually, as the Judge explained, what the Government is

13 asking that you return a verdict that the 3570 15th Avenue SW,

14 Naples, Florida, the ASUS Laptop be subject to forfeiture

15 because they were used in the crimes.  The way you fulfill

16 your duty in this regard is, you determine whether there's a

17 nexus between that property and the crime.

18     "Nexus" is a fancy legal word for connection.  You

19 apply a preponderance of the evidence, burden of proof being

20 more likely than not.  The burden of proof is a lesser burden

21 than beyond a reasonable doubt.  And you determine whether

22 it's more likely than not that those properties were used in

23 the crimes.

24     So I'm just going to ask you to look -- I'm going to

25 make it very brief and ask you to look back to the same things

1    Ms. Randall asked you to look at in the closing argument.
2    Look at the fact the evidence shows the defendant accessed the
3    email account he used to set up PlayPen from his Florida
4    residence, from the privacy of that residence.  Look at the
5    evidence that he accessed PayPal, used PayPal to operate
6    Playpen.  That was also from the privacy of his residence.
7    Look at the evidence that he accessed the PlayPen server on
8    multiple occasions prior to the search, from the privacy of
9    his Florida residence.
10           And look at the search itself.  When law enforcement
11   showed up his -- he was in the privacy of his residence.  His
12   computer was on.  He was on the PlayPen server.  He was logged
13   in as the administrator.  The thumb drive was in the computer
14   with backup copies for purposes of using PlayPen, all in the
15   privacy of his residence.  Important to his crime is his
16   residence which was used in the crimes, as well as the
17   computer items.
18           In fact, the privacy is so important that he tried
19   to prevent the police from coming in, which is not something
20   he could do at Starbucks or the public library.  This was
21   private, just like Tor provided anonymity, the residence
22   provided anonymity.
23           We would ask you to return a verdict of forfeiture
24   on that residence, on the thumb drive, and on the computer.
25   Thank you very much.

1          THE COURT:  Mr. Adolf.

2          MR. ADOLF:  Thank you, Your Honor.

3          Folks, you've convicted Mr. Chase of very serious

4  crimes.  You're aware of that.  I respect that decision.  I

5  know you do some hard work back there.  Now the government is

6  trying to take his house on top of that.  I'm not worried

7  about the computers.  The house that you heard that he lived

8  in with his wife until her death, where they raised children.

9  That's because they say he used the house to commit the crime

10 because that's where he was sitting on the computer.

11         So I guess if you believe that, then I guess the

12 government could take the glasses that he wore while he was

13 sitting there on the computer.  They could take the clothes

14 off his back, because they kept him warm while he sat there on

15 the computer.  They could take his shoes, the clothes, the

16 food in the refrigerator that he was snacking on so he could

17 sit at the computer.

18         Is there any end to it?  What does it even mean to

19 use something?

20         If your teenage daughter is caught smoking marijuana

21 in her bedroom, did she use your house to commit a drug crime?

22 Be very, very careful about the power that you give your

23 government, folks.  It is not necessary to take his house

24 away, and it's not the law.  So I'm asking you not to do it.

25 Thank you.

1    MR. BAIN-CREED:  Just very briefly, members of the

2  jury, as the Judge has instructed you, it's the Judge's role

3  to determine whether a penalty is excessive.

4    Forfeiture is, in fact, a penalty in this case.

5  It's a penalty for a heinous crime involving thousands of

6  child pornography images that were made available to over

7  100,000 people worldwide.  So, yes, it is a penalty.

8    But excessiveness arguments are for the Judge.  Your

9  only role is to determine if there is a connection between the

10 house and the crimes.  The government contends that connection

11 is clear.  This is something the defendant did from the

12 privacy of his residence.  He tried to keep law enforcement

13 out when they came in.  That is not something they could do

14 other than in the privacy of his residence.  We ask you to do

15 that.  So we ask you to return a verdict of forfeiture.  Thank

16 you.

17    THE COURT:  Members of the jury, you heard the

18 arguments and the Court's instructions.  The clerk will hand

19 you the verdict sheet.  And I would appreciate it if you would

20 step into the jury room and take care of this last aspect of

21 the case.

22    (The jury was escorted from the courtroom at 4:21.)

23    THE DEPUTY CLERK:  The Judge said to let you all

24 look at the verdict sheet.

25    THE COURT:  We'll be polling the jury when they come

1    back as to both the offenses and the forfeiture.

2              MR. ADOLF:  Yes, Your Honor.

3              (The jury knocks at 4:58:)

4              THE COURT:  Did the jury indicate they reached a

5    verdict?

6              THE COURT SECURITY OFFICER:  They did, Your Honor.

7              THE COURT:  Are the parties ready to receive the

8    verdict?

9              MR. BAIN-CREED:  Yes, Your Honor.

10             MR. ADOLF:  Yes, Your Honor.

11             THE COURT:  May we have the jury.

12             (The jury was returned to the courtroom at 5:00.)

13             THE COURT:  All right.  The jury is seated.  Did the

14   jury reach a verdict on the forfeiture issue?

15             JUROR NO. 9:  Yes, sir, Your Honor.

16             THE COURT:  Did you fill in the verdict sheet

17   accordingly?

18             JUROR NO. 9:  Yes, sir.

19             THE COURT:  Was it a unanimous decision?

20             JUROR NO. 9:  Yes, sir.

21             THE COURT:  All right.  Madam Clerk, we'll receive

22   the verdict sheet.

23             Okay.  Madam Clerk, if you would please announce or

24   publish the verdict.  And members of the jury, please listen

25   up as the clerk does so because you'll be asked in just a

1    moment if that is and does remain your verdict.

2         THE DEPUTY CLERK:  Members of the jury, you have

3    found as follows:

4         As to Defendant, Steven W. Chase:

5         "We, the jury, return the following Verdict as to

6    the charges contained in the Second Superseding Bill of

7    Indictment against Defendant, Steven W. Chase:

8         "Count One:

9         "As to Count One, we the jury, find the Defendant,

10   Steven W. Chase guilty of engaging in a Child Exploitation

11   Enterprise between or about August 19, 2014 and March 4, 2015,

12   as alleged in Count One of the Second Superseding Bill of

13   Indictment.

14        "Special Interrogatory 1:

15        "Predicate Offenses Supporting Guilty Verdict on

16   Count One:"

17        As marked, "Advertising Child Pornography between on

18   or about August 19, 2014 and March 4, 2015.

19        "Transporting or Shipping Child Pornography on or

20   about February 1, 2015.

21        "Transporting or Shipping Child Pornography on or

22   about October 12, 2014.

23        "Transporting or Shipping Child Pornography on or

24   about September 26, 2014.

25        "Possession of Child Pornography between on or about

1  August 19, 2014 and February 17th, 2015.

2          "If you found that the offense of Advertising Child

3  Pornography was a predicate offense, skip Count Two and

4  continue to Count Three.

5          "Count Two:  No verdict.

6          "Count Three.

7          "As to Count Three, we the jury find the Defendant,

8  Steven W. Chase, guilty of Advertising Child Pornography

9  between on or about April 14, 2014 and March 4, 2015, as

10 alleged in Count Three of the Second Superseding Bill of

11 Indictment.

12         "Count Four.

13         "As to Count Four, we the jury find the Defendant,

14 Steven W. Chase, guilty of Transporting or Shipping Child

15 Pornography on or about February 1, 2015, as alleged in Count

16 Four of this Second Superseding Bill of Indictment.

17         "Count Five.

18         "As to Count Five, we the jury find the Defendant,

19 Steven W. Chase, guilty of Transporting or Shipping Child

20 Pornography on or about October 12, 2014, as alleged in Count

21 Five of the Second Superseding Bill of Indictment.

22         "Count Six.

23         "As to Count Six, we the jury find the Defendant,

24 Steven W. Chase guilty of Transporting or Shipping Child

25 Pornography, on or about September 26, 2014, as alleged in

1  Count Six of the Second Superseding Bill of Indictment.

2       "Count Seven.

3       "As to Count Seven, we the jury find the Defendant,

4  Steven W. Chase guilty of Possession of Child Pornography,

5  between on or about August 19, 2014 and February 17th, 2015,

6  as alleged in Count Seven of the Second Superseding Bill of

7  Indictment.

8       "As to Question 1:

9       "Age of Minor in Child Pornography:

10      "Concerning the Child Pornography possessed by

11  Defendant relevant to Count Seven, did Defendant know that the

12  child pornography involved a minor who had not attained the

13  age of 12 years of age?

14      "Yes.

15      "Special Verdict Form Forfeiture.

16      "We, the jury, unanimously find by a preponderance

17  of evidence as follows:

18      "Count One Forfeiture:

19      "Was the real property at 3570 15th Avenue SW,

20  Naples, Florida, used or intended to be used to commit or to

21  promote the commission of the Count One offense in violation

22  of 18 U.S.C. Section 2252A(g)?

23      "Yes.

24      "2:  Was the ASUS Laptop, serial number

25  ELN0CV0907390L2, and identified as Government's Exhibit Number

1  66, used or intended to be used to commit or to promote the

2  commission of the Count One offense in the violation of 18

3  U.S.C. Section 2252A(g)?

4       "Yes.

5       "3:  Was the Cruzer 128GB thumb drive, and

6  identified as Government's Exhibit Number 68, used or intended

7  to be used to commit or promote the commission of the Count

8  One offense in violation of 18 U.S.C. Section 2252A(g)?

9       "Yes.

10       "Count Three Forfeiture:

11       "1.  Was the real property at 3570 15th Avenue SW,

12  Naples, Florida, used or intended to be used to commit or to

13  promote the commission of the Count Three offense in violation

14  of 18 U.S.C. Section 2251(d)?

15       "Yes.

16       "2.  Was the ASUS Laptop, serial number

17  ELN0CV0907390L2, and identified as Government's Exhibit 66,

18  used or intended to be used to commit or to promote the

19  commission of the Count Three offense in violation of 18

20  U.S.C. Section 2251(d)?

21       "Yes.

22       "Was the Cruzer 128GB thumb drive, and identified as

23  Government's Exhibit 68, used or intended to be used to commit

24  or to promote the commission of the Count Three offense in

25  violation of 18 U.S.C. Section 2251(d)?

1          "Yes."

2          THE COURT:  Madam Clerk, poll the jury.

3          THE DEPUTY CLERK:  Juror No. 1, was this your

4     verdict; is it still your verdict?

5          JUROR NO. 1:  Yes.

6          THE DEPUTY CLERK:  Juror No. 2, was this your

7     verdict; is it still your verdict?

8          JUROR NO. 2:  Yes.

9          THE DEPUTY CLERK:  Juror No. 3, was this your

10    verdict; is it still your verdict?

11         JUROR NO. 3:  Yes.

12         THE DEPUTY CLERK:  Juror No. 4, was this your

13    verdict; is it still your verdict?

14         JUROR NO. 4:  Yes.

15         THE DEPUTY CLERK:  Juror No. 5, was this your

16    verdict; is it still your verdict?

17         JUROR NO. 5:  Yes.

18         THE DEPUTY CLERK:  Juror No. 6, was this your

19    verdict; is it still your verdict?

20         JUROR NO. 6:  Yes.

21         THE DEPUTY CLERK:  Juror No. 7, was this your

22    verdict; is it still your verdict?

23         JUROR NO. 7:  Yes.

24         THE DEPUTY CLERK:  Juror No. 8, was this your

25    verdict; is it still your verdict?

1           JUROR NO. 8:  Yes.

2           THE DEPUTY CLERK:  Juror No. 9, was this your

3    verdict; is it still your verdict?

4           JUROR NO. 9:  Yes.

5           THE DEPUTY CLERK:  Juror No. 10, was this your

6    verdict; is it still your verdict?

7           JUROR NO. 10:  Yes.

8           THE DEPUTY CLERK:  Juror No. 11, was this your

9    verdict; is it still your verdict?

10          JUROR NO. 11:  Yes.

11          THE DEPUTY CLERK:  Juror No. 12, was this your

12   verdict; is it still your verdict?

13          JUROR NO. 12:  Yes.

14          THE COURT:  Thank you, Madam Clerk.

15          Will there be anything further for the jury before

16   they are released?

17          MS. RANDALL:  Not from the government, Your Honor.

18   Thank you.

19          MR. ADOLF:  No, Your Honor.

20          THE COURT:  All right.  Members of the jury, I want

21   to thank all of you and, also, of course, the alternates.  In

22   civil cases alternates deliberate alongside civil juries but

23   we're not able to do that in criminal cases.  You necessarily

24   serve a very important position should you be needed to go in

25   to replace a juror with some issue and couldn't continue

1   deliberating.  All of you deserves our thanks.  We appreciate

2   your service to the Court.  If you have any questions about

3   your service, call the Clerk on the third floor or the

4   telephone number you've been given.  I asked you not to talk

5   about the case until it was over.  Now it is over.  If one of

6   the attorneys or anyone else asks you about the case or anyone

7   at home, you're entirely free to discuss it if you wish, but

8   you're under no obligation to do so if you would rather not.

9           (The jury was escorted from the courtroom at 5:09.)

10          THE COURT:  All.  The jury has departed.

11          Mr. Chase, the jury having found as it did --

12          JUROR:  Excuse me.  I forget my umbrella.

13          THE COURT:  Okay.  Feel free to come forward and

14  pick it up.

15          JUROR:  It's on top.

16          THE COURT:  You thought of it in a timely manner.

17          (The juror has exited the courtroom.)

18          THE COURT:  Okay.  Mr. Chase, the jury finding as

19  they did, the remaining matter will be the sentencing hearing.

20  Between now and the time of the sentencing hearing you, and I

21  would say the probation officer, will be preparing a

22  presentence report.  And you'll be asked to provide an

23  interview for that report if you see fit, and your attorney

24  may be with you at the time of such an interview if you wish.

25          THE DEFENDANT:  (Nodding head affirmatively.)

1           THE COURT:  Then at the time of sentencing you will

2  have had a copy of the presentence report for at least 35

3  days.  That will give you and your attorney time to go over it

4  carefully and make sure it's accurate.  And your attorney may

5  file objections to it if it is not, and those objections would

6  be resolved by the Court.  At the time of sentencing you and

7  your attorney will both be having the opportunity to speak to

8  the Court about the matter of an appropriate sentence, and

9  evidence may be offered at that time also if that is in order.

10           Do you have any question about these matters?

11           THE DEFENDANT:  No, Your Honor, I don't.

12           THE COURT:  All right.

13           THE DEFENDANT:  Everything is covered.

14           THE COURT:  All right, sir.

15           Anything further before the Court adjourns for the

16  evening?

17           MR. BAIN-CREED:  No, Your Honor.

18           MR. ADOLF:  No, Your Honor.

19           THE COURT:  All right.

20           (The matter is concluded at 5:14.)

21

22

23

24

25

1   UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
2   CERTIFICATE OF OFFICIAL REPORTER

3        I, Laura Andersen, Federal Official Court Reporter,

4   in and for the United States District Court for the Western

5   District of North Carolina, do hereby certify that pursuant to

6   Section 753, Title 28, United States Code that the foregoing

7   is a true and correct transcript of the stenographically

8   reported proceedings held in the above-entitled matter and

9   that the transcript page format is in conformance with the

10   regulations of the Judicial Conference of the United States.

11

        Dated this the 14th day of August, 2017.

12

13

          S/Laura Andersen
14            Laura Andersen, RMR
            Federal Official Court Reporter
15

16

17

18

19

20

21

22

23

24

25