UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:20-cv-80-KDB
(5:15-cr-15-KDB-DCK-1)

| | |
|---|---|
| STEVEN W. CHASE, ) <br> ) <br> Petitioner, ) <br> ) <br> vs. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Respondent. ) <br> _____ ) | ORDER |

**THIS MATTER** is before the Court on Petitioner's *pro se* Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1). The Government has filed a Motion to Dismiss, (Doc. No. 5).

**I.  BACKGROUND**

Petitioner and two co-defendants were charged in connection with the Playpen child pornography advertising and distribution website. The charges pertaining to Petitioner are: Count (1), knowingly engaging in a child exploitation enterprise as part of a series of felony violations "which offenses include those described in Counts Three through Thirteen of this Indictment…" (18 U.S.C. § 2252A(g)); Count (2), conspiracy to advertise child pornography (18 U.S.C. § 2251(d), (e)); Count (3), advertising child pornography (18 U.S.C. § 2251(d)); Counts (4)-(6), transportation of child pornography (18 U.S.C. § 2252A(a)(1)); and Count (7), possession of child pornography involving a prepubescent minor (18 U.S.C. § 2252A(a)(5)(B)). (5:15-cr-15 ("CR") Doc. No. 31).

1

The Government presented evidence at trial that Petitioner was the creator and main administrator of Playpen. A jury found Petitioner guilty of Counts (1) and (3) through (7).[1] (CR Doc. No. 98). The jury found with regards to Count (1) that Petitioner advertised child pornography between on or about August 19, 2014 and March 4, 2015; transported or shipped child pornography on or about February 1, 2015, October 12, 2014, and September 26, 2014; and possessed child pornography between on or about August 19, 2014 and February 17, 2015. (CR Doc. No. 98 at 2). The jury found with regards to Count (7) that Petitioner knew that the child pornography involved a minor who had not attained 12 years of age. (CR Doc. No. 98 at 8).

The Presentence Investigation Report ("PSR") grouped all of the offenses. See (CR Doc. No. 110 ). The offense level was calculated based on Count (1), which had the highest offense level. (CR Doc. No. 110 at ¶¶ 26, 64). Count (1) was scored as a base offense level of 35 because the offense was a violation of § 2252A(g). (CR Doc. No. 110 at ¶ 27). Four levels were added because the images depicted a victim who had not attained the age of 12. U.S.S.G. § 2G2.2(b)(1)(A); (CR Doc. No. 110 at ¶ 28). Two more levels were added because an interactive computer service was used in furtherance of the offense. U.S.S.G. § 2G2.6(b)(4); (CR Doc. No. 110 at ¶ 29). Four levels were added because Petitioner was a leader or organizer of a criminal activity that involved five or more participants or was otherwise extensive. U.S.S.G. § 2G2.2(b)(1)(A); (CR Doc. No. 110 at ¶ 31). The total offense level was therefore 45 but the maximum offense level is 43 in accordance with the Sentencing Table. U.S.S.G. Chapter 5, Part A, app. note 2; (CR Doc. No. 110 at ¶ 67). Although Petitioner had several prior convictions, they were not scored due to their age. U.S.S.G. § 4A1.2(e); (CR Doc. No. 110 at ¶¶ 71, 72). Therefore,

---

[1] To avoid a double jeopardy issue, the verdict form instructed the jury to skip the advertising conspiracy in Count (2) if it found Petitioner guilty of Count (1) and that advertising conspiracy was a predicate offense of the child exploitation enterprise. See (CR Doc. No. 98 at 2).

2

Petitioner had no criminal history points and a criminal history category of I. (CR Doc. No. 110 at ¶ 76). The PSR's offender characteristics section reflects that Petitioner reported being sexually abused on multiple occasions as a child, his reported diagnoses of bipolar disorder, depression, and anxiety, and his employment history. (CR Doc. No. 110 at ¶¶ 82, 88, 89, 92). The resulting advisory guideline range was life imprisonment. (CR Doc. No. 110 at ¶ 98).

Defense counsel filed Objections to the PSR arguing that a below-guidelines sentence was warranted based on factors including Petitioner's "severe and debilitating health problems," the "severe sexual abuse he suffered as a child over a period of years," and his "lack of significant criminal history…." (CR Doc. No. 108 at 1).

At the sentencing hearing, defense counsel called clinical psychologist Matthew Mendel who testified that Petitioner suffered "significant sexual abuse" and extreme "physical and emotional and verbal abuse" as a child. (CR Doc. No. 160 at 22-24). Dr. Mendel further testified that Petitioner had been diagnosed with anxiety disorders and "features of autism." (CR Doc. No. 160 at 29-30). Defense counsel argued that the mandatory minimum 20-year sentence was appropriate because, *inter alia*, Petitioner "lived a pretty law-abiding life, lived a pretty productive life" and was a "stable worker … [t]hirty years at the same job…." (CR Doc. No. 160 at 84-85). Petitioner told the Court about his own past sexual abuse, prior "small arrests," physical abuse, and employment. (CR Doc. No. 160 at 90-95). The Government sought a guideline sentence of life imprisonment based on, *inter alia*, Petitioner's lack of remorse, to avoid sentencing disparities, for deterrence, and the egregious nature of Petitioner's conduct. (CR Doc. No. 160 at 95-101).

In considering the § 3553(a) factors the Court noted Petitioner's age, the "absence of a criminal history, which is to [Petitioner's] credit, his 30-year job performance, his 20 year marriage," all of which "show a certain amount of stability before the criminal conduct began."

3

(CR Doc. No. 160 at 104). The Court found Dr. Mendel's report to be credible and noted Petitioner's sexual, physical and mental abuse as a child. (CR Doc. No. 160 at 105). The Court also noted the seriousness of the offense which "can hardly be understated." (CR Doc. No. 160 at 106). In light of the foregoing and the other relevant factors the Court found that a two-level downward variance was appropriate based on Petitioner's "health and age" and one additional level was deducted due to Petitioner's "history as an abused child himself." (CR Doc. No. 160 at 108). The resulting offense level was 42 and the adjusted guideline range was 360 months to life imprisonment. (Id.).

The Court sentenced Petitioner at the bottom of the reduced guideline range to 360 months' imprisonment for Counts (1) and (3) and 240 months' imprisonment for Counts (4)-(7), concurrent, a life term of supervised release, and $70,000 in restitution.[2] (CR Doc. No. 205) (Amended Judgment); see (CR Doc. No. 137) (Statement of Reasons).

On direct appeal, Petitioner challenged the restitution order and argued that the Court violated double jeopardy by convicting and sentencing him for the child exploitation enterprise as well as the underlying predicate offenses. The Fourth Circuit Court of Appeals affirmed on March 15, 2019, finding that the Court did not abuse its discretion with regards to the restitution order and that, assuming that there was any error with regards to double jeopardy, the error was not plain. United States v. Chase, 757 F. App'x 273 (4th Cir. 2019).

Petitioner filed a *pro se* "Motion Pursuant to 28 U.S.C. § 2255 and Emergency Motion for Extension of Time" on June 13, 2020.[3] (Doc. No. 1). In it, he argues that counsel was ineffective

---

[2] The case was assigned to Judge Richard L. Voorhees at that time.

[3] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C.A. foll. § 2255 (addressing inmate filings).

4

for failing to preserve his double jeopardy claim for appeal and for failing to argue for a lower sentence due to Petitioner's lack of criminal history, age, abuse as a child, and mental illness. The Motion asks that the Court allow him 90 days within which to supplement his § 2255 Motion to Vacate due to a COVID-19 lockdown that, he argues, has deprived him of access to the law library, copy machine, and typewriter. On June 22, 2020, the Court entered an Order finding that the § 2255 Motion to Vacate was seriously deficient and granted Petitioner 30 days within which to file a superseding Amended § 2255 Motion to Vacate, subject to all applicable timeliness and procedural requirements. (Doc. No. 2).

Petitioner filed an Amended § 2255 Motion to Vacate on June 25, 2020. (Doc. No. 3). In it, he argues that counsel was ineffective for failing to: (1) argue that the child exploitation enterprise and transportation of child pornography counts violate double jeopardy; and (2) argue for a lower sentence because Petitioner was physically and "sexually abused as a child, worked his entire life, and had zero criminal history points" (Doc. No. 3 at 5); and (3) call an expert witness at trial to testify that Petitioner's computer's web server was "hacked several times," which deprived Petitioner of a fair trial and his only defense. (Doc. No. 3 at 7). Petitioner requests an evidentiary hearing.

The Government filed a Motion to Dismiss, (Doc. No. 5), arguing that the Motion to Vacate should be dismissed as time-barred and, alternatively, denied as conclusory and meritless. The Court informed Petitioner of his right to respond to the Motion to Dismiss pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and cautioned him that the failure to file a timely and persuasive response may result in the dismissal of his Motion to Vacate. (Doc. No. 6).

Petitioner filed a Response, (Doc. No. 9), arguing that his § 2255 Motion to Vacate, filed on June 13, 2020, was timely filed two days before the one-year statute of limitations expired.

Petitioner argues that his § 2255 Motion to Vacate should be accepted even though it was not on the required form because Petitioner lacked access to the law and federal rules because of COVID-19 lockdown. Petitioner argues that he used due diligence and that the COVID-19 pandemic, which severely impacted his prison, constitutes extraordinary circumstances. He reiterates his double jeopardy claim and argues that he could have prevailed had counsel preserved the issue. With regards to the expert witness issue, Petitioner alleges that counsel was ineffective for failing to call an expert to testify that Petitioner's computer system had been hacked several times, there was no rational reason why counsel did not raise the issue, and that this was a serious error that changed the outcome of trial. Petitioner appears to argue that equitable tolling should apply to this claim. Petitioner asks the Court to appoint counsel to supplement his § 2255 Motion to Vacate and to represent him at an evidentiary hearing.

The Government filed a Reply (Doc. No. 10), arguing that Petitioner's conclusory assertions regarding timeliness are insufficient to show that he pursued his claims with diligence or that he is entitled to equitable tolling; that Petitioner has failed to remedy the conclusory nature of his ineffective assistance of counsel claims; and that Petitioner has failed to show that an evidentiary hearing is warranted or that he should be appointed counsel.

## II. SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. In many cases, an evidentiary hearing is required to determine whether or not counsel was ineffective for misadvising a petitioner about a plea offer. See generally United States v. Witherspoon, 231 F.3d 923, 926–27 (4th Cir. 2000); 28 U.S.C.A. § 2255(b). After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III.  DISCUSSION

**(1)  Timeliness**

A one-year statute of limitation applies to motions to vacate under § 2255, which runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

An otherwise time-barred petitioner is entitled to equitable tolling in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation against the party." Hill v. Braxton, 277 F.3d 701, 704 (4th Cir. 2002) (citing

7

Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)); United States v. Prescott, 221 F.3d 686, 688 (4th Cir. 2000) ("§ 2255's limitation period is subject to equitable modifications such as tolling."). Equitable tolling of petitions for collateral review is available only when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, 560 U.S 631, 649 (2010); see Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) ("Generally, a litigant seeking equitable tolling bears the burden of establishing two elements."). The second prong of the equitable tolling test is met "only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." Menominee Indian Tribe of Wis. v. United States, 136 S.Ct. 750, 756 (2016). Under the Fourth Circuit's precedent, equitable tolling is appropriate in those "rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitations period against the party and gross injustice would result." Whiteside v. United States, 775 F.3d 180, 184 (4th Cir. 2014) (quoting Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (*en banc*)) (citations omitted).

Petitioner's Judgment became final on June 13, 2019, when the 90-day period to file a certiorari petition expired. See Gonzalez v. Thaler, 565 U.S. 134, 149 (2012) (quoting Clay v. United States, 537 U.S. 522, 532 (2003)). Petitioner's § 2255 Motion to Vacate was filed pursuant to the prisoner mailbox rule on June 13, 2020 and was therefore timely filed on the anniversary of the Judgment's finality.[4] See Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 2000) ("When a statute of limitations is measured in years, the last day for instituting the action is the anniversary date of the start of the limitations period."). The Government suggests that Hernandez is no longer good law pursuant to Holland v. Florida, 560 U.S. 631, 641 (2010), however, the Court finds

---

[4] June 13, 2020 was a Saturday, so the one-year statute of limitations to file a § 2255 petition did not expire until the following Monday, June 15, 2020.

Holland to be distinguishable. In Holland, the Supreme Court addressed 28 U.S.C. § 2244, which is the a one-year statute of limitations applicable to § 2254 state habeas petitions. An intricate day-by-day calculation of the statute of limitations was required to determine statutory tolling under § 2254. In the instant § 2255 case, however, statutory tolling does not come into play and the one-year statute of limitations is appropriately established via the anniversary method set forth in Hernandez. The Government does not cite any § 2255 case law that calls Hernandez into question. The Court therefore concludes that Petitioner timely filed the original § 2255 Motion to Vacate and, accordingly, Claims (1) and (2) are not time-barred.

Petitioner raised Claim (3) for the first time in the Amended § 2255 Motion to Vacate which was filed beyond the one-year statute of limitations on June 25, 2020. Petitioner appears to argue that the Court should apply equitable tolling because of the COVID-19 pandemic.

Assuming *arguendo* that COVID-19 constitutes an extraordinary circumstance, Petitioner has failed to demonstrate that equitable tolling is appropriate. Petitioner generally contends that he lacked access to a law library, typewriter, and photocopies. However, Petitioner fails to explain how he exercised due diligence or why he was unable to raise Claim (3) in his original § 2255 Motion to Vacate in which he was able to raise other claims.[5] The contention that he was unable to file sooner because of the COVID-19 lockdown conditions is belied by the fact that he filed the original § 2255 Motion to Vacate during the same conditions. Petitioner has failed to demonstrate that equitable tolling applies and, therefore, Claim (3) will be dismissed with prejudice as time-barred. However, even if Claim (3) had been timely filed, it would alternatively be denied on the merits for the reasons set forth in Section (2)(C), *infra*.

**(2)    Merits**

---

[5] Claims (1) and (2) relate back to the original timely filed § 2255 Motion to Vacate. See generally Fed. R. Civ. P. 15(c).

Petitioner contends that trial counsel was ineffective for failing to: (A) preserve a double jeopardy objection for direct appeal; (B) present mitigating factors at sentencing; and (C) call an expert witness at trial.

The Sixth Amendment to the U.S. Constitution guarantees that, in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689).

**(A)  Double Jeopardy**

Petitioner contends that trial counsel was ineffective for failing to argue that his convictions for engaging in a child exploitation enterprise in Count (1), and the predicates of transportation of child pornography in Counts (4) through (6), violate double jeopardy because they are "identical based on the same evidence/conduct." (Doc. No. 3 at 4). Petitioner alleges that counsel admitted that he forgot to raise the issue so that it would be preserved for direct appeal.

The Fifth Amendment to the United States Constitution provides, in part, that no person shall be subject for the same offense to be twice put in jeopardy of life or limb. U.S. Const. Amend. V. Under the Double Jeopardy Clause, once a defendant is placed in jeopardy for an offense, he may not be tried or punished criminally a second time for the same offense. Thus, where two statutory provisions proscribe the "same offense," they are construed not to authorize cumulative

punishments "in the absence of a clear indication of contrary legislative intent." Whalen v. United States, 445 U.S. 684 (1980); see Blockburger v. United States, 284 U.S. 299, 304 (1932). That is, "[i]f the punishment is authorized by statute, there can be no double jeopardy violation." United States v. Martin, 523 F.3d 281 (4th Cir. 2008) (citing Missouri v. Hunter, 459 U.S. 359, 368-69 (1983)); United States v. Chandia, 514 F.3d 365, 372 (4th Cir. 2008) ("[o]ur only task is to determine whether Congress intended to impose multiple punishments.").

The Supreme Court applied the foregoing principles in the context of a continuing criminal enterprise ("CCE") drug offense in violation of 21 U.S.C. § 848 in Garrett v. United States, 471 U.S. 773 (1985). The Supreme Court held that "[t]he language, structure, and legislative history" of § 848 "show in the plainest way that Congress intended the CCE provision to be a separate criminal offense which was punishable in addition to, and not as a substitute for, the predicate offense." Id. at 780. The Supreme Court concluded that, because Congress intended separate punishments for the substantive predicates and the CCE offense, cumulative punishments were permissible under the Double Jeopardy Clause and the Blockburger presumption yielded to Congress' express intent.[6] Garrett, 471 U.S. at 793-95. The Fourth Circuit has found in the context of RICO offenses that "prosecutions under statutes such as RICO and CCE – statutes targeted at 'multilayered' instances of criminal conduct invariably occurring at different places and times – call for a calculus reflecting the concerns in Garrett." See United States v. Arnoldt, 947 F.2d 1120 (4th Cir. 1991). However, neither the Supreme Court nor the Fourth Circuit has had occasion to address Garrett in the context of § 2252A(g).

---

[6] In Rutledge v. United States, 517 U.S. 292 (1996), the Supreme Court held that a CCE offense and predicate *conspiracy* offense violates double jeopardy because the "in concert with" element of CCE requires proof of a conspiracy that would also violate the conspiracy offense. Id. at 300 and n.12 (the Rutledge Court expressly did not overrule Garrett, noting that "Garrett is not to the contrary"). A Rutledge error did not occur in the instant case. See note 1, *supra*.

More than a year after Petitioner's trial concluded, the Eleventh Circuit Court of Appeals addressed convictions of engaging in a child exploitation enterprise as well as the predicate offenses of advertising the exchange of child pornography and transporting child pornography in Freeman v. United States, 2018 WL 6318358 (11th Cir. July 31, 2018) (unreported). The Eleventh Circuit applied Garrett to § 2252A and concluded that no double jeopardy violation occurred "because participation in a child exploitation enterprise does not eliminate an individual's liability for predicate offense conduct." Id. at *9.

In Petitioner's case, counsel was not ineffective for failing to raise Petitioner's novel double jeopardy argument at trial. The Fourth Circuit has "consistently made clear that [it does] not penalize attorneys for failing to bring novel or long-shot contentions." United States v. Mason, 774 F.3d 824, 830 (4th Cir. 2014). However, counsel may be constitutionally required to raise an argument where "relevant authority strongly suggest[s]" it. United States v. Carthorne, 878 F.3d 458, 466 (4th Cir. 2017). "But to be constitutionally effective, counsel need not identify *all* plausible arguments, including those that have never been raised before or which would require an extension of precedent." United States v. Palacios, 982 F.3d 920, 925 (4th Cir. 2020). It is "not enough … that the law on this question was unsettled at the time .. or that an objection would have been plausible and non-frivolous." United States v. Morris, 917 F.3d 818, 826 (4th Cir. 2019). A petitioner "can demonstrate ineffective assistance under Strickland if 'existing case law' 'sufficiently foreshadowed' the double jeopardy challenge such that trial counsel's failure to raise it rendered his performance constitutionally deficient." Palacios, 982 F.3d at 925 (quoting Morris, 917 F.3d at 824).

Petitioner has failed to identify any Supreme Court or circuit case law in existence at the time of his trial which sufficiently foreshadowed or strongly suggested his present double jeopardy

12

claim.[7] The case law at the time suggested, to the contrary, that no double jeopardy violation had occurred. This conclusion is supported by the Eleventh Circuit's subsequent Freeman decision concluding that convictions for a child exploitation enterprise and the predicate offenses under § 2252A do not violate double jeopardy. Moreover, Petitioner has failed to demonstrate prejudice by showing a reasonable probability that the result of the proceeding would have been different had counsel preserved the double jeopardy issue for appeal. As previously discussed, the case law strongly suggests that no double jeopardy violation occurred. Therefore, the Court concludes that counsel did not provide ineffective assistance and this claim will be denied.

**(B)    Sentencing**

Petitioner argues that counsel was ineffective with regards to sentencing by failing to investigate and present mitigating evidence and argue for a reduced sentence because Petitioner had been "physically and sexually abused as a child, worked his entire life, and had zero criminal history points." (Doc. No. 3 at 5).

Strickland applies to ineffective assistance of counsel claims in the context of sentencing. There is no minimal amount of additional time in prison that constitutes prejudice; United States Supreme Court jurisprudence suggests that "any amount of actual jail time has Sixth Amendment consequences." Glover v. United States, 531 U.S. 198, 203 (2001).

This ineffective assistance claim is conclusively refuted by the record. All of the mitigating factors that Petitioner has identified are contained in the PSR, were raised as PSR Objections by counsel, and were presented at the sentencing hearing. Counsel successfully obtained a three-level

---

[7] Indeed, the Fourth Circuit rejected Petitioner's double jeopardy claim on direct appeal because the error was not plain, citing United States v. King, 628 F.3d 693, 700 (4th Cir. 2011), which holds that "[a]n error qualifies as 'plain' only if it contravenes 'the settled law of the Supreme Court or this circuit." Chase, 757 F. App'x 273 (4th Cir. 2017). Although the Strickland and plain error standards are not interchangeable and do not necessarily result in the same outcome, the Fourth Circuit's acknowledgement of the dearth of case law on the double jeopardy issue is telling. See generally Carthorne, 878 F.3d at 465–66 (discussing the similarities and differences between the plain error and ineffective assistance of counsel standards).

13

reduction in the offense level and reduced the advisory guidelines from life imprisonment, to a new range of 360 months to life imprisonment. Counsel achieved a sentence at the bottom of the reduced guidelines range of 360 months' imprisonment. Petitioner has failed to identify anything more that reasonable counsel could have done that had a reasonable probability of resulting in a lower sentence than the downward departure sentence that counsel achieved. Petitioner has failed to demonstrate either deficient performance or prejudice, and therefore, this claim will be denied.

**(C)   Expert Witness**

Finally, Petitioner contends that counsel was ineffective for failing to call an expert witness at trial. Specifically, Petitioner alleges that he asked his attorney to investigate his "web server" being "hacked several times" and to present expert testimony to that effect at trial. (Doc. No. 3 at 13). Petitioner argues that this was his only defense and that counsel's failure to call a computer expert witness deprived him of a fair trial.

"[T]he decision whether to call a defense witness is a strategic decision demanding the assessment and balancing of perceived benefits against perceived risks, and one to which we must afford enormous deference." United States v. Terry, 366 F.3d 312, 317 (4th Cir. 2004) (quotation marks, brackets, and ellipses omitted). To demonstrate prejudice based on a claim of uncalled witnesses, a petitioner "must show not only that this testimony would have been favorable, but also that the witness would have testified at trial." Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985). A defendant claiming ineffective assistance of counsel based on an uncalled witness should make a proffer of testimony from the uncalled witness. See Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990).

Petitioner has failed to demonstrate either deficient performance or prejudice. His claim is that an expert would have testified that Petitioner's computer had been repeatedly hacked.

14

However, he fails to identify a computer expert who would have testified, or proffer any exculpatory evidence that the expert would have presented at trial. This claim is thus too vague and conclusory to establish ineffective assistance of counsel. See generally United States v. Dyess, 730 F.3d 354 (4th Cir. 2013) (vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the district court). Further, Petitioner cannot demonstrate prejudice in light of the strong evidence of his guilt that would have been undiminished by any expert testimony that hacking had occurred. This evidence included pen register surveillance that the Playpen website was accessed from Petitioner's homes in Maine and Florida corresponding to Petitioner's presence at those locations (CR Doc. No. 157 at 79-82); law enforcement officers' discovery during the execution of a search warrant of Petitioner's home that Petitioner's computer was logged into the Playpen website as the main administrator (CR Doc. No. 157 at 84-85); and a text file found on Petitioner's computer containing various passwords associated with the Playpen administrator (CR Doc. No. 157 at 85). There is no reasonable probability that the trial would have resulted in a different outcome even if counsel had presented expert testimony of hacking in light of this strong evidence of his guilt. Therefore, even if this claim were not time-barred, it would be denied on the merits.

## IV. CONCLUSION

For the foregoing reasons, the Motion to Vacate is dismissed and denied and the Respondent's Motion to Dismiss is granted.

**IT IS, THEREFORE, ORDERED** that:

1. The Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DISMISSED** and **DENIED**.

2. The Respondent's Motion to Dismiss, (Doc. No. 5), is **GRANTED**.

3. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

4. The Clerk is instructed to close this case.

Signed: February 1, 2021

Kenneth D. Bell
United States District Judge